FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

MAY 1 0 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| RICHARD M KIPPERMAN, not individually but solely in his capacity as Trustee for the MAGNATRAX LITIGATION TRUST, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v | ) ) |
| | ) Civil Action File No. |
| | ) **1 05 CV 1242** |
| ONEX CORPORATION, ONEX ABCO LIMITED PARTNERSHIP, ONEX ABCO FINANCE, LLC, ONEX ABCO FINANCE II, LLC, ONEX AMERICAN HOLDINGS, LLC, 1354495 ONTARIO, INC , 302733 NOVA SCOTIA INC., OMI PARTNERSHIP HOLDINGS, LTD , VICWEST CORPORATION, GERALD W SCHWARTZ, MARK HILSON, NIGEL WRIGHT, CHRISTOPHER A. GOVAN, ROBERT T. AMMERMAN, and R CHARLES BLACKMON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | **GET** |
| | **JURY DEMAND** |
| Defendants | ) ) ) |

## COMPLAINT

Richard M Kipperman, not individually but solely in his capacity as Trustee

(the "Trustee") for the Magnatrax Litigation Trust (the "Trust"), by and through his

FORMS RECEIVED
Consent To US Mag.
Pretrial Instructions
Title VII NTC

undersigned counsel, hereby files this complaint against each of Onex Corporation,

Onex ABCO Limited Partnership, Onex ABCO Finance, LLC, Onex ABCO

Finance II, LLC, Onex American Holdings, LLC, OMI Partnership Holdings, Ltd.,

1354495 Ontario, Inc., 302733 Nova Scotia, Inc. (collectively, along with certain

other Onex Corporation affiliates, "Onex" or the "Onex Defendants"), Vicwest

Corporation ("Vicwest"), and Gerald W. Schwartz ("Schwartz"), Mark Hilson

("Hilson"), Nigel Wright ("Wright"), Christopher A. Govan ("Govan"), Robert

Ammerman ("Ammerman"), and R. Charles Blackmon ("Blackmon," and

collectively with Schwartz, Govan, Ammerman, Blackmon, and Hilson, the

"Management Defendants," and collectively with the Onex Defendants, the

"Defendants"), and in support thereof, respectfully states as follows

## I.   **INTRODUCTION**

1      From May 1999 to March 2000, Onex Corp , a Canadian

leveraged buyout firm, engineered a highly leveraged roll-up of several American

and Canadian manufacturing companies through its Canadian and U S. affiliates.

Magnatrax Corporation, a shell incorporated by Onex Corp., was used by Onex as

the vehicle to acquire these companies.

2.      The acquisitions were structured as stock purchases.  Onex

identified companies it wanted to acquire and then made offers, through its

affiliates, to buy the stock of the target companies. It raised the money to buy that stock, in large part, by having the target companies borrow money by mortgaging all of their assets beyond the value of those assets. Onex and its affiliates then used the borrowed money to pay the stockholders  These acquisitions left the target companies saddled with hundreds of millions of dollars of secured debt. That debt funded the Onex acquisitions. Much of the secured debt was owed to Onex itself, which used its affiliates as pass through mechanisms to finance the acquisitions with other people's money  This scheme extracted tax benefits, fees and interest rate premiums which benefited the Defendants, at a substantial cost to the acquired companies and their employees and creditors

3      The three primary acquisitions, planned and implemented by Onex, involved over a dozen different entities formed for the sole purpose of these acquisitions and were accomplished through a series of over 100 transactions resulting in substantially greater costs to the Debtors at the time when they were insolvent.

4      Onex and its affiliates seized complete control of Magnatrax and its subsidiaries through a self-dealing management agreement and by placing its own personnel on the boards of and in key management positions with the

3

Magnatrax entities   Onex used its control to obtain millions of dollars for itself in spite of the crushing amount of debt piled on the Magnatrax entities by Onex.

5        The Onex planned acquisitions were disastrous   Soon after the completion of the final acquisition, goodwill amounting to over 50% of the value of the acquired entities was written off   Thus, Onex caused Magnatrax and its subsidiaries to borrow money to finance the Onex acquisitions at more than twice fair value.

6.       The acquired entities filed for bankruptcy in May 2003.  The companies emerged from bankruptcy in late 2003, leaving hundreds of millions of dollars in pre-bankruptcy debt unpaid and discharged   Onex, by contrast, retained the money and other value it diverted to itself from the companies

7.       The conduct of the Defendants left the Magnatrax entities hopelessly insolvent, inadequately capitalized and not able to pay their debts. Meanwhile, millions of dollars were diverted to the Defendants.  The cost of Onex's misconduct and its own gains was ultimately born by the Magantrax entities' innocent creditors.  The Trust seeks to recover damages caused by the Defendants and to avoid and recover the value of transfers and obligations that were made to or benefited the Defendants.

4

## II.   **JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction under 28 U.S C
§ 1334(b) because this case arises under and is related to the Chapter 11 cases, *In
re Magnatrax Corporation, et al*, 03-11402 (PJW) pending in the United States
Bankruptcy Court for the District of Delaware.

9.     This Court also has subject matter jurisdiction pursuant to 28
U.S C. § 1331 because this civil action arises under the laws of the United States.

10.    This Court has subject matter jurisdiction over this cause
pursuant to 28 U S.C. § 1332(a), because this case presents a controversy between
citizens of different states and in which citizens of a foreign state are parties and
the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.    This Court has personal jurisdiction over each of the
Defendants herein pursuant to O C.G A  § 9-10-91 in that the Defendants
transacted business within Georgia, committed tortious or wrongful acts or
omissions within Georgia, or committed tortious or wrongful injuries within
Georgia caused by acts or omissions outside of Georgia.  The Defendants' actions
establishing minimum contacts with Georgia include, but are not limited to,
owning and directing the affairs of Magnatrax, which was headquartered in
Alpharetta, Georgia, transacting business with Magnatrax; and participating in

5

Magnatrax board of director meetings wherein certain of the contested transactions were authorized and approved.

12.     Venue in the Northern District of Georgia is proper pursuant to 28 U.S C. § 1409(c) because the debtors and the creditors may have commenced this action in this District under applicable non-bankruptcy venue provisions

13     Venue in the Northern District of Georgia is proper pursuant to 28 U.S C. §§ 1391(b)(2) and 1391(b)(3) and/or 28 U.S C §§ 1391(a)(2) and 1391(a)(3) because a substantial part of the events giving rise to this action occurred in this District and a substantial part of the property that is the subject of this action is situated in this District   Venue is further proper because certain of the Defendants can be found, reside and/or transacted business in this District

## III.   THE PARTIES

14     The Trust is a post-confirmation litigation trust established pursuant to the conditions of the Magnatrax Litigation Trust Agreement, dated as of January 8, 2004, which arose in connection with the Fifth Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") dated as of September 17, 2003 and confirmed on November 17, 2003 in the chapter 11 bankruptcy case of *In re Magnatrax Corporation et al* (the

6

"Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware, Case No 03-11402 (PJW) (the "Bankruptcy Court")

15.    Richard M. Kipperman is the trustee of the Trust   Mr Kipperman is a resident of La Mesa, California.

16.    Onex Corporation ("Onex Corp.") is an Ontario corporation and was at all relevant times the majority shareholder of Magnatrax Corporation, the lead debtor in the Chapter 11 Cases.  Onex Corp. controlled at least 70% of the voting interest in Magnatrax.  Onex Corp  also is the holder of 99.9% of the partnership interests of Onex LP, and Onex Corp  is the ultimate parent corporation of the Onex Defendants.

17    Onex ABCO Limited Partnership ("Onex LP") is a Nevada limited partnership, which is owned 99.9% by Onex Corp  and  01% by Ontario. Onex LP is the sole shareholder of Onex American   Onex LP also is the Tranche B Borrower under the "Credit Agreement" (defined below).

18.    Onex American Holdings, LLC ("Onex American") is an Delaware limited liability company, a wholly-owned subsidiary of Onex Corp , and the majority shareholder of Magnatrax Corporation ("Magnatrax")

19    1354495 Ontario, Inc  ("Ontario") is the holder of  01% of the partnership interests in Onex LP and is the general partner of Onex LP

7

20.     302733 Nova Scotia, Inc. ("Nova Scotia") is a Nova Scotia corporation, a wholly-owned subsidiary of Onex LP, and the majority shareholder of Onex Finance I and Onex Finance II.

21      Onex ABCO Finance, LLC ("Onex Finance I") is a Wyoming limited liability company and the lender to ABCO (defined below) and its affiliates under the Tranche B Structure (defined below).

22      Onex ABCO Finance II, LLC ("Onex Finance II") is a Wyoming limited liability company and a wholly-owned subsidiary of Nova Scotia.

23      OMI Partnership Holdings, Ltd. ("OMI"), upon information and belief, is an Ontario corporation with its principal place of business in Toronto, Ontario, Canada. All of the issued and outstanding shares of OMI are owned by Onex Corp

24.     Vicwest Corporation ("Vicwest") is an Ontario corporation with its principal headquarters in Oakville, Ontario.

25.     Gerald W. Schwartz ("Schwartz") is a citizen of Canada and a resident of Toronto, Ontario. Schwartz founded Onex in 1983. Schwartz is the single largest shareholder of Onex   Schwartz is Onex's President and Chief Executive Officer, the Chairman of Onex's board of directors, and Onex's majority

8

shareholder  Schwartz has been actively involved in Onex's growth strategies and major acquisitions, including, without limitation, Onex's acquisition, ultimately through Magnatrax, of ABCO, Republic and Jannock.  During all relevant times, Schwartz directed the activities of Hilson, Wright, Govan, Ammerman and Blackmon.

26     Christopher A  Govan ("Govan") is a citizen of Canada and a resident of Toronto, Ontario.  From 1998 to the present, Govan has been employed by Onex and has held the position of managing director and vice president.  Upon information and belief, Govan is an officer of Onex Corp.  Govan is responsible for Onex's tax planning and compliance and provides advice on corporate structure, taxation, financing and due diligence for new acquisitions.  Govan's immediate supervisor is Schwartz, the Chairman, President and Chief Executive Officer of Onex Corp.  While employed by and working at the behest of Onex, Govan was one of the primary architects of the corporate structure, taxation issues and financing arrangements regarding Onex's acquisition, ultimately through Magnatrax, of ABCO and the subsequent acquisitions of Republic and Jannock.  Govan consulted with and gave direction to officers of Magnatrax, ABCO, and numerous other companies under the Onex/Magnatrax umbrella

27     Nigel S Wright ("Wright") is a citizen of Canada and a resident of Toronto, Ontario. From 1997 to the present, Wright has been employed by Onex and has held the positions of principal, Vice President and managing director. Upon information and belief, Wright is an officer of Onex Wright's immediate supervisor is Schwartz While employed by and working at the behest of Onex, Wright served on the Board of Directors and was an officer of Magnatrax Corporation ("Magnatrax"), American Buildings Company ("ABCO"), Vicwest Corporation, Vicwest, Inc , Jannock Ltd , Jannock, Inc., and numerous other companies under the Onex/Magnatrax umbrella.

28     Mark. L Hilson ("Hilson") is a citizen of Canada and a resident of Toronto, Ontario  From 1988 to the present, Hilson has been employed by Onex and has held the positions of Vice President and managing director  Hilson is an officer of Onex. Hilson's immediate supervisor is Schwartz.  While employed by and working at the behest of Onex, Wright served on the Board of Directors and was an officer of Magnatrax, ABCO, Vicwest Corporation, Vicwest, Inc , Jannock Ltd., Jannock, Inc., and numerous other companies under the Onex/Magnatrax umbrella

29.     Raymond C. Blackmon, Jr.. ("Blackmon") is a citizen of the United States and a resident of Eufaula, Alabama.  Since 1980, Blackmon has been

employed by ABCO   Between 1992 and 2002, Blackmon held ABCO's highest
financial position.  By 2002, Blackmon's position at ABCO was Executive Vice
President and Chief Financial Officer   Blackmon served on the Board of Directors
of Magnatrax between 1999 and 2002   In his positions as Executive Vice
President and Chief Financial Officer, Blackmon was an officer in numerous
companies under the Onex/Magnatrax umbrella and served on the Boards of
Directors of many of those companies

       30.    Robert T. Ammerman ("Ammerman") is a citizen of the United
States and a resident of Columbus, Georgia   Between 1992 and 2002, Ammerman
was President of ABCO   Ammerman served on the Board of Directors of
Magnatrax between 1999 and 2002.  In his position as President of ABCO,
Ammerman was an officer in numerous companies under the Onex/Magnatrax
umbrella and served on the Boards of Directors of many of those companies.  In
2004, Ammerman re-joined ABCO and resumed his position as President.

## IV.   FACTUAL ALLEGATIONS

### A.   History of Magnatrax Business and Acquisitions

#### 1.   Acquisition of ABCO

       31    Since 1947, American Buildings Company ("ABCO") and its
predecessors have been engaged in the manufacturing and marketing of metal

building systems, consisting of structural framing and wall and roof panels for industrial, commercial and institutional markets.

32      In April 1999, Onex Corp caused ABCO Acquisition Corporation ("ABCO Acquisition") to be incorporated for the purpose of acquiring ABCO.

33.      On April 7, 1999, Onex Corp., through its affiliates, entered into a definitive merger agreement with ABCO, whereby Onex Corp, through its affiliates, agreed to acquire all of the outstanding shares of ABCO at a price of $36.00 per share in cash through a tender offer (the "Offer").

34.      The Offer was initiated on April 13, 1999 by ABCO Acquisition, a wholly owned subsidiary of ABCO Holdings Corp. ("ABCO Holdings"), an indirect wholly-owned subsidiary of Onex Corp

35      At the expiration of the Offer on May 10, 1999, approximately 4 73 million shares, or approximately 98% of ABCO's outstanding common stock, had been tendered pursuant to the Offer

36.      In this "going private" transaction, ABCO Holdings purchased the outstanding common stock of ABCO for cash consideration of approximately $200.3 million[1] on or about May 12, 1999

---

[1] All dollar amounts stated herein are in U S. dollars unless designated otherwise.

37.     Onex Corp., through its affiliates, was able to complete the merger with ABCO on or about May 12, 1999 under Delaware corporate "short form" merger provisions

38     Subsequently, Onex Corp. announced the renaming of ABCO Holdings as Magnatrax Corporation ("Magnatrax") for the sole purpose of holding the integrated divisions and subsidiaries that formerly comprised ABCO.

39.     Magnatrax was a holding company that conducted all of its business through ABCO.

40.     Magnatrax's only asset was the stock of ABCO.

41     The purchase price for the ABCO acquisition was financed in part through a complex series of borrowings pursuant to an Amended and Restated Credit Agreement dated as of May 11, 1999 (as amended from time to time, the "Credit Agreement"), by and among ABCO, Onex LP and Magnatrax, as Borrowers, and Canadian Imperial Bank of Commerce ("CIBC") and several other U.S and Canadian financial institutions in their capacities as agents and lenders (collectively, with CIBC, the "Lenders")

42.     As part of the initial funding under the Credit Agreement, the Lenders made a loan in the amount of $140,025,850 to Onex LP, in its capacity as the "Tranche B Borrower" under the Credit Agreement.

13

43. Onex LP then made a capital contribution of these funds to Nova Scotia in exchange for Nova Scotia's common stock.

44 Nova Scotia, in turn, made (a) a capital contribution to Onex Finance I (a U.S. limited liability company shell formed for purposes of consummating this transaction) in the amount of $139,275,000; and (b) a capital contribution in the amount of $750,000 to Onex Finance II (another entity formed for the purposes of this transaction).

45 Onex Finance II then contributed its $750,000 to Onex Finance I Onex Finance I then loaned the $140,000,000 to ABCO, which was ultimately used to finance the Onex/Magnatrax purchase of ABCO's stock This loan was secured by liens on substantially all assets of ABCO and certain of its co-obligor subsidiaries, including Windsor Door, Inc. and Magnatran Corporation. This financing artifice is hereinafter referred to as the "Tranche B Structure."

46. The interest rate charged to ABCO under the Tranche B Structure was .25% per annum greater than the interest rate charged to Onex LP by CIBC under the Credit Agreement.

47. The net result of this series of transactions is that ABCO borrowed $140,000,000 from Onex Finance I, whose ultimate parent is Onex

14

Corp , so that Onex Corp, through its affiliates, could buy ABCO by paying that $140,000,000 to ABCO's stockholders.

48.    ABCO pledged and mortgaged all of its assets to borrow $140,000,000, then used the proceeds and its cash flow to pay its own shareholders, to pay debt service to Onex (its new owner), to pay transaction fees to Onex and its Lenders, to pay professional fees on all sides of the transaction, and to pay everyone else except, ultimately, its creditors.

49.    ABCO, under the Onex Defendants' direction and control, mortgaged its own assets up to or beyond their value to borrow money to pay to its stockholders.

50     The interest rate charged to ABCO by its own ultimate parent was inflated above the rate charged by the Lenders

51.    All fees, costs and expenses related to the financing transactions under the Credit Agreement and the Tranche B Structure were born by ABCO.

52.    ABCO's creditors were damaged by this series of acquisition and financing transactions orchestrated by the Onex Defendants and the Management Defendants

15

53.    The purchase price paid by ABCO, as the survivor corporation of the acquisition by merger, for its own stock exceeded the stock's fair market value by over $140,000,000

54    As a result of this series of transactions engineered by Onex, ABCO was left insolvent, was engaged or was about to become engaged in a business or transaction for which its remaining assets were inadequate capital or unreasonably small, and intended to incur, or believed that it would incur, debts beyond its ability to pay as they matured

## 2.    **ABCO Management Agreement**

55.    Upon the consummation of the ABCO acquisition in May 1999, ABCO and Onex Corp. entered into a Management Agreement dated as of May 11, 1999 (the "Management Agreement"), pursuant to which Onex Corp., already ABCO's ultimate parent with voting control over ABCO and its subsidiaries, agreed to perform certain management functions and "consulting services" for ABCO.

56.    Onex Corp 's duties under the Management Agreement included "consulting with and assisting [ABCO's] Board and management in the following  (i) developing and implementing corporate and strategic plans; (ii) budgeting future corporate investments, (iii) developing and implementing

16

acquisition and divestiture strategies, (iv) providing other management, administration, financial and support services, (v) subsequent debt and equity financings; and (vi) developing international joint ventures or licensing arrangements with prospective partners or licensees "

57. Pursuant to the Management Agreement, Onex Corp. not only was an ultimate lender and parent of ABCO and its subsidiaries, but Onex Corp. also exercised control over key Board and management functions, including corporate and strategic plans, acquisition strategy, and financings.

58. Pursuant to the Management Agreement, each of the acquisition, investment and financing transactions described herein were entered into under Onex Corp.'s direction and control

59 ABCO actually paid Onex Corp. for the opportunity to control ABCO (which control Onex already was entitled to assert as ABCO's ultimate parent). Onex Corp.'s compensation under the Management Agreement was $375,000 per year. As additional compensation, the Management Agreement entitled Onex Corp. to an amount equal to 75% of the annual EBITDA of any businesses acquired by ABCO or its subsidiaries. Onex Corp. charged this fee for the acquisition of ABCO itself.

60     Onex Corp. received a direct and substantial economic benefit if it caused ABCO to acquire new businesses, even if such acquisitions were not in ABCO's best interests.

61.     The Management Agreement constitutes self-dealing by Onex Corp. to extract further value from the Magnatrax enterprise in exchange for control Onex Corp already was exercising through voting control and common board members and officers.

62     In conjunction with the acquisition of ABCO, Onex Corp. and its senior management, including each of the Management Defendants, developed and implemented an aggressive growth initiative whereby Magnatrax quickly would acquire similar businesses through incredibly complex acquisitions and financing structures.

63     Onex Corp.'s strategy was to roll-up acquired businesses by mortgaging their assets to the hilt, borrowing against those assets, then using the borrowed cash to pay shareholders, to pay Onex Corp fees, and to pay professionals. Ultimately, only the creditors of the acquired companies went unpaid.

18

### 3.    Acquisition of Republic

64.    Republic Builders Products ("Republic") was a North American manufacturer of commercial hollow metal doors, frames and stick framing systems.

65.    On June 22, 1999, Onex Corp., caused ABCO to issue a Letter of Intent to acquire Republic. On or about August 11, 1999, Onex Corp. caused ABCO to acquire the assets of Republic in a leveraged buyout transaction for the aggregate purchase price of approximately $46,000,000

66.    The purchase price paid by ABCO for its acquisition of Republic exceeded Republic's value by over $30,000,000.

67    The Republic acquisition was financed in part from borrowings under the Tranche B Structure, pursuant to which ABCO and its direct and indirect subsidiaries became indebted to the Onex Defendants for another $25,000,000

68    As a result of this series of transactions, Republic was rendered insolvent, ABCO's insolvency deepened, and ABCO and Republic were each engaged or were about to become engaged in a business or transaction for which their remaining assets were inadequate capital or unreasonably small, and intended to incur, or believed that they would incur, debts beyond their ability to pay as they matured.

### 4.    Acquisitions of Jannock

#### a.    First Jannock Acquisition

69.    On March 10, 2000, Onex Corp caused ABCO to acquire 100% of the stock of Jannock, Ltd ("Jannock") in a series of approximately 90 transactions that were all deemed to have been consummated on March 10, 2000 Onex Corp. planned and implemented a complex series of transactions to transfer and channel funds in a circular manner between various parties in order to finance the transaction for the benefit of the Defendants, not Jannock.

70    Jannock was engaged principally in the manufacture of metal buildings and products for distribution in Canada

71.    To facilitate this acquisition, Onex caused ABCO to form Delta Acquisition Corporation ("Delta") as a wholly-owned subsidiary.

72    Delta became a Borrower under the Credit Agreement, which was amended in March 2000 pursuant to a Second Amended and Restated Credit Agreement.

73.    Onex caused ABCO to capitalize Delta with an $85,000,000 cash contribution and two loans in the amounts of $217,200,000 and $27,000,000.

74    The $27,000,000 loan was funded through a draw by ABCO under the Tranche B Structure, causing ABCO to become further indebted to Onex

75.    Once capitalized, Delta drew an additional $139,000,000 under the Credit Agreement. At this point, ABCO and Delta were burdened with more than $380,000,000 of debt in connection with the Jannock acquisition.

76.    Delta then merged with Jannock in exchange for merger consideration of $416,000,000, consisting of $359,000,000 in cash paid to Jannock's shareholders, plus another $57,000,000 in senior subordinated notes (the "Jannock Notes") issued to Jannock's shareholders.

77.    The surviving corporation of this merger, a direct, wholly-owned subsidiary of ABCO, was renamed Vicwest.

78    The purchase price ultimately paid by ABCO for Jannock and its subsidiaries exceeded their value by almost $200,000,000

### b.    The Mirror Notes

79    The Jannock Notes, on which Vicwest was the obligor, were fixed-coupon notes in the aggregate original principal amount of approximately $57,000,000, bearing interest at a rate of 12.5% per annum

21

80     The Jannock Notes were secured by a matching note (the "First Mirror Note") with the same material terms as the Jannock Notes, issued to Vicwest by yet another newly-created Onex conceived entity, Magnatrax Finance Company ("Magnatrax Finance")

81.     ABCO, in turn, issued its own matching note with the same material terms as the Jannock Notes to Magnatrax Finance (the "Second Mirror Note," and collectively with the First Mirror Note, the "Mirror Notes").

82     The cash flow for the Mirror Notes transaction was as follows First, ABCO borrowed $57,000,000 from the Lenders under the Credit Agreement ABCO then loaned these funds on an interest-free basis to Vicwest in connection with the Jannock acquisition. But, rather than pay these funds to the Jannock shareholders as part of the merger consideration, Vicwest loaned the funds to Magnatrax Finance under the Mirror Notes at an interest rate of 12 5% per annum. The funds were then loaned yet again from Magnatrax Finance to ABCO, also at a rate of 12 5%  ABCO then repaid the funds to the Lenders.

83.     The net result of the Mirror Notes transactions was that ABCO reborrowed money at 12.5% interest that it had loaned to Vicwest interest free. Vicwest therefore received the benefit of interest-free credit from the former

Jannock shareholders, with the interest burden born by ABCO   The insertion of the interim entity Magnatrax Finance was intended to disguise this artifice.

### c.   Second Jannock Acquisition

84   Upon the effectiveness of the merger of Delta and Vicwest, also on March 10, 2000, ABCO caused another of its newly-created Onex conceived subsidiaries, American Buildings Interholdings, Inc. ("ABI"), to acquire 100% of the stock of Vicwest from ABCO in exchange for 100% of the stock of ABI.

85   ABCO also transferred to ABI its right to repayment of the $217,200,000 loan and the $27,000,000 loan ABCO had made to Vicwest (as successor to Delta). In connection with this transfer, ABI assumed ABCO's obligation to repay the $27,000,000 to Onex Finance I under the Tranche B Structure

86   ABI then purchased from Vicwest, its own direct subsidiary, all of Vicwest's stock in its direct subsidiaries (formerly subsidiaries of Jannock, Ltd.), in a series of merger transactions, for aggregate consideration of approximately $268,000,000. The surviving entity was renamed Jenisys Engineered Products, Inc

23

87.    The purchase price paid by ABCO and its subsidiary, Jenisys, to Vicwest for the former Jannock subsidiaries during this second phase of the Jannock transaction, exceeded their value by approximately $115,000,000.

88    As a result of this series of Jannock transactions, Jenisys was rendered insolvent, ABCO's insolvency deepened, and ABCO and Jenisys each were engaged or were about to become engaged in a business or transaction for which their remaining assets were inadequate capital or unreasonably small, and intended to incur, or believed that they would incur, debts beyond their ability to pay as they matured.

**B.    Resulting Indebtedness**

89.    As a result of the acquisitions outlined above, the Magnatrax entities, including the acquired entities themselves, incurred an aggregate of almost $550,000,000 of new, secured debt   The proceeds of that debt, however, principally were used by the Magnatrax entities to pay off stockholders, as opposed to funding operations.

90.    Onex Finance I was a primary financier of these acquisitions, with the funds originating form the complex series of transactions orchestrated by Onex

24

91     During the period from September 1, 2002 through May 12,
2003, as the Magnatrax entities slid into deepening insolvency, the Magnatrax
entities paid $792,914.67 in interest on the Tranche A term loan made by the
Lenders under the Credit Agreement and paid $934,793 73 on the revolving credit
facility under the Credit Agreement.

92     By contrast, during this same time period, the Magnatrax
entities, under Onex's control, paid over $6,000,000 in interest to Onex Finance I
under the Tranche B Structure.

## C.     Benefits of Tranche B Structure to Onex Defendants

### 1.     Interest Rate Spread

93.     Onex charged interest on its purported loans to ABCO under
the Tranche B Structure at an annual rate that was  25% higher than the rate
charged to Onex by the Lenders

94     The Tranche B Structure was another mechanism for the Onex
Defendants to extract value from their already over-leveraged subsidiaries.

### 2.     Tax Benefits

95     The Tranche B Structure resulted in payments by ABCO and
certain of its affiliates of tens of millions of dollars of interest to Onex Finance I
during the period from May 12, 1999 through May 12, 2003.

25

96     The payments upstream through the Tranche B Structure, however, also resulted in an interest expense deduction for Onex Corp. under Canadian law.

97.     This substantial tax benefit to Onex, engineered by Onex and Govan, its tax strategist, came at no cost to any Onex entities. The cost to ABCO and its affiliates, however, was significant. ABCO paid several million dollars in transaction costs and professional fees with respect to the financing arrangements under the Credit Agreement   ABCO paid fixed and variable management fees to Onex under the Management Agreement   ABCO also paid an interest rate premium to Onex.

### D.     **Onex Control Over Transactions**

#### 1.     **Common Officers and Directors**

98.     Onex exercised control over Magnatrax, ABCO and ABCO's subsidiaries by inserting its own personnel as directors and officers of Magnatrax, ABCO and its subsidiaries.

99.     From 1997 to the present, Wright has been employed by Onex Corp. and has held the positions of principal, Vice President and managing director   Upon information and belief, while employed by and working at the behest of Onex, Wright served on the Board of Directors and was an officer of

26

Magnatrax Corporation and numerous other companies under the Onex/Magnatrax umbrella

100.   From 1988 to the present, Hilson has been employed by Onex Corp. and has held the positions of Vice President and managing director.  Hilson has at all relevant times been an officer of Onex Corp   While employed by and working at the behest of Onex, Wright served on the Board of Directors and was an officer of Magnatrax and numerous other companies under the Onex/Magnatrax umbrella.

## 2.   **Management Agreement**

101.   ABCO and Onex Corp. entered into the Management Agreement in May 1999

102.   The Management Agreement enabled Onex Corp. to assume control over key corporate functions, including acquisition strategy and financing.

103.   Each of the acquisition, investment and debt financing transactions described above was done under Onex Corp 's guidance and control.

104   Upon information and belief, Onex Corp  received approximately $4,800,000 in base management fees over the life of the Management Agreement.

27

105. Onex Corp. also received approximately $2.000,000 in additional management fees as a result of the ABCO acquisition. approximately $750,000 in additional management fees as a result of the Republic acquisition, and approximately $4,100,000 in additional management fees as a result of the Jannock acquisition

106 Upon information and belief, OMI received a portion of these management fees from ABCO.

107. Onex was the *de facto* board and alter ego of Magnatrax and its subsidiaries, and Schwartz and Govan were *de facto* members of the boards of Magnatrax and its subsidiaries, and each of them owed the acquired companies and their creditors fiduciary duties of care and loyalty which they breached.

**E.    Overpayment for Acquisitions and Undercapitalization of Magnatrax Enterprise**

108 Each of the three acquisitions described above was overpriced and rendered ABCO and its affiliated borrowers under the Credit Agreement and the Tranche B Structure either insolvent, inadequately capitalized or unable to pay their debts as such debts matured.

### 1.    ABCO Acquisition

109    The aggregate purchase price for Magnatrax's acquisition of ABCO was approximately $200,000,000   Because ABCO was acquired through a leveraged buyout transaction, this price ultimately was borne by ABCO itself.

110.   In February, 2000, nine months after ABCO's acquisition, Magnatrax wrote off goodwill from the ABCO acquisition in the amount of $146,000,000, almost 75% of the purchase price   This amount originally was to be amortized over a forty year period.

111.   ABCO did not receive reasonably equivalent value for the price Onex, as the architect of the transaction, caused ABCO to pay to its shareholders by mortgaging its assets

### 2.    Republic Acquisition

112    The aggregate purchase price for ABCO's acquisition of Republic was $45,000,000.  Shortly thereafter, Magnatrax, ABCO's sole shareholder, wrote off approximately $31,000,000 of goodwill from this acquisition, over two-thirds of the original price.

113.   ABCO did not receive reasonably equivalent value for the price Onex, as the architect of the transaction, caused ABCO to pay to its shareholders by mortgaging its assets.

29

### 3.    Jannock Acquisitions

114    The aggregate purchase price of ABCO's acquisition of Jannock, Ltd. was $416,000,000. Shortly thereafter, Magnatrax wrote off goodwill in the amount of approximately Cdn$291,000,000 (US$200,000,000).

115.    Moreover, Vicwest's financial statements indicate that the total amount paid for Jannock by Delta during the first phase of the Jannock acquisition exceeded the value of the net assets purchased by Cdn$291,000,000.

116.    Vicwest's financial statements also indicate that the purchase price of $268,000,000 paid for the Jannock subsidiaries by Jenisys, as successor to ABI, in the second phase of the Jannock acquisition, exceeded the value of the assets purchased by Cdn$222,000,000 (at the time, approximately $115,000,000).

117.    ABCO therefore overpaid for the acquisitions of Jannock and its subsidiaries, not once but twice   ABCO did not receive reasonably equivalent value for the price Onex as the architect of the transaction, caused ABCO to pay to its shareholders by mortgaging its assets

118    Both Hilson and Wright signed key transaction documents relating to the Jannock acquisitions on behalf of both Onex entities and Magnatrax and ABCO.

30

119. These overpriced transactions, consummated entirely under the direction and control of Onex, its personnel, and the other Defendants, left the Magnatrax entities insolvent, undercapitalized, and incapable of satisfying their debts as such debts came due.

**F.      Magnatrax Bankruptcy**

120. On May 12, 2003 (the "Petition Date"), Magnatrax, Magnatrax Finance, ABCO, Republic, Jenisys, Jannock, and eleven of their affiliated entities (collectively, the "Debtors") filed bankruptcy cases (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

121. The Onex Defendants and Vicwest were not debtors in the Bankruptcy Cases.

122. As of the Petition Date, the Debtors reported that they were indebted to the Lenders under the Credit Agreement in the amount of approximately $250,000,000.

123. Upon information and belief, approximately $170,000,000 of that amount was actually owed to the Lenders by Onex LP and its subsidiaries under the Tranche B Structure (which debt was guaranteed by certain of the Debtors).

31

124.   The Debtors were also indebted to general unsecured trade and similar creditors in the amount of $56,600,000

125.   On May 22, 2003, an official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases

126   The Committee conducted an investigation of, among other things, causes of action against the Defendants

127.   On August 19, 2003, a settlement was reached between the Debtors, the Committee and the Lenders with respect to the terms of a Chapter 11 plan of reorganization.

128   Pursuant to the terms of this settlement and plan, among other things, the causes of action of the Debtors' estates against the Defendants were transferred to a post-confirmation litigation trust

129.   On November 17, 2003, the Bankruptcy Court entered an order confirming the Fifth Amended and Restated Joint Plan of Reorganization for the Magnatrax Debtors (the "Plan").

130.   The Trust was created under the terms of the Plan to receive and prosecute all causes of action of the Debtors' estates against parties other than "Released Parties," as defined in the Plan, and the Trustee was appointed as trustee of the Trust.

32

131. None of the Defendants is a Released Party under the Plan.

132. Pursuant to the Plan, the Debtors' estates distributed value to the Lenders in the approximate amount of 43% of their prepetition indebtedness under the Credit Agreement, which indebtedness included $170,000,000 of debt on which Onex LP was the primary obligor, that was incurred to finance Onex's acquisition of ABCO and its subsidiaries.

133 The Plan also provides for a return to general unsecured creditors of the Debtors' estates of roughly 8% of the amount of their claims (subject to their rights to share in recoveries by the Trust as provided in the Plan).

134. On information and belief, the United States of America was a creditor of the Debtors as of the Petition Date and at the time of and after each transfer which is sought to be avoided herein.

135. On information and belief, the Debtors' creditors as of the Petition Date include creditors who were creditors at the time of and after each transfer which is sought to be avoided herein.

## COUNT I

### Avoidance and Recovery of Transfers Pursuant to O.C.G.A. §§ 18-2-70 *et seq.*, and 11 U.S.C. §§ 544 and 550 Against The Onex Defendants

136. The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

33

137    During the period from May 1999 through the Petition Date, Magnatrax and its subsidiaries made hundreds of millions of dollars in payments to the Lenders under the Credit Agreement (the "Credit Agreement Transfers") on account of loans for which the Onex Defendants were jointly and severally liable

138.    The proceeds of these loans were used by the Debtors primarily to pay the purchase price for the Onex Defendants' acquisition of ABCO, Republic and Jannock (the "Acquisitions Transfers"), for which the Debtors did not receive reasonable equivalent value.

139    During the period from May 1999 through the Petition Date, the Onex Defendants collected over $40,000,000 in principal and interest payments from Magnatrax and its subsidiaries under the Tranche B Structure (the "Tranche B Transfers").

140    The Onex Defendants were at all relevant times "insiders" of the Debtors as that term is defined in· O C.G.A. § 18-2-71(7); 11 U.S.C. § 101(31); and 28 U.S.C § 3301(5).

141    Each of the Tranche B Transfers were made to an insider for an antecedent debt at a time when ABCO was insolvent.

142    Onex had reasonable cause to believe that ABCO was insolvent when each of the Tranche B Transfers was made

143. During the period from May 1999 through the Petition Date, Onex Corp. collected over $11,000,000 in management fees from ABCO and its subsidiaries under the Management Agreement (the "Management Fee Transfers").

144. Moreover, the Debtors' abdication of control over their businesses to the Onex Defendants, Schwartz, and Govan under the Management Agreement and as a result of the Onex Defendants' placement of their own personnel as the directors and officers of the Debtors constitutes a transfer of a valuable control premium to the Onex Defendants (the "Control Premium Transfer") for which the Debtors received no consideration (in fact, the Debtors paid a hefty management fee to effectuate the Control Premium Transfer).

145. The Credit Agreement Transfers, the Acquisitions Transfers, the Tranche B Transfers, the Management Fee Transfers and the Control Premium Transfer (collectively, the "Transfers") were made with actual intent to hinder, delay or defraud creditors of the acquired entities.

146. Alternatively, the Transfers were made with constructive intent to hinder, delay or defraud creditors, in that·

a. The Debtors did not receive reasonably equivalent value for any of the Transfers,

b       The Debtors were each insolvent at the time each of the Transfers was made or became insolvent as a result thereof, and the Transfers greatly reduced the value of the Debtors' estates available for payment to creditors,

c.      At the time of each of the transfers, the Onex Defendants, as insiders of the Debtors, had reasonable cause to believe that the Debtors were insolvent;

d       At the time of each of the Transfers, each of the Debtors was engaged in a business, or was about to engage in a business, for which any remaining property was unreasonably small capital; and

e       At the time of each of the Transfers, the Debtors intended to incur, or believed that they would incur, debts beyond their ability to pay as they matured

147     Each of the Transfers either was made to or for the benefit of the Onex Defendants.

148     Each of the Transfers is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance in violation of O.C G A. §§ 18-2-74 and -75 and 11 U.S.C § 544

149     Each of the Transfers is recoverable from the Onex Defendants. 11 U S.C § 550.

36

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of the Transfers, which amount will be proven at trial but which is estimated to exceed $600,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just

## COUNT II

### Avoidance and Recovery of Transfers Pursuant to 28 U.S.C. § 3301 *et seq.* and 11 U.S.C. §§ 544 and 550 Against The Onex Defendants

150. The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

151 The Trust further restates and realleges, as if fully set forth herein, the allegations in paragraph 137 through 147 of this Complaint

152. Each of the Transfers is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance in violation of 28 U.S C. § 3304(a) and 11 U S C § 544.

153. Each of the Transfers is recoverable from the Onex Defendants. 11 U S.C. § 550

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of the Transfers,

37

which amount will be proven at trial but which is estimated to exceed

$600,000,000, plus pre-judgment and post-judgment interest and costs associated

with this suit, and grant such other relief as may be just

## COUNT III

### Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 548 and 550 Against the Onex Defendants

154. The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint.

155. The Trust further restates and realleges, as if fully set forth herein, the allegations in paragraph 137 through 147 of this Complaint.

156. Each of the Transfers is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance in violation of 11 U S.C § 548.

157 Each of the Transfers is recoverable from the Onex Defendants pursuant to 11 U S C § 550.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of the Transfers, which amount will be proven at trial but which is estimated to exceed

$600,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT IV

### Avoidance and Recovery of Transfers Pursuant to
### O.C.G.A. §§ 18-2-70 *et seq.*, and 11 U.S.C. §§ 544 and 550 Against Vicwest

158.   The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

159.   In March 2000, ABCO made an interest free loan to Vicwest of funds that ABCO itself borrowed from its interest-bearing credit line with the Lenders.

160.   These funds were then loaned back to ABCO at an interest rate of 12 5% *per annum* under the Mirror Notes.

161   During the period from March 2000 through the Petition Date, ABCO made tens of millions of dollars in payments of principal, interest, fees and costs to or for the benefit of Vicwest under the Mirror Notes transactions (the "Mirror Note Transfers").

162   Vicwest was at all relevant times an "insider" of the Debtors as that term is defined in· O.C.G.A. § 18-2-71(7); 11 U S.C. § 101(31), and 28 U.S.C § 3301(5).

163.  Each of the Mirror Note Transfers was made to an insider for an antecedent debt at a time when ABCO was insolvent.

164   Vicwest had reasonable cause to believe that ABCO was insolvent when each of the Mirror Note Transfers was made

165.  The Mirror Note Transfers were made with actual intent to hinder, delay or defraud creditors of the acquired entities

166.  Alternatively, the Mirror Note Transfers were made with constructive intent to hinder, delay or defraud creditors, in that

a       The Debtors did not receive reasonably equivalent value for any of the Mirror Note Transfers;

b.      The Debtors were each insolvent at the time each of the Mirror Note Transfers was made or became insolvent as a result thereof, and the Transfers greatly reduced the value of the Debtors' estates available for payment to creditors,

c.      At the time of each of the transfers, Vicwest, as an insider of the Debtors, had reasonable cause to believe that the Debtors were insolvent,

d       At the time of each of the Mirror Note Transfers, each of the Debtors was engaged in a business, or was about to engage in a business, for which remaining property was unreasonably small capital, and

e.      At the time of each of the Mirror Note Transfers, the Debtors intended to incur, or believed that they would incur, debts beyond their ability to pay as they matured.

167.   Each of the Mirror Note Transfers was made either to or for the benefit of Vicwest

168.   Each of the Mirror Note Transfers is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance pursuant to O C G A §§ 18-2-74 and -75 and 11 U.S.C. § 544

169.   Each of the Transfers is recoverable from the Vicwest. 11 U S C. § 550.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against Vicwest in the aggregate amount of the Mirror Note Transfers, which amount will be proven at trial but which is estimated to exceed $25,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT V

### Avoidance and Recovery of Transfers Pursuant to
### 28 U.S. C. § 3301 *et seq.*, and 11 U.S.C. §§ 544 and 550 Against Vicwest

170.   The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

171   The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraph 159 through 167 of this Complaint.

172   Each of the Mirror Note Transfers is voidable as an actual fraudulent conveyance or, in the alternative. as a constructive fraudulent conveyance pursuant to 28 U.S C § 3304(a) and 11 U.S.C. § 544.

173   Each of the Transfers is recoverable from the Vicwest   11 U.S C. § 550

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against Vicwest in the aggregate amount of the Mirror Note Transfers, which amount will be proven at trial but which is estimated to exceed $25,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

42

## COUNT VI

### Avoidance and Recovery of Transfers Pursuant to
### 11 U.S.C. §§ 548 and 550 Against Vicwest

174.   The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint.

175   The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraph 159 through 167 of this Complaint.

176   Each of the Mirror Note Transfers is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance pursuant to 11 U.S C. § 548.

177   Each of the Transfers is recoverable from the Vicwest   11 U.S C  § 550.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against Vicwest in the aggregate amount of the Mirror Note Transfers, which amount will be proven at trial but which is estimated to exceed $25,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT VII

### Avoidance of Obligations To The Onex Defendants
### Pursuant to O.C.G.A. §§ 18-2-70 *et seq.*, and 11 U.S.C. §§ 544 and 550

178    The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

179.    The Debtors incurred over $190,000,000 in indebtedness to the Onex Defendants for loans made under the Tranche B Structure.

180.    The proceeds of these loans were used primarily to pay the purchase price for the Onex Defendants' acquisition of ABCO, Republic and Jannock, for which the Debtors did not receive reasonably equivalent value.

181    The Onex Defendants were at all relevant times "insiders" of the Debtors as that term is defined in   O.C G.A. § 18-2-71(7); 11 U.S C § 101(31); and 28 U S.C § 3301(5).

182    The Debtors' indebtedness to the Onex Defendants under the Tranche B Structure was incurred with actual intent to hinder, delay or defraud creditors.

183    Alternatively, the Debtors' indebtedness to the Onex Defendants under the Tranche B Structure was incurred with constructive intent to hinder, delay or defraud creditors, in that:

44

a.     The Debtors received little or no consideration for the obligations they incurred to the Onex Defendants under the Tranche B Structure;

b.     The Debtors were each insolvent at the time each of the obligations they incurred to the Onex Defendants under the Tranche B Structure was incurred or became insolvent as a result thereof,

c     At the time of each of the transfers, the Onex Defendants, as insiders of the Debtors, had reasonable cause to believe that the Debtors were insolvent,

d     At the time of each of the obligations they incurred to the Onex Defendants under the Tranche B Structure was incurred, each of the Debtors was engaged in a business, or was about to engage in a business, for which remaining property was unreasonably small capital; and

e     At the time that each of the obligations they incurred to the Onex Defendants under the Tranche B Structure was incurred, the Debtors intended to incur, or believed that they would incur, debts beyond their ability to pay as they matured.

184.   Each of the Debtors' obligations under the Tranche B Structure was incurred either to or for the benefit of the Onex Defendants.

185.   Each of the Debtors' obligations under the Tranche B Structure is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance in violation of O C G A §§ 18-2-74 and -75 and 11 U S C. § 544.

186   Each of the payments made by the Debtors to the Onex Defendants under the Tranche B Structure is recoverable from the Onex Defendants.  11 U.S.C § 550.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of all payments made by the Debtors to the Onex Defendants under the Tranche B Structure, which amount will be proven at trial but is estimated to exceed $40,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT VIII

### Avoidance of Obligations To The Onex Defendants
### Pursuant to 28 U.S.C. § 3301 *et seq.*, and 11 U.S.C. § 544 and 550

187.   The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

188.   The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraph 179 through 184 of this Complaint

46

189    Each of the Debtors' obligations under the Tranche B Structure is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance in violation of 28 U.S C. § 3304(a) and 11 U.S C. § 544

190    Each of the payments made by the Debtors to the Onex Defendants under the Tranche B Structure is recoverable from the Onex Defendants   11 U S.C. § 550

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of all payments made by the Debtors to the Onex Defendants under the Tranche B Structure, which amount will be proven at trial but is estimated to exceed $40,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just

## COUNT IX

### Avoidance of Obligations To The Onex Defendants
### Pursuant to 11 U.S.C. § 548 and 550

191.    The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

192.    The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraph 179 through 184 of this Complaint

193.   Each of the Debtors' obligations under the Tranche B Structure is voidable as an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance in violation of 11 U.S C  § 548.

194    Each of the payments made by the Debtors to the Onex Defendants under the Tranche B Structure is recoverable from the Onex Defendants.  11 U.S.C. § 550.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of all payments made by the Debtors to the Onex Defendants under the Tranche B Structure, which amount will be proven at trial but is estimated to exceed $40,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT X

### Breach of Fiduciary Duty Against
### Onex Defendants And Management Defendants

195.   The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein.

196.   Hilson, Wright, Ammerman and Blackmon, while serving as officers and directors of Magnatrax and the other Debtors, owed duties of loyalty to the Debtors and fiduciary duties to the Debtors and their creditors   These duties

precluded them from, among other things, exploiting their positions with the Debtors for the benefit of Onex, and excising benefits from the Debtors and conferring them upon Onex. As fiduciaries, Hilson and Wright also owed each of the Debtors an obligation to act with due care and to deal honestly and fairly with the Debtors

197    Onex, acting in accordance with the Management Agreement, performed services tantamount to that of a board of directors for all the Magnatrax entities   Onex therefore assumed the role of a *de facto* board member for all the Debtors and owed fiduciary duties to their creditors and shareholders.  These duties precluded Onex from, among other things, exploiting its position with and control over the Debtors for its own benefit, and excising benefits from the Debtors and conferring them upon itself   As a fiduciary, Onex also owed each of the Debtors an obligation to act with due care and to deal honestly and fairly with the Debtors.

198    Schwartz and Govan directed and controlled all of Onex's conduct under the Management Agreement and other conduct by which Onex controlled the Debtors   Schwartz and Govan performed services tantamount to those of directors for all the Magnatrax entities.  Schwartz and Govan therefore assumed the role of *de facto* board members for all the Debtors and owed fiduciary duties to their creditors and shareholders   These duties precluded

49

Schwartz and Govan from, among other things, exploiting their position with and control over the Debtors for their own benefit and the benefit of Onex, and excising benefits from the Debtors and conferring them upon Onex and themselves  As fiduciaries, Schwartz and Govan also owed each of the Debtors an obligation to act with due care and to deal honestly and fairly with the Debtors.

199.   At all relevant times, the Debtors were insolvent or within the zone of insolvency.

200.   While acting at the behest of and beholden to Onex, the Onex Defendants and the Management Defendants breached their fiduciary duties as directors and officers of the Debtors

201    The Onex Defendants and the Management Defendants breached their fiduciary duties to Magnatrax and ABCO by directing and passing resolutions authorizing the transaction whereby (a) ABCO incurred $140,000,000 of indebtedness to Onex to finance Onex's acquisition of ABCO and (b) ABCO paid merger consideration for its own stock in excess of its value

202    The Onex Defendants and the Management Defendants breached their fiduciary duties to Magnatrax and ABCO by directing and passing resolutions authorizing the transaction whereby (a) ABCO incurred $25,000,000 of

indebtedness to Onex to finance the acquisition of Republic, and (b) ABCO acquired Republic at a price that was grossly in excess of its value.

203    The Onex Defendants and the Management Defendants breached their fiduciary duties to Magnatrax, ABCO and their subsidiaries by directing and passing resolutions authorizing transactions whereby (a) ABCO incurred approximately $230,000,000 of indebtedness to finance the Jannock acquisition, (b) ABCO purchased Jannock and its subsidiaries for more than twice their fair market value, (c) ABCO incurred $57,000,000 of debt at 12.5% interest in order to provide interest-free financing to Vicwest to purchase Jannock, and (d) ABCO and its subsidiaries purchased the Jannock subsidiaries in excess of its value

204.   The Onex Defendants and the Management Defendants breached their fiduciary duties to Magnatrax and ABCO by directing and passing resolutions authorizing ABCO to pledge all of its own assets to Onex as part of Onex's acquisition of ABCO.

205.   The Onex Defendants and the Management Defendants breached their fiduciary duties to Magnatrax by directing and passing resolutions authorizing ABCO to pay an interest rate to Onex, its insider, that was inflated above the rate charged by the Lenders by 25%.

51

206.   The Onex Defendants and the Management Defendants breached their duty to act with ordinary care in authorizing and directing transactions and acquisitions that rendered Magnatrax, ABCO and their subsidiaries insolvent, or, alternatively, that left the companies with unreasonably small capital with which to conduct their business or to satisfy their debts

207.   An independent corporate fiduciary exercising sound business judgment would not have approved or acquiesced in these transactions   The Onex Defendants and the Management Defendants therefore breached their fiduciary duty of care to the Debtors.

208.   The Onex Defendants and the Management Defendants did not act as would an ordinarily prudent person, but instead acted recklessly and in conscious disregard or indifference to the consequences to the Debtors, for the primary benefit of Onex   A reasonably prudent director or officer, acting under similar circumstances and with knowledge of the same facts, would not reasonably believe that he was acting in the best interests of the Debtors in directing the consummation of these transactions and transfers

209.   The Onex Defendants and the Management Defendants breached their fiduciary duties of care and loyalty to ABCO by approving and directing approximately $2,000,000 in payments to Onex Corp. and OMI pursuant

52

to the Management Agreement whereby ABCO paid Onex for "consulting services" associated with Onex's acquisition of ABCO

210.   The Onex Defendants and the Management Defendants breached their fiduciary duties of care and loyalty to ABCO by approving and directing approximately $750,000 in payments to Onex Corp. and OMI pursuant to the Management Agreement whereby ABCO paid Onex for "consulting services" associated with Onex's acquisition of Republic.

211   The Onex Defendants and the Management Defendants breached their fiduciary duties of care and loyalty to ABCO by approving and directing approximately $4,100,000 in payments to Onex Corp and OMI pursuant to the Management Agreement whereby ABCO paid Onex for "consulting services" associated with Onex's acquisition of Jannock.

212.   Hilson had a conflict of interest in that he was also an officer of Onex while purportedly acting on behalf and in the best interests of the Debtors.

213.   Wright had a conflict of interest in that he was also an officer of Onex while purportedly acting on behalf and in the best interests of the Debtors.

214.   The Onex Defendants, Schwartz and Govan each had a conflict of interest while acting as *de facto* board members of the companies, in that the

Onex Defendants, Schwartz and Govan each served their own interests ahead of the interests of the Debtors and their creditors.

215. As a proximate result of the Onex Defendants' and the Management Defendants' breaches of their fiduciary duties, the Debtors and their non-insider creditors have been severely damaged as a result of the Defendants' breaches of their fiduciary duties to the Debtors in an amount to be proven at trial, but which amount is estimated to exceed $250,000,000.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants, Schwartz, Govan, Hilson, Wright, Ammerman and Blackmon, jointly and severally, for all damages resulting from their breach of fiduciary duties, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just

## COUNT XI

### Aiding and Abetting Breach of Fiduciary Duty Against the Onex Defendants and the Management Defendants

216. The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein.

217 The Onex Defendants knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by Schwartz, Govan, Hilson, Wright, Ammerman and Blackmon

54

218. Schwartz knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by the Onex Defendants, Govan, Hilson, Wright, Ammerman and Blackmon.

219. Govan knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by the Onex Defendants, Schwartz, Hilson, Wright, Ammerman and Blackmon

220. Hilson knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by the Onex Defendants, Schwartz, Govan, Wright, Ammerman and Blackmon.

221 Wright knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by the Onex Defendants, Schwartz, Govan, Hilson, Ammerman and Blackmon

222 Ammerman knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by the Onex Defendants, Schwartz, Govan, Hilson, Wright and Blackmon

223 Blackmon knowingly induced, participated and substantially assisted in the breaches of fiduciary duty by the Onex Defendants, Schwartz, Govan, Hilson, Wright and Ammerman.

224    The Debtors have been severely damaged as a result of each of the Onex Defendants, Schwartz, Govan, Hilson, Wright, Ammerman and Blackmon aiding and abetting in the breach of fiduciary duties owed by each of them to the Debtors, in an amount to be proven at trial, which amount is estimated to exceed $250,000,000

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants, Schwartz, Govan, Hilson, Wright, Ammerman and Blackmon, jointly and severally, for all damages resulting from their aiding and abetting the breach of each of their fiduciary duties, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT XII

### Civil Conspiracy Against All Defendants

225.    The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein

226.    All of the Defendants, along with the Lenders and other parties who were released under the Plan, have willfully joined, planned and conspired to embark upon a scheme, artifice and conspiracy to divert value from ABCO and its subsidiaries to themselves, to the detriment of the Debtors and their creditors.

56

227. The Defendants and the other released parties have willfully joined, planned and conspired to embark upon a scheme, artifice and conspiracy to fraudulently transfer assets and value from the Debtors to or for the benefit of themselves.

228. The Defendants and other released parties have willfully joined, planned and conspired to embark upon a scheme, artifice and conspiracy to breach fiduciary duties

229. The Defendants' wrongful actions included overt acts in furtherance of the conspiracy

230. The Defendants' wrongful actions are without privilege or justification.

231 As a direct and proximate result of the Defendants' conspiracy, the Debtors and their creditors have been damaged

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Defendants, jointly and severally, for all damages resulting from their conspiracy to fraudulently transfer assets and value from the Debtors and to breach fiduciary duties owed to the Debtors, which amount will be proven at trial but which is estimated to exceed $600,000,000, plus pre-judgment and post-

judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT XIII

### Alter Ego Liability Against The Onex Defendants

232.   The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein

233.   At all times relevant hereto, the Onex Defendants, pursuant to the Management Agreement and through common officers and directors, controlled and dominated Magnatrax, ABCO and the other Debtors and interfered with and supplanted the Debtors' corporate governance.

234.   The Onex Defendants so dominated and controlled the Debtors that the Debtors were mere instrumentalities of the Onex Defendants, such that the separate corporate status of the Debtors should be disregarded and the Onex Defendants should be held legally responsible for the acts and transactions of the Debtors.

235.   The directors and executives of the Debtors did not act independently in the interest of the companies, but rather took direction from the Onex Defendants.

236. The Onex Defendants, through their subsidiaries, owned a majority of the capital stock of Magnatrax and controlled at least 70% of the voting interests in Magnatrax, which held 100% of the voting interests in ABCO.

237 The Onex Defendants dictated and directed Magnatrax's and ABCO's corporate strategies including, among other matters, (a) developing and implementing corporate and strategic plans, (b) budgeting corporate investments, (c) developing and implementing acquisition and divestiture strategies, (d) providing management, administrative, financial and support services, (e) providing debt and equity financings, and (f) developing international joint ventures and licensing arrangements.

238 The Onex Defendants, on one hand, and Magnatrax, ABCO and most of the other Debtors, on the other, shared common directors and senior officers

239 The Onex Defendants caused Magnatrax, ABCO and its subsidiaries to be grossly undercapitalized.

240. The Onex Defendants' domination and control over the Debtors resulted in reckless and self-dealing transactions whereby Onex extracted value from the Debtors' enterprises at the cost of the Debtors' noninsider creditors

241. The Onex Defendants' domination and control over the Debtors resulted in fraud or inequity to the Debtors' noninsider creditors, and breaches of fiduciary duty owed by the Debtors to their noninsider creditors

242. The Onex Defendants' domination and control over the Debtors proximately resulted in damage to the Debtors' noninsider creditors.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment against the Onex Defendants determining (1) that Magnatrax, ABCO and the other Debtors were alter egos and instrumentalities of the Onex Defendants, (2) that Magnatrax, ABCO and the other Debtors were agents of the Onex Defendants, and (3) that the Onex Defendants are liable for all the debts of Magnatrax, ABCO and the other Debtors, including any applicable interest, and entering judgment in that amount, awarding the costs of this suit, and grant such other relief as may be just

## COUNT XIV

### Disregard of Corporate Formalities
### (Against the Onex Defendants)

243. The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein

244. On information and belief, the Onex Defendants failed to maintain and respect the separate corporate identity of the Onex Defendants, Magnatrax, ABCO and the Debtors

245 Since the time of its conception, Magnatrax has never been provided with adequate capital by the Onex Defendants.

246. Since the time of its acquisition by Magnatrax, which was engineered by Onex Corp., ABCO has never been provided with adequate capital by Onex Corp.

247. Respecting the corporate forms of the Onex Defendants, on one hand, and Magnatrax and ABCO on the other, and treating them as separate entities distinct from each other would promote injustice, inequity or fraud against the noninsider creditors of the Debtors

WHEREFORE, the Trustee respectfully requests that the Court disregard the separate corporate identities of the Onex Defendants and the Debtors, and enter a judgment authorizing the Trustee to recover all unpaid debts of the Debtors against the assets of the Onex Defendants, including any applicable interest, and entering judgment in that amount, awarding the costs of this suit, and grant such other relief as may be just.

61

## COUNT XV

### Single Business Enterprise and *De Facto* Partnership Liability Against The Onex Defendants

248.   The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein.

249.   The Onex Defendants held the majority of the equity interests in Magnatrax, which in turn was the ultimate parent of each of the Debtors

250.   The Onex Defendants exercised complete dominance and control over the businesses of the Debtors.

251.   As a result of Onex Defendants' complete dominance and control over the Debtors, the Onex Defendants and Debtors shared a community of interest in the businesses of the Debtors, including an interest in both the profits and the losses of the Debtors.

252.   The Onex Defendants, Magnatrax, ABCO and ABCO's subsidiaries are components of a single business enterprise, joint venture or *de facto* partnership directed by Onex.

253   The Onex Defendants should be held liable for all unpaid debts of the Debtors' enterprise, of which the Onex Defendants were joint venturers or *de facto* general partners

62

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants declaring them to be joint venturers or de facto general partners with the Debtors in the Debtors' business enterprise, and therefore liable for all unpaid debts of the Debtors incurred in conducting their business, including applicable business, and entering judgment in that amount, awarding the costs of this suit, and grant such other relief as may be just.

## COUNT XVI

### Lender Liability Against The Onex Defendants

254.    The Trust restates and alleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint

255    The Onex Defendants were secured lenders to ABCO and its subsidiaries under the Tranche B Structure.

256    The Onex Defendants were insiders of ABCO and its subsidiaries.

257    The Onex Defendants exercised complete domination and control over ABCO's operations and corporate finance and acquisition strategy pursuant to the express, unambiguous terms of the Management Agreement and through common directors and senior officers.

63

258    The Onex Defendants' control and domination over ABCO and its subsidiaries was so complete that the companies exercised no independent corporate judgment on material matters, including, without limitation, the acquisitions of Republic and Jannock and financing relating to these transactions.

259    The Onex Defendants directed ABCO to make payments of debt service on loans made by the Onex Defendants under the Tranche B Structure to the detriment of noninsider creditors of ABCO and its Debtor-subsidiaries

260.    The Onex Defendants' domination over ABCO and its subsidiaries gave rise to fiduciary duties of care and loyalty owed by the Onex Defendants to their other creditors.

261    As a result of their complete domination and control, the Onex Defendants breached their fiduciary duties to the companies' creditors by (a) directing the companies to consummate recklessly overpriced acquisitions, (b) directing transactions that left ABCO and its subsidiaries undercapitalized, and (c) unnecessarily diverting millions of dollars of value from ABCO to the Onex Defendants, to the detriment of the Debtors' noninsider creditors.

262    The Onex Defendants' unconscionable and inequitable domination and control over ABCO and its subsidiaries resulted in damages to the Debtors' noninsider creditors.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants finding them liable for all unpaid debts of the Debtors incurred in conducting their business, including applicable interest, award the costs of this suit, and grant such other relief as may be just

## COUNT XVII

### Avoidance of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550 Against The Onex Defendants

263     The Trustee incorporates and realleges Paragraphs1 through 135 of this Complaint as if set forth in full herein.

264.    During the one year period prior to the Petition Date, the Debtors made transfers of interests in their property to the Onex Defendants on account of loans made by the Onex Defendants under the Tranche B Structure and in management fees under the Management Agreement (the "Onex Preferential Transfers").

265.    The Onex Preferential Transfers were made to or for the benefit of the Onex Defendants, which were creditors of the Debtors under the Tranche B Structure.

266     The Onex Defendants were at all relevant times insiders of the Debtors

267. The Onex Preferential Transfers were for or on account of an antecedent debt owed by the Debtors before each such transfer was made.

268. The Onex Preferential Transfers were made while the Debtors were insolvent

269. The Onex Preferential Transfers enabled the Onex Defendants to receive more than the Onex Defendants would have received: (a) had the Chapter 11 Cases been cases under chapter 7 of the Bankruptcy Code; (b) the Onex Preferential Transfers had not been made, and (c) the Onex Defendants had received payment of the Debtors' debts to it to the extent provided by the provisions of the Bankruptcy Code

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of all payments made by the Debtors to the Onex Defendants under the Tranche B Structure and under the Management Agreement during the one year period prior to the Petition Date, which amount will be proven at trial but is estimated to exceed $15,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just.

## COUNT XVIII

### Avoidance of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550 Against Vicwest

270    The Trustee incorporates and realleges Paragraphs 1 through 135 of this Complaint as if set forth in full herein.

271.    During the one year period prior to the Petition Date, ABCO Debtors made transfers of interests in their property or for the benefit of Vicwest on account of loans made by Vicwest and Magnatrax Finance under the Mirror Notes (the "Vicwest Preferential Transfers")

272    The Vicwest Preferential Transfers were made to or for the benefit of Vicwest, which was a creditor of ABCO under the Mirror Notes and guarantees thereof executed by ABCO.

273.    Vicwest was at all relevant times an insider of ABCO.

274.    The Vicwest Preferential Transfers were for or on account of an antecedent debt owed by ABCO before each such transfer was made

275.    The Vicwest Preferential Transfers were made while ABCO were insolvent.

276    The Vicwest Preferential Transfers enabled Vicwest to receive more than Vicwest would have received. (a) had the Chapter 11 Cases been cases under chapter 7 of the Bankruptcy Code: (b) the Vicwest Preferential Transfers had

not been made; and (c) Vicwest had received payment of ABCO's debts to it to the extent provided by the provisions of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Onex Defendants in the aggregate amount of all payments made by ABCO to Vicwest in connection with the Mirror Notes during the one year period prior to the Petition Date, which amount will be proven at trial but is estimated to exceed $10,000,000, plus pre-judgment and post-judgment interest and costs associated with this suit, and grant such other relief as may be just

## Count XIX

### Unjust Enrichment Against The Onex Defendants and The Management Defendants.

277.   The Trust restates and realleges, as if fully set forth herein, the allegations of paragraph 1 through 135 of this Complaint.

278.   The Trust further restates and realleges, as if fully set forth herein, the allegations in paragraph 137 through 147 of this Complaint.

279.   The Trust further restates and realleges, as if fully set forth herein, the allegations in paragraphs 196 through 215 of this Complaint.

280.   The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraphs 217 through 224 of this Complaint

68

281.   The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraphs 223 through 242 of this Complaint

282   The Trust further restates and realleges, as if fully set forth herein, the allegations of paragraphs 255 through 262 of this Complaint.

283.   As a result of the complete domination and control of the Debtors and their breaches of the fiduciary duties owing to the Debtors' creditors, the Onex Defendants and the Management Defendants received a benefit from their management of the Debtors, and this benefit inured to the detriment of both the Debtors and the Debtors' creditors.

284   This benefit to the Onex Defendants and the Management Defendants constitutes unjust enrichment, and equity requires that all transfers made and obligations incurred by the Debtors to or for the benefit of the Onex Defendants and the Management Defendants be avoided and returned to the Trust

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Defendants, jointly and severally, for all damages that resulted in the Defendants' unjust enrichment, which amount will be proven at trial but which is estimated to exceed $600,000,000, plus pre-judgment interest and post-judgment interest, the costs associated with this suit, and grant such other relief as may be just.

69

## JURY DEMAND

The Trustee demands a trial by jury.


DATED:  May 10, 2005

Daniel J King, djking@kslaw.com
Georgia Bar No. 420140
Benjamin Lee, blee@kslaw com
Georgia Bar No  443082
KING & SPALDING LLP
191 Peachtree Street, N.E.
Atlanta, GA 30303-1763
Telephone   (404) 572-4600
Facsimile.  (404) 572-5100

and

Joel T  Pelz
Mark K  Thomas
Catherine L. Steege
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone.  (312) 222-9350
Facsimile:   (312) 527-5484

Counsel for Plaintiff, Richard M.
Kipperman, not individually but solely in his
capacity as Trustee for the Magnatrax
Litigation Trust