**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RICHARD M. KIPPERMAN, | : | |
| not individually but solely in his | : | |
| capacity as Trustee for the | : | |
| Magnatrax Litigation Trust, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 1:05-CV-1242-JOF |
| | : | |
| v. | : | |
| | : | |
| ONEX CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

This matter is before the court on Defendants Ammerman and Blackmon's motion to dismiss [29], the Onex Defendants and remaining Management Defendants' motion to dismiss [40], Defendants' motion for leave to file excess pages [42], Plaintiff's motion for leave to file excess pages [49], Defendants' motion for leave to file excess pages [53], Defendants' motion to substitute exhibit regarding [29] motion to dismiss [57], Defendants' motion to submit a corrected affidavit [59], Defendants' motion to strike [62-1], and Defendants' motion to file a supplemental memorandum of law [62-2].[1]

---

[1] For good cause shown, the court GRANTS Defendants' motion for leave to file excess pages [42], Plaintiff's motion for leave to file excess pages [49], Defendants' motion for leave to file excess pages [53], Defendants' motion to substitute exhibit re [29] motion to dismiss [57], and Defendants' motion to submit a corrected affidavit [59].

## I.   Background

### A.   Procedural History

On May 10, 2005, Plaintiff, Richard M. Kipperman, as trustee for the Magnatrax Litigation Trust, filed suit against Defendants, 302733 Nova Scotia, Inc., OMI Partnership Holdings, Ltd., Onex Corporation, Onex ABCO Limited Partnership, Onex ABCO Finance, LLC, Onex ABCO Finance II, LLC, Onex American Holdings, LLC, 1354495 Ontario, Inc. (collectively "Onex Defendants"), Gerald W. Schwartz, Mark Hilson, Nigel Wright, Christopher A. Govan, Robert T. Ammerman, R. Charles Blackmon (collectively "Management Defendants"), and VicWest Corporation ("VicWest").   Plaintiff's complaint set forth its claims in nineteen counts.[2]   On July 15, 2005, Defendants Ammerman and Blackmon

---

[2] Plaintiff brought claims for 1) avoidance and recovery of transfers pursuant to O.C.G.A. § 18-2-70, *et seq*. and 11 U.S.C. §§ 544 and 550 against Onex Defendants; 2) avoidance and recovery of transfers pursuant to 28 U.S.C. § 3301, *et seq*. and 11 U.S.C. §§ 544 and 550 against Onex Defendants; 3) avoidance and recovery of transfers pursuant to 11 U.S.C. §§ 548 and 550 against Onex Defendants; 4) avoidance and recovery of transfers pursuant to O.C.G.A. § 18-2-70, *et seq*. and 11 U.S.C. §§ 544 and 550 against Vicwest; 5) avoidance and recovery of transfers pursuant to 28 U.S.C. § 3301, *et seq*. and 11 U.S.C. §§ 544 and 550 against Vicwest; 6) avoidance and recovery of transfers pursuant to 11 U.S.C. §§ 548 and 550 against Vicwest; 7) avoidance of obligations to the Onex Defendants pursuant to O.C.G.A. § 18-2-70 and 11 U.S.C. §§ 544 and 550; 8) avoidance of obligations to the Onex Defendants pursuant to 28 U.S.C. § 3301, *et seq*. and 11 U.S.C. §§ 544 and 550; 9) avoidance of obligations to the Onex Defendants pursuant to 11 U.S.C. §§ 548 and 550; 10) breach of fiduciary duty against Onex Defendants and Management Defendants; 11) aiding and abetting breach of fiduciary duty against the Onex Defendants and the Management Defendants; 12) civil conspiracy against all Defendants; 13) alter-ego liability against the Onex Defendants; 14) disregard of the corporate formalities; 15) single business enterprise and *de facto* partnership liability against the Onex Defendants; 16) lender liability against the Onex Defendants; 17) avoidance of preferential transfers pursuant to 11 U.S.C. §§ 547 and 550

filed a motion to dismiss.   On August 1, 2005, Defendant VicWest filed a motion to dismiss.

The same day the Onex Defendants as well as Defendants Schwartz, Hilson, Wright, and Govan

filed a motion to dismiss.   On September 30, 2005, Plaintiff filed a notice of voluntary

dismissal of claims against Defendant Vicwest.   The court held oral argument on the Onex

Defendants' motion to dismiss on March 2, 2006.   On March 7, 2006, the Onex Defendants

as well as Defendants Schwartz, Hilson, Wright, and Govan filed a motion to strike or in the

alternative a motion for leave to file a supplemental memorandum of law.

> **B.**     **Facts**

This case is a result of a bankruptcy filing by Magnatrax Corporation and related

entities in May 2003.   Plaintiff is a trustee for the Magnatrax Litigation Trust, a post-

confirmation litigation trust established pursuant to the conditions of the Magnatrax Litigation

Trust Agreement dated January 8, 2004.   Cmplt., ¶ 14.   This agreement arose out of "the Fifth

Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy

Code dated September 17, 2003, and confirmed on November 17, 2003, in the chapter 11

bankruptcy case of *In re Magnatrax Corporation et al.* in the United States Bankruptcy Court

for the District of Delaware, Case No. 03-11402 . . . ." *Id.*

---

against the Onex Defendants; 18) avoidance of preferential transfers pursuant to 11 U.S.C. §§
547 and 550 against Vicwest; and 19) unjust enrichment against the Onex Defendants and the
Management Defendants.

AO 72A
(Rev.8/82)

Defendant Onex Corporation ("Onex Corp.") is an Ontario corporation.   *Id.,* ¶ 16. 1354495 Ontario, Inc. ("Ontario"), is an Ontario corporation.   Vullo Aff., Ex 14.   Defendant Onex ABCO Limited Partnership ("Onex ABCO LP") is a Nevada limited partnership, of which Defendant Onex Corp. holds a 99.9% interest and Defendant Ontario holds a .1% interest.   Cmplt., ¶ 17.   Defendant Onex American Holdings LLC ("Onex American") is a Delaware limited liability company which is a wholly-owned subsidiary of Defendant Onex Corp.   *Id.* at ¶ 18.   Defendant 302733 Nova Scotia, Inc. ("Nova Scotia"), is a Nova Scotia corporation which is a wholly-owned subsidiary of Defendant Onex ABCO LP.   *Id.* at ¶ 20. Defendant Onex ABCO Finance, LLC ("Onex Finance I"), and Defendant Onex ABCO Finance II, LLC ("Onex Finance II"), are both Wyoming limited liability companies of which Defendant Nova Scotia is the majority shareholder.   *Id.* at ¶¶ 20-22.   Defendant OMI Partnership Holdings, Ltd. ("OMI"),   all of whose outstanding shares are held by Defendant Onex Corp., is an Ontario corporation with its principal place of business in Toronto.   *Id.* at ¶ 23.

Defendant Gerald W. Schwartz ("Schwartz") is a citizen of Canada and resident of Ontario.   *Id.* at ¶ 25.   Defendant Schwartz is the single largest shareholder of Onex Corp. and is Onex Corp.'s President and Chief Executive Officer and the Chairman of Onex Corp.'s board of directors.   *Id.*   Defendant Christopher A. Govan ("Govan") is a citizen of Canada and a resident of Ontario.   *Id.* at ¶ 26.   Defendant Govan is an officer of Onex Corp.   *Id.*   Defendant Nigel Wright ("Wright") is a citizen of Canada and a resident of Ontario.   *Id.* at ¶ 27.

Defendant Wright is an officer of Onex.   *Id.*   Defendant Wright served on the Board of Directors and was an officer of Magnatrax Corp., American Buildings Company ("ABCO"), VicWest, Jannock Ltd. ("Jannock"), Jannock, Inc., and other companies under the Onex/Magnatrax umbrella.   *Id.*   Defendant Mark Hilson ("Hilson") is a citizen of Canada and a resident of Ontario.   *Id.* at ¶ 28.   Defendant Hilson is an officer of Onex.   *Id*.   Defendant Hilson served on the Board of Directors and was an officer of Magnatrax Corp., ABCO, VicWest, Jannock Ltd, Jannock, Inc., and other companies under the Onex/Magnatrax umbrella.   *Id.*   Defendant R. Charles Blackmon ("Blackmon") is a citizen of the United States and a resident of Eufaula, Alabama.   *Id.* at ¶ 29.   Between 1992 and 2002, Defendant Blackmon held ABCO's highest financial position.   *Id.*   Defendant Blackmon served on the Board of Directors of Magnatrax between 1999 and 2002 and served as an officer and a member of the board of directors of numerous companies under the Onex/Magnatrax umbrella.   *Id.*   Defendant Robert T. Ammerman ("Ammerman")  is a citizen of the United States and a resident of Columbus, Georgia.   *Id.* at ¶ 30.   Between 1992 and 2002, Defendant Ammerman was president of ABCO.   *Id.*   Defendant Ammerman served on the Board of Directors of Magnatrax between 1999 and 2002 and served as an officer and a member of the board of directors of numerous companies under the Onex/Magnatrax umbrella.   *Id.*   In 2004, Defendant Ammerman rejoined ABCO and resumed his position as president.   *Id.*

In April 1999, Onex Corp. took steps to acquire ABCO.   ABCO was acquired by ABCO Holding Corp., which was subsequently named Magnatrax Corp.   *Id.* at ¶¶ 32-38.   "The

purchase price for the ABCO acquisition was financed in part through a complex series of borrowing pursuant to an Amended Credit Agreement dated as of May 11, 1999 . . . by and among ABCO Onex LP and Magnatrax as Borrowers, and Canadian Imperial Bank of Commerce . . . and several other U.S. and Canadian financial institutions . . . ." *Id.* at ¶ 41.  As part of this Credit Agreement, the banks made a loan of $140,025,850.00 to Defendant Onex LP.  *Id.* at ¶ 42.  Defendant Onex LP made a capital contribution in the same amount to Defendant Nova Scotia in exchange for common stock.  *Id.* at ¶ 43.  Defendant Nova Scotia in turn made capital contributions of $139,275,000 and $750,000 to Defendants Onex Finance I and Onex Finance II, respectively.  *Id.* at ¶ 44.  Defendant Onex Finance II then contributed $750,000 to Defendant Onex Finance I, which then loaned $140,000,000 to ABCO to finance the Onex/Magnatrax purchase of ABCO's stock.[3]  *Id.* at ¶ 45.  ABCO pledged and mortgaged all of its assets to borrow this sum and then used the proceeds and its cash flow to pay its own shareholders, to pay debt service to Onex, to pay transaction fees to Onex and the ultimate lenders, and to pay professional fees on all sides of the transaction.  *Id.* at ¶ 48.  As a result of this series of transactions ABCO was left insolvent.  *Id.* at ¶ 54.  Under the lending structure described above, ABCO also acquired the assets of Republic Builders Products ("Republic") and Jannock, Ltd.

---

[3]   While it seems to the court that paragraphs 33 through 36 of the complaint are in conflict with this statement, as the conflict does not appear to impact the issues before the court, the court will not try to resolve this apparent conflict at this time.

Upon the consummation of the ABCO acquisition in May 1999, ABCO and Onex Corp. entered into a management agreement dated May 11, 1999, pursuant to which Onex Corp. agreed to perform certain management functions and "consulting services" for ABCO. *Id.* at ¶ 55.

> Onex Corp.'s duties under the management agreement included "consulting with and assisting [ABCO's] Board and management in the following (I) developing and implementing corporate and strategic plans; (ii) budgeting future corporate investments, (iii) developing and implementing acquisition and divestiture strategies, (iv) providing other management administration, financial and support services, (v) subsequent debt and equity financing; and (vi) developing international joint ventures or licensing arrangements with prospective partners or licensees."

*Id*. at ¶ 56.   Pursuant to the management agreement, Defendant Onex Corp. exercised control over key board and management functions, including corporate and strategic plans, acquisition strategy, and financing. *Id.* at ¶ 57.   ABCO paid Defendant Onex Corp. $375,000 a year under the management agreement as well as other fees. *Id.* at ¶ 59.

7

### C.    Contentions

Defendants make various arguments which they claim support dismissing Plaintiff's complaint.   First, the Onex Defendants and the Management Defendants, except Defendants Ammerman and Blackmon, contend that Plaintiff has not shown that any of the Defendants are subject to personal jurisdiction in Georgia.   Second, the Onex Defendants and the Management Defendants, except Defendants Ammerman and Blackmon, contend that Defendants are without standing to bring the avoidance actions.   Third, Defendants Wright, Hilson, Ammerman and Blackmon contend that any claims against them should be dismissed as they were released under the Fifth Amended and Restated Joint Plan of Reorganization. Finally, the Onex Defendants and the Management Defendants, except Defendants Ammerman and Blackmon, contend that each of Plaintiff's claims should be dismissed for failure to state a claim.

Plaintiff contends that he has sufficiently alleged personal jurisdiction with respect to the Defendants.   Further, Plaintiff contends that he has standing to bring this action under bankruptcy law and by the terms of the Fifth Amended and Restated Joint Plan of Reorganization.   Further, he contends that the specific language of the Fifth Amended and Restated Joint Plan of Reorganization excepts Defendants Wright, Hilson, Ammerman and Blackmon from the released parties.   Finally, Plaintiff claims that each cause of action, whether under federal or state law, should not be dismissed for failure to state a claim.

### II.    Discussion

AO 72A
(Rev.8/82)

A.      **Personal Jurisdiction**[4]

Defendants claim that Plaintiff's complaint should be dismissed because this court lacks personal jurisdiction over them.   Plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994).   "For purposes of resolving a motion to dismiss for lack of personal jurisdiction, the court generally construes as true the Plaintiff's allegations supporting the existence of jurisdiction."  *Parker v. Brush Wellman, Inc.*, 377 F. Supp.2d 1290, 1304 (N.D. Ga. 2005) (Story, J.) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1998)).   "[I]f the defendant controverts the plaintiff's allegations with evidence, the plaintiff, to survive the motion to dismiss, must produce evidence of his own to make a prima facie jurisdictional showing."  *Id.*   Where the court does not hold an evidentiary hearing on the matter, Plaintiff must only make a *prima facie* showing of jurisdiction.  *Francosteel*, 19 F.3d at 626.   A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict.   *Id.*   A federal court must have both statutory and constitutional authority to

---

[4] Defendants contend that Plaintiff should be estopped from raising any argument under Subsection (1) of the Georgia long-arm statute based upon the representation made in his responsive pleading stating that he would not be relying on this section.   Plaintiff contends that his reason for changing his stance was a change in Georgia law recognized in *Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames*, 279 Ga. 672 (2005), which was decided after Plaintiff filed his responsive pleadings.   The court finds Plaintiff's position persuasive.   Therefore, the court DENIES Defendants' motion to strike.   However, in an effort to prevent any possible prejudice to Defendants as a result of their reliance on the original pleadings, the court GRANTS Defendants' motion to file a supplemental memorandum of law.

9

assert jurisdiction over a defendant.  *See McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957).  In analyzing personal jurisdiction, the court must first determine whether a defendant is subject to jurisdiction under Georgia's long-arm statute.  If so, the court must then determine if an assertion of jurisdiction would be constitutional.  *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

> The Georgia Long-Arm Statute provides:
>
> A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>  . . .

O.C.G.A. § 9-10-91(1-3) (2005).

The court considers two factors when determining whether asserting personal jurisdiction over nonresident defendants would comport with due process.[5]  First, the court must decide whether the defendant has "minimum contacts" with the forum state, Georgia.

---

[5] Due process contemplates two types of jurisdiction over the person:  general and specific jurisdiction.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984). Plaintiff apparently does not assert that the court would have general jurisdiction over Defendant.  Thus, the court's analysis proceeds on the factors of "specific jurisdiction" alone.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).   To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there."  *Francosteel*, 19 F.3d at 627.  *See also Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 746-48 (11th Cir. 2002).   Second, the court must determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

> In the Complaint, Plaintiff states:

> > This Court has personal jurisdiction over each of the Defendants herein pursuant to O.C.G.A. § 9-10-91 in that the Defendants transacted business within Georgia, committed tortious or wrongful acts or omissions within Georgia, or committed tortious or wrongful injuries within Georgia caused by acts or omissions outside of Georgia.  The Defendants' actions establishing minimum contacts with Georgia include, but are not limited to, owning and directing the affairs of Magnatrax, which was headquartered in Alpharetta, Georgia, transacting business with Magnatrax; and participating in Magnatrax board of director meetings wherein certain of the contested transactions were authorized and approved.

Cmplt., ¶ 11.

> Here, the only evidence provided by Defendants with reference to personal jurisdiction consists of a Magnatrax Corporation's  "Report on Operations," which states that "[s]hortly after the end of the second quarter, MAGNATRAX moved its senior executive functions to Atlanta, Georgia."

11

The court finds that Defendants have not controverted Plaintiff's allegations with evidence. As such, the court will accept Plaintiff's allegations with regard to personal jurisdiction as true. Therefore, the court DENIES Plaintiff's motion to dismiss for lack of personal jurisdiction.

**B.    Standing**

Defendants next contend that the Plaintiff-Trustee lacks standing under 11 U.S.C. § 1123(b)(3)(B) and 11 § U.S.C. 550 to bring this complaint. 11 U.S.C. § 1123(b)(3)(B) provides: "[A] plan may provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest of the debtor or the estate]." Section 550 of the Bankruptcy Code provides: "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 548, 549, 533(b), or 724(a) of this title, the trustee may recover for the benefit of the estate, the property transferred . . . ." 11 U.S.C. § 550(a).

Defendants are barred from attacking Plaintiff's standing as such action constitutes a collateral attack on the Fifth Amended Plan of Reorganization. "It is established law that a confirmation order satisfies 'the requirements of a judgment that can be given [preclusive] effect.'" *In re Optical Technologies, Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990)). Like the plan in *In re Optical Technologies, Inc*, the provisions of the confirmed Fifth Amended Plan of Reorganization are res judicata on the current action. Further, Defendants cannot object to the terms of the Plan;

AO 72A
(Rev.8/82)

such arguments are deemed waived if not raised in objection of the confirmation.  *In re Optical Technologies, Inc.*, 425 F.3d at 1301 ("appellants cannot raise objections to the actual terms of the Fourth Amended Plan or the confirmation order, as these were deemed waived when they failed to object to confirmation.  *Justice Oaks*, 898 F.2d at 1552 (holding that 'any . . . claims [that] were actually made, *or could have been made*' in an objection to confirmation are barred from relitigation in collateral proceedings")).

Here, the Plan granted to the Litigation Trust the right to bring all assigned causes of action.  Avoidance actions, brought for the benefit of the estate, fall squarely within the assigned cause of action.  Defendants, by attacking Plaintiff's standing to bring such claims, raise an indirect collateral attack on the terms of the confirmed plan which could have been raised at the Plan's confirmation.  As Defendants did not raise such objections, the court deems such an argument waived.

Further, assuming *arguendo* that the confirmed plan did not have preclusive effect on this action, Plaintiff still has standing to bring this action.  In order to assert the avoidance claims against the Defendants, Plaintiff need only establish that:  (1) he has been appointed, and (2) he is a representative of the estate.  *Pardo v. Pacificare of Tex., Inc.* (*In re APF Co.*, 264 B.R. 344, 353 (Bankr. D. Del. 2001) (*citing In re Mako, Inc.*, 985 F.2d 1052, 1054 (10th Cir.1993); *In re Sweetwater*, 884 F.2d 1323, 1327-28 (10th Cir.1989); *In re Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir.1995)).  "The first element requires that the court approve the appointed party, as for example, through plan confirmation."  *Pardo*, 264

13

B.R. at 353 (citing *Sweetwater*, 884 F.2d at 1326). "As for the second element, courts apply a case-by-case analysis to determine whether the appointed party's responsibilities qualify it as a representative of the estate. *In re Texas General Petroleum Corp.*, 52 F.3d 1330 (5th Cir 1995) (citing *Sweetwater*, 884 F.2d at 1326-27 ("The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors.")).

Plaintiff has established both elements in this case. The parties do not contest that Plaintiff Trustee was appointed. Rather, the issue is whether Plaintiff is a representative of the estate. Defendants contend that Plaintiff is not a representative of the estate because he represents only a subsection of the unsecured creditors, those who opted into the litigation trust.

Under the plan of reorganization, the right to any avoidance claims was transferred to the litigation trust. Any amounts recovered by the Plaintiff will be distributed to the beneficiaries of the Trust, which is comprised of some of the debtor's unsecured creditors. Every unsecured creditor had the opportunity to opt into the litigation trust. Had all of the unsecured creditors decided to enter into the litigation trust, Plaintiff would undoubtably had standing to pursue this claim. *In re Sweetwater*, 884 F.2d at 1327. Thus, Defendants cannot rely on the fact that certain creditors affirmatively eschewed their right to enter into the litigation trust and pursue the avoidance actions to argue that the trustee does not represent the class of unsecured creditors and is thus without standing. As all creditors had the right to

14

be part of the avoidance actions and receive any benefit, the court finds that any recovery by Plaintiff will be for the benefit of the estate. Therefore, the court DENIES Defendants' motion to dismiss for lack of standing.

Defendants also contend that the Trustee has traded fifty percent of the profits of the litigation trust to IML, a foreign corporation, in return for IML funding the litigation. Def. Mot. to Dismiss at 40. Defendants contend that the funding arrangement between the trust and IML is an improper assignment. Further, Defendants assert that the contract with IML is champertous. The court finds that while such arguments may affect the validity and enforceability of such an agreement, they do not affect Plaintiff's standing. Plaintiff is still seeking recovery for the benefit of the estate and thus has standing under 11 U.S.C. § 1123(b)(3)(B) and 11 § U.S.C. 550 to bring this complaint. This court declines to address the relationship between the trust and a litigation funding source at this time as it does not affect the complaint against the Defendants.

Finally, Defendants ask this court to rule that Plaintiff is entitled only to recover the amount of injury to the creditors who opted into the litigation trust. This court declines to narrow the case on the issue of recovery at this time. Whether, under bankruptcy principles, a plaintiff representing a class of unsecured creditors has or does not have the right to recover more than the amount of the actual damages of those unsecured creditors is an issue that is better determined after liability issues.

**C.    Individual Defendants**

15

Defendants Hilson, Wright, Ammerman, and Blackmon all contend that all claims against them should be dismissed as they are released parties.   Whether or not these Defendants qualify as released parties depends solely on the language of the Fifth Amended and Restated Joint Plan of Reorganization (hereinafter "the Plan").   Pursuant to the Plan, the Litigation trust, through its trustee, received the right to bring the "Assigned Causes of Action."  Plan § 4.21.   The Plan defined "Assigned Causes of Action as the "right title and interest of the Magnatrax Debtors and the Reorganized Magnatrax Debtors to pursue, litigate, settle or otherwise resolve any Cause of Action against Onex Corporation or any Onex Affiliate, but specifically excluding any Cause of Action against any released party."   Plan, § 1.20.  The section defining "Released Parties" includes

> (h) the officers and directors of the Magnatrax Debtors and Reorganized Magnatrax Debtors as of the filing date, acting solely in such capacity, and (I) the Related Persons of each of the Persons referred to in clauses (a) through (h), but specifically excluding from the "Released Parties" (1) any of the Canadian Magnatrax Debtors and (2) Onex and the Onex Affiliates.

Plan, § 1.128.

> An Onex Affiliate means OMI Partnership Holdings, Ltd., Onex American Holdings LLC, Onex ABCO Limited Partnership, 1354495 Ontario, Inc., 302733 Nova Scotia, Onex ABCO Finance LLC, Onex ABCO Finance II LLC or any Person that controls, is controlled by, or is under common control with, Onex, but specifically excluding (a) the Magnatrax Debtors, (b) the Reorganized Magnatrax Debtors, (c) the Canadian Magntrax Debtors and (d) the Related Persons of each Person identified in clauses (a), (b) and (c).   The term "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used with respect to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction

16

of the management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

Plan, § 1.110.

The Plan, in § 1.126, states:

"Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, employees, representatives, advisors (whether engaged prior to or subsequent to the Filing Date), attorneys (whether engaged prior to or subsequent to the Filing Date), acting in such capacity, and any Person claiming by or through any of them.

Finally, the Plan defines a Person as "an individual, partnership, corporation, business trust, estate, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, joint venture or other entity or any government, government agency or any subdivision, department or other instrumentality thereof." Plan, § 1.113.

Defendants Ammerman and Blackmon contend that they are released parties under subsection (I) of § 1.128 of the Plan. Defendants Wright and Hilson contend that they are released parties through subsection (h) and subsection (I) of § 1.128 of the Plan. Assuming *arguendo* that Defendants Wright, Hilson, Ammerman and Blackmon, fit under either subsection (h) or (I) of § 1.128 of the Plan, they are still not released parties. Section 1.128 of the Plan specifically excludes from the "released parties" any "Onex Affiliate." By virtue of the complaint Plaintiff has alleged that all of these Defendants control, were controlled by, or were under common control with Onex. Cmplt., ¶¶ 27, 28, 29, 30, and 196.

Pursuant to the exception found in § 1.110 of the Plan, Defendants contend that they were related persons of the Magnatrax debtors as they fell into the category of "present and former members, partners, equity-holders, officers, directors, employees, representatives, advisors (whether engaged prior to or subsequent to the Filing Date), attorneys" of the Magnatrax debtors.  However, the court reads § 1.126 to define related persons as the successors, assigns and present and former affiliates of a person.  Further, the court reads the pronoun "their" in the following clause as modifying the successors, assigns and present and former affiliates.  Therefore, only the present and former members, partners, equity-holders, officers, directors, employees, representatives, advisors (whether engaged prior to or subsequent to the Filing Date), attorneys of the successors, assigns and present and former affiliates of the Magnatrax debtors are protected as related parties to the Magnatrax debtors.

As such, Defendants Wright, Hilson, Ammerman and Blackmon are considered Onex Affiliates and specifically excluded from the group of released parties.  Therefore, the court DENIES Defendants' motion to dismiss claims against Defendants Wright, Hilson, and DENIES Defendants Ammerman and Blackmon's motion to dismiss on this ground.

### D.    Pleading Requirements - Notice Pleadings - Rule 8(a)

As an initial matter, Plaintiff concedes to the dismissal without prejudice of Counts XIV and XV for disregard of corporate formalities and *de facto* partnership liability as such claims are effectively subsumed within Plaintiff's alter ego claim.  Pltf. Omnibus Response at 92.

18

Defendants contend that this court should dismiss Plaintiff's complaint pursuant to Rule 8(a) of the Federal Rules of Civil Procedure. Specifically, Defendants contend that Plaintiff has impermissibly lumped all of the Onex Defendants together and not put each individual Defendant on notice of its allegedly injurious actions.

The court finds that Plaintiff's complaint does not run afoul of Federal Rule of Civil Procedure 8(a). The Federal Rules of Civil Procedure generally allow for liberal pleadings:

> A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a). And, under the rule, "[n]o technical forms of pleading are required." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997), quoting Fed. R. Civ. P. 8(a).

Here, the court finds that Plaintiff has pleaded sufficient facts to satisfy Rule 8(a). The fact that a number of its claims are brought against "Defendants" generally rather than each specifically does not violate the Rule 8 requirements. *Crowe* at 1539; *Peters v. Amoco. Oil Co.*, 57 F. Supp.2d 1268, 1276 (M.D. Ala. 1999).

Moreover, Plaintiff contends that the Onex Defendants are alter-egos of each other stating that "Onex Defendants failed to maintain and respect the separate corporate identity of the Onex Defendants" and requests that the court disregard the separate corporate identities of the Onex Defendants. Cmplt., ¶¶ 244, 247. Therefore, Plaintiff has plead a sufficient basis

19

for addressing all of the Onex Defendants together and has satisfied Rule 8(a)'s notice pleading requirement.

**E.      Motion to Dismiss for Failure to State a Claim**

Much of Defendants' motion to dismiss concerns their contention that the complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure because the various counts fail to state a claim upon which relief can be granted.   While many of the arguments of both Defendants and Plaintiff are repeated as to the various counts, the court will look into the validity of those arguments as they are applied to various causes of action.

**1.      Avoidance Actions (Onex Defendants) (Counts I, II, III, VII, VIII, and IX)**

**a)      Credit Agreement Transfers**

Defendants claim that pursuant to Rule 12(b)(6) this court should dismiss Plaintiff's avoidance claims relating to the "Credit Agreement Transfers" -- the payments made by Magnatrax and its subsidiaries to the Lenders under the Credit Agreement.   Def. Motion to Dismiss at 52-59.   They set forth four grounds justifying dismissal of these claims:   (1) There are no allegations that any Defendant "was an initial transferee, an immediate transferee, or a transferee for whose benefit the Credit Agreement transfers were made," *id*. at 53; (2) even if an Onex Defendant were a transferee (which none is), because each of the Credit Agreement Transfers was made for reasonably equivalent value as a matter of law, there cannot be any fraudulent conveyances, *id*. at 54-56; (3) the Credit Agreement Transfers claims are time

20

barred, *id.* at 56-58; and (4) the claims with respect to the Credit Agreement Transfers do not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity, *id.* at 58-59.[6]

### (1)      Onex Defendants are not Transferees

The court now turns to the first ground asserted by Defendants for a Rule 12(b)(6) dismissal as to claims relating to the Credit Agreement Transfers – that there are no allegations that any Defendant "was an initial transferee, an immediate transferee, or a *transferee* for whose benefit the Credit Agreement transfers were made.  *Id.* at 53 (emphasis added).  By definition, both in the Complaint and in Defendants' briefs and Plaintiff's brief, the Credit Agreement Transfers refer to the payments made under the Credit Agreement by Magnatrax and its subsidiaries to the Lenders, who are not parties to this action.  Defendants rely on several cases dismissing claims asserted under 12 U.S.C. § 550 or O.C.G.A. § 18-2-22 (now repealed) because defendants therein were not transferees.

However, the Eleventh Circuit Court of Appeals has stressed that 11 U.S.C. § 550 is not limited to actions against transferees, but specifically includes any "*entity* for whose benefit such transfer was made," and thus entities other than transferees may be held liable.  *In re Int'l Mgmt. Assoc.*, 399 F.3d 1288, 1292 (11th Cir. 2005) (quoting 11 U.S.C. § 550(a)(1)) (emphasis added).  The *Int'l Mgmt.* court added that the "paradigm case of a

---

[6] Defendants' argument regarding Federal Rule of Civil Procedure 9(b) is addressed above.

benefit under 550(a)" is the benefit to the guarantor by the payment of the underlying debt of the debtor. *Id.* In response to the motion to dismiss, Plaintiff stresses that his Complaint at ¶ 137 specifically alleges that the Defendants herein were jointly and severally liable for loans on account of which the Credit Agreement Transfers were made.

Abandoning the "only transferees can be held liable" theory, Defendants ask the court in its Reply Memorandum to dismiss the claims as to the Credit Agreement Transfers because the terms of the Credit Agreement do not specifically provide that any Onex Defendant has joint and several liability. Def. Reply Memorandum at 49. Defendants submit with the Reply Memorandum the Credit Agreement for the "sole purpose" of refuting Plaintiff's contention about joint and several liability. *Id.* at 49 n. 26.

Ordinarily, courts ruling on a motion to dismiss do not consider anything beyond the face of the complaint and the documents attached thereto. *Financial Security Assurance, Inc. v. Stephens, Inc., et al.*, 450 F.3d 1257, 1264 (11th Cir. 2006); *Brooks v. Blue Cross and Blue Shield of Fla., Inc.* 116 F.3d 1364, 1368 (11th Cir. 1997). However, in cases in which the plaintiff refers to the document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss, the court may consider such document in connection with a motion to dismiss. *Financial Security*, at 1264 (citing *Harris v. Ivax*, 183 F.3d 799, 802 n.2 (11th Cir. 1999)); *Brooks*, 116 F.3d at 1368-69. However, while the District Court is permitted to consider such materials attached to the motion, the court is not required to do so. *Prager v. LaFaver*, 180

F.3d 1185, 1189 (10th Cir. 1999); *see also Brooks*, 116 F.3d at 1369 (the Court "*may* consider" such documents as part of the pleadings).

This court declines to exercise its discretion to consider the terms of the Credit Agreement with respect to this motion to dismiss. The Credit Agreement is referred to by Plaintiff in the Complaint. The court assumes, solely for purposes of this motion, that the agreement is central to its claim as to the Credit Agreement Transfers. Also for purposes of this motion, the court assumes that the terms of the Agreement are not in dispute. However, the Defendants did not attach the Credit Agreement to their motion but rather submitted it for the first time with their Reply Memorandum, to which Plaintiff did not have the opportunity to reply. Plaintiff did not have the opportunity to refute Defendants' new arguments as to what the Credit Agreement provides or argue against this court exercising its discretion. Further, the Complaint does not indicate (as Defendants seem to suggest) that Plaintiff relies solely on the terms of the Credit Agreement itself to assert that the Defendants were jointly and severally liable as to loans for which these transfers were made.

To the extent that Defendants seek to dismiss the claims with respect to the Credit Agreement Transfers because Defendants were not transferees, the motion is DENIED.

23

**(2)**      **Transfers Made for Reasonably Equivalent Value**

Defendants' second reason for a Rule 12(b)(6) dismissal of the allegations regarding the Credit Agreement Transfers is that each of such transfers "was made for reasonably equivalent value as a matter of law," and thus no fraudulent conveyance claim may be asserted. Def. Mot. to Dismiss at 54.   Whether or not Plaintiff received reasonably equivalent value is a fact-specific issue.   *In re Cavalier Homes of Ga., Inc.*, 102 B.R. 878, 886 (Bankr. M.D. Ga. 1989) ("Reasonable equivalent should depend on the facts of each case").   Because the facts in this case have not yet been fully determined,[7] it is improper for the court to accept Defendants' assertions that all transfers were for reasonably equivalent value.   Insofar as Defendants rely on the affidavit of their counsel in support of that factual assertion, consideration of such affidavit is improper on a Rule 12(b)(6) motion to dismiss.   The court has not been asked to convert this Rule 12(b)(6) motion into a motion for summary judgment, in connection with which affidavits and other evidence may be considered, and will not consider documents outside the pleadings.   To the extent that Defendants' motion to dismiss is based on their assertion that the Credit Agreement Transfers were made for reasonably equivalent value, the motion is DENIED.

---

[7] As discussed above, the Credit Agreement is not before the court in connection with this motion.   Further, neither the circumstances surrounding the Credit Agreement nor the dates and amounts of these transfers pursuant thereto are established at this time.

24

### (3)        Transfers are Time Barred

Defendants' third reason for a Rule 12(b)(6) dismissal is that avoidance of the Credit Agreement Transfers is barred by the applicable statute of limitations for avoidance actions brought pursuant to 11 U.S.C. §§ 544 and 548.  Def. Mot. to Dismiss at 56-58.  Section 548 provided that a trustee may avoid certain transfers made or incurred within one year of the filing of the petition of bankruptcy.   11 U.S.C. § 548.[8]   Section 544(b) provides that the trustee may avoid any transfer that is voidable under applicable law.   Applicable law is interpreted as the law of the state in which the claim is filed.   *In re Munford, Inc.*, 98 F.3d 604, 609 (11th Cir. 1996).   The parties agree that the applicable statute of limitations under Georgia law is four years.  Def. Reply Brief at 52; Plaintiff Omnibus Response at 61.

The crux of the dispute between the parties concerns when the statute of limitations begins to run -- either when the Credit Agreement was entered into or when the transfers were made in payment of the debt.   Plaintiff contends that the statute of limitations begins to run at the time of each individual transfer made pursuant to the Credit Agreement.   Defendants contend that the structure and obligation of these transfers were created in the Credit Agreement, and thus the statute of limitations began to run at the inception of the Credit

---

[8] Although this section was amended in 2005 to allow for avoidance of transfers made within "2 years" of the bankruptcy petition, the amendment is "applicable only with respect to cases commenced under Title 11 more than one year after April 20, 2005."  See Pub. L. 109-8, § 1406.

AO 72A
(Rev.8/82)

Agreement, which was entered into two days outside the four-year statute of limitations period.

Looking at the terms of the Complaint, as the court must do when ruling on a Rule 12(b)(6) motion, the court notes that Plaintiff is not seeking to avoid the obligations under the Credit Agreement, but rather alleges that the transfers themselves are fraudulent and seeks to avoid transfers made to the Lenders upon which Defendants allegedly were jointly and severally liable.  Cmplt., ¶ 137.  Therefore, the statute of limitations runs from the date of the allegedly fraudulent payments made to the Lenders.  The dates of the payments are facts that have yet to be established.[9]  Accordingly, the court cannot now dismiss Plaintiff's claims on the ground that the transfers it seeks to avoid are time barred by applicable statutes of limitations,[10] and the motion to dismiss to the extent it relies on this ground is DENIED.

---

[9] Indeed, Defendants have not averred that these payments occurred outside the applicable statute of limitations.  Even had they done so, however, that would raise an issue of fact.

[10] To the extent that Defendants seek to have this court state that such payments as were made outside one year prior to the petition for bankruptcy are barred under 11 U.S.C. § 548, the court declines to do so.  The Complaint does not allege the dates of the Transfers, and, accordingly, those facts are not now before the court.  A request that transfers that fall outside the limitations period, if there are any, should be dismissed is tantamount to a request for an advisory opinion.

26

**(4)     Allegations of Fraud Not Pleaded with Particularity as required by Rule 9(b)**

The final reason which Defendants assert for a Rule 12(b)(6) dismissal of the allegations regarding the Credit Agreement Transfers is that these fraudulent conveyance claims do not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity.   Specifically, Plaintiff alleges that each of the Credit Agreement Transfers is voidable as "an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance" in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and 11 U.S.C. § 544 , Cmplt., Count I, ¶ 148; and in violation of 28 U.S.C. § 3304(a) and 11 U.S.C. § 544, Cmplt., Count II, ¶ 152;  and in violation of 11 U.S.C. § 548, Cmplt., Count III, ¶ 156. The state law provisions referred to are part of Georgia's *Uniform Fraudulent Transfer Act ("UFTA")* – O.C.G.A. §§ 18-2-70, *et seq*.   The Complaint alleges that each of the Transfers is recoverable from the Onex Defendants pursuant to 11 U.S.C. § 550. Cmplt., ¶¶ 149, 153, 157.

Defendants contend that this court should dismiss all of Plaintiff's avoidance claims of allegedly fraudulent transfers because Plaintiff has failed to plead such claims with particularity in accordance with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.   Specifically,  Defendants contend that Plaintiff has not pleaded with sufficient particularity facts as to any particular Onex Defendant's actual intent to hinder, delay or defraud.   Def. Mot. to Dismiss at 59.

27

Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The purpose of Rule 9(b) is to "ensure the defendants are notified of the conduct complained of, [and] alleged fraudulent acts need not be attributed to certain defendants if the 'complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations." *Peters v. Amoco Oil Co.*, 57 F. Supp.2d at 1277. Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.* 116 F.3d 1364, 1371 (11th Cir. 1997), quoting *Durham v. Business Management Associates,* 847 F.2d 1505, 1511 (11th Cir. 1988).

Even under the heightened pleading requirements of Rule 9(b), the plaintiff is not required to specify each separate defendant's role in the allegedly fraudulent conduct because the purpose of Rule 9(b) is to apprise defendants of the conduct complained of, that is, the acts which are allegedly fraudulent. *Peters*, 57 F. Supp.2d at 1277. The *Peters* court noted that at the time of pleading a plaintiff may not have all the facts to be able to plead the precise role of each defendant when a group of defendants acted in concert. *Id.*

However, the court's conclusion that the complaint herein is not subject to dismissal because it fails to delineate each separate defendant's role in the allegedly fraudulent

28

transfers, does not mean that Plaintiff has fully satisfied the requirements of Rule 9(b). Plaintiff claims that the Credit Agreement Transfers constitute both actual and constructive fraud. Cmplt., ¶¶ 145, 146, 148. The actual dates of each of these transfers are not set forth, but they are alleged to have occurred "[d]uring the period from May 1999 through the Petition Date." Cmplt., ¶ 137. Plaintiff's bankruptcy petition was filed in May 2003. Cmplt., ¶ 6.

### (a) State Law Claims

Although the Complaint seeks to allege violations of Georgia's UFTA, O.C.G.A. § 18-2-70, *et seq.*, that Act was not in effect until July 1, 2002. Georgia's UFTA replaced O.C.G.A. § 18-2-22, entitled, "Conveyances by debtors deemed fraudulent." The Complaint appears to indicate that the Credit Agreement Transfers commenced in May 1999; thus, some of the Credit Agreement Transfers took place before the effective UFTA date and would be governed by former O.C.G.A. § 18-2-22. The Georgia courts have made clear that as to fraudulent conveyances claims asserted under O.C.G.A. § 18-2-22, *et seq.*, the requirement that fraud be pleaded with particularity mandates that the claimant identify a specific conveyance with sufficient definiteness to advise the adversary of the conveyance it must explain. *Gwinnett Property, N.V. v. G+H Mortgage,* 215 Ga. App. 889, 890 (1994), citing generally *Leachman v. Cobb Dev. Co.,* 226 Ga. 103 (1970). Specifically, the Georgia court has held that the claimant "must aver a transfer of property in question by the debtor to the alleged grantee, specify the time of the transfer, and describe the instrument by which the alleged fraudulent conveyance was accomplished." *Gwinnett Property,* 215 Ga. App. at 890.

29

The Complaint herein lumps together all Credit Agreement Transfers made between May 1999 and May 2003. Neither the date nor the amount of each transfer is specified anywhere in the Complaint; nor are the instruments by which the conveyances were accomplished specified. Accordingly, as to those Credit Agreement Transfers that were made between May 1999 and July 1, 2002 and that Plaintiff claims are fraudulent and violate Georgia law, the Complaint's allegations are not pleaded with sufficient particularity. Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) will be GRANTED unless within thirty (30) days Plaintiff repleads those allegations with particularity in accordance with the *Gwinnett Property* requirements set forth above.

Certain of the Credit Agreement Transfers appear to have been made between July 1, 2002 (the effective date of Georgia's UFTA) and the filing of the bankruptcy petition in May 2003. The applicability of Rule 9(b) to UFTA claims has not been addressed by the Eleventh Circuit Court of Appeals. Courts in other circuits, in addressing this issue, are split on whether to apply Rule 9(b) to claims under UFTA. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) (applying Rule 9(b) to constructive fraudulent transfer claim); *Kruse v. Aamed, Inc.*, 1997 WL 102528 (N.D. Ill. 1997) (dismissing claim under Illinois' Fraudulent Transfer Act for failure to comply with Rule 9(b)); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417 (S.D.N.Y. 1998) (distinguishing between intentional and constructive fraudulent transfer and finding that Rule 9(b) does not apply in constructive fraudulent transfer claims); *China Resource Prods.*

30

*(U.S.A.) Ltd. v. Fayda Intern., Inc.*, 788 F. Supp. 815, 818-19 (D. Del.1992) (finding Rule 9(b) does not apply to pleadings made pursuant to those sections of Delaware's Fraudulent Conveyance Act under which plaintiff need not prove actual or constructive fraud).   Although Judge Alaimo, in *Nesco, Inc, v. Cisco*, 2005 WL 2493353 (S.D. Ga., Oct. 7, 2005), opined that the pleading requirements of Rule 9(b) did not apply to claims of fraudulent conveyance brought pursuant to Georgia's UFTA, *id.*, slip op. at 3, he also found that Plaintiff therein had sufficiently set forth the details of the transfer under attack to comply with Rule 9(b) requirements. *Id.*

Many of the above-cited cases distinguish between claims of actual or intentional fraudulent transfers and those that challenge transfers as constructively fraudulent.   While concluding that Rule 9(b)'s requirement of pleading with particularity applies to claims of actual or intentional fraud, the "great majority of cases" hold that the heightened pleading requirements of Rule 9(b) do not apply to claims sounding in constructive fraud.   *In re Actrade Financial Technologies, Ltd.*, 337 B.R. 791, 801 (S.D.N.Y. 2005), *citing, inter alia, White Metal Rolling, supra.*   This court agrees that in determining whether to apply the particularity requirements of Rule 9(b) to fraudulent transfer claims brought in this court under Georgia's UFTA, the distinction between claims of actual or intentional fraud and those of constructive fraud is relevant.   As explained in the *White Metal Rolling* case, while Rule 9(b) claims apply to claims of intentional fraudulent transfer, constructive fraud claims are different:   "Although tagged with the title 'fraudulent,' fraud has nothing to do with the

31

constructive fraudulent transfer claim.   The transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee."   *White Metal Rolling*, 2225 B. R. at 428-29.

Georgia's UFTA covers both actual and constructively fraudulent transfers. Specifically, O.C.G.A. § 18-2-74(a)(1) speaks to transfers made with actual intent to hinder, delay or defraud any creditor of the debtor, and O.C.G.A. § 18-2-74(a)(2) sounds in constructive fraud because it looks to the transfer's effect on the debtor's financial condition and the sufficiency of the consideration provided.[11]   O.C.G.A. § 18-2-75 also sets forth a constructive fraud cause of action.[12]

---

[11] O.C.G.A. § 18-2-74(a) provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

[12] O.C.G.A. § 18-2-75 provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without

32

To the extent that Plaintiff seeks to assert that the Credit Agreement Transfers made on or after July 1, 2002, are actually or intentionally fraudulent in violation of O.C.G.A. § 18-2-74(a)(1) because they were made with actual intent to hinder, delay, or defraud creditors of the debtor, the allegations of the Complaint do not meet the requirements of Rule 9(b). Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made.[13]

However, to the extent that Plaintiff alleges that the Credit Agreement Transfers made on or after July 1, 2002, are constructively fraudulent in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, the pleading requirements of Rule 9(b) do not apply, and the allegations of the Complaint are sufficient.   Defendants' motion to dismiss insofar as it

---

receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

[13] Plaintiff cites cases wherein the Rule 9(b) pleading requirements were relaxed where defendant controlled or had exclusive control of the information required for proper pleading. Pltf. Omnibus Response at 58-59.   However, Plaintiff does not contend, either in his Complaint or his brief, that he does not have particularized information concerning the transfers in question.

attacks the sufficiency of allegations of constructively fraudulent Credit Agreement Transfers made on or after July 1, 2002, is DENIED.

**(b)  Claims under 11 U.S.C. § 544 and 11 U.S.C. § 548**

Section 544 of Title 11 of the United States Code allows the trustee in bankruptcy to avoid certain transfers and obligations that are voidable under applicable state law.  For the reasons set forth above, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid Credit Agreement Transfers made prior to July 1, 2002, because they were fraudulent under former O.C.G.A. § 18-2-22, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made.

For the reasons stated above, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid Credit Agreement Transfers made on or after July 1, 2002, because they were actually or intentionally fraudulent in violation of   Georgia's UFTA, O.C.G.A. § 18-2-74(a)(1), the allegations of the Complaint do not meet the requirements of Rule 9(b). Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made..

34

For the reasons stated above, however, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid Credit Agreement Transfers made on or after July 1, 2002, because they were constructively fraudulent in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, the pleading requirements of Rule 9(b) do not apply, and the allegations of the Complaint are sufficient. Defendants' motion to dismiss insofar as it attacks the sufficiency of allegations of constructively fraudulent Credit Agreement Transfers made on or after July 1, 2002, in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, is DENIED.

Like Georgia's UFTA, § 548 of Title 11 of the United States Code covers both actual or intentional fraudulent transfers and constructive fraudulent transfers. Section 548(a)(1)(A) concerns transfers and obligations made or incurred "with actual intent to hinder, delay, or defraud . . . ." Because this part of the statute relates to actual fraud, the pleading requirements of Rule 9(b) apply. The allegations of the Complaint do not meet the requirements of Rule 9(b) with respect to claims under 11 U.S.C. § 548(a)(1)(A). Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made. However, 11 U.S.C. § 548(a)(1)(B) relates to transfers or obligations for which the consideration was inadequate and how they relate to the financial state of the debtor at the time of or due to the transfer or obligation. The avoidance of such transfers or obligations is allowed because they are

35

constructively, not actually, fraudulent.   Again, for reasons stated above, Rule 9(b) does not apply, and such claims need not be alleged with particularity.   To the extent that Defendants' motion seeks to dismiss claims seeking to avoid Credit Agreement Transfers allegedly in violation of 11 U.S.C. § 548(a)(1)(B) because such claims are not pleaded with particularity in accordance with Rule 9(b), the motion is DENIED.

For all of the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss for failure to state a claim with respect to the Credit Agreement Transfers.

**b)**      **The Tranche B Transfers**

Defendants claim that pursuant to Rule 12(b)(6), this court should dismiss Plaintiff's avoidance claims relating to the "Tranche B Transfers."   Tranche B Transfers are defined by Plaintiff as the principal and interest payments, collected by the Onex Defendants from Magnatrax and its subsidiaries under the Tranche B Structure "during the period from May 1999 through the Petition Date."   Cmplt., ¶ 139.   The "Tranche B Structure" is the term used by Plaintiff for the "financing artifice" involving various defendants and related to borrowing by ABCO and its subsidiaries.   Cmplt., ¶¶ 31-45.   The Tranche B Transfers are alleged to be both actual and constructive fraudulent conveyances.   Cmplt., ¶¶ 145, 146, 148.   The actual dates of each of these transfers are not set forth, but they are alleged to have occurred "[d]uring the period from May 1999 through the Petition Date."   Cmplt., ¶ 137.   Plaintiff's bankruptcy petition was filed in May 2003.   Cmplt., ¶ 6.

36

Defendants set forth four grounds justifying dismissal of these claims: (1) Defendants were "mere conduits" for borrowing by ABCO and its subsidiaries, Def. Mot. to Dismiss at 60; (2) because each of the Tranche B Transfers was made for reasonably equivalent value as a matter of law, there cannot be any fraudulent conveyances, *id.* at 61; (3) the Tranche B Transfers claims are time barred, *id.*; and (4) the claims with respect to the Tranche B Transfers do not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity, *id.*

### (1)  Defendants were "mere conduits"

Defendants claim that Plaintiff's complaint should be dismissed for failure to state a claim because Defendants were "mere conduits" for borrowings by ABCO and its subsidiaries. "[U]nder 11 U.S.C. § 550, an avoidable transfer of assets can only be recovered from certain parties, including the 'initial transferee.'" *In re Pony Express Delivery Servs., Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006) (citing 11 U.S.C. § 550(a)(1)). Courts have recognized that a "mere conduit" cannot be considered an initial transferee for purposes of an avoidance action. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 690, 705 (11th Cir. 2005). However,

> The mere conduit rule is used most frequently in situations where banks act as an intermediary in transferring assets. Where a bank receives a check, wire transfer, etc., from the debtor, with instructions to pass it along to another transferee, courts tend to immunize the bank from liability under § 550 as an "initial transferee" because it never exercised any control over the Debtor's funds.

*Id.*

Here, Defendants made loans to ABCO at a rate that was .25% per annum greater than the rate charged by the lenders.  Cmplt, ¶ 46.  The court finds that as Defendants lent the moneys under the Tranche B structure at a higher interest rate than the lenders charged, they were independent lenders and do not constitute mere conduits as they were not simple intermediaries to the ultimate lender.

### (2) & (3)  Transfers Made for Reasonably Equivalent Value and are Time Barred

The court's analysis regarding Defendants' arguments contending that the Tranche B Transfers were made for reasonably equivalent value and that the claims are time barred follows the same reasoning as identical arguments addressed above with respect to the Credit Agreement Transfers.  For the same reasons as set forth above with respect to the challenge to the Credit Agreement Transfers on these two grounds, the court declines to dismiss Plaintiff's complaint for failure to state a claim and DENIES Defendants' motion to this extent.

### (4)  Allegations of Fraud Not Pleaded with Particularity as required by Rule 9(b)

The final reason which Defendants assert for a Rule 12(b)(6) dismissal of the allegations regarding the Tranche B Transfers is that these fraudulent conveyance claims do not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity.  Specifically, Plaintiff alleges that each of the Tranche B Transfers is voidable as "an actual fraudulent conveyance or, in the alternative, as a

38

constructive fraudulent conveyance" in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and 11 U.S.C. § 544, Cmplt., Count I, ¶ 148; and in violation of 28 U.S.C. § 3304(a) and 11 U.S.C. § 544, Cmplt., Count II, ¶ 152; and in violation of 11 U.S.C. § 548, Cmplt., Count III, ¶ 156. The state law provisions referred to are part of Georgia's *Uniform Fraudulent Transfer Act ("UFTA")* – O.C.G.A. §§ 18-2-70, *et seq.* The Complaint alleges that each of the Tranche B Transfers is recoverable from the Onex Defendants pursuant to 11 U.S.C. § 550. Cmplt., ¶¶ 149, 153, 157.

Defendants contend that although the Plaintiff alleges "that the Tranche B Transfers were made by all the Onex Entity Defendants," Def. Mot. to Dismiss at 61,[14] the allegations as to the Tranche B Transfers are devoid of particularized details as to whom, when, or how such transfers were paid. Defendants further argue that the claim makes no sense with respect to Onex, OMI Ontario, Inc., and Onex Holdings, each of whom had "absolutely no role within the Tranche B Structure." Def . Mot. to Dismiss at 61.

Defendants' separate argument with respect to Onex, OMI Ontario, Inc., and Onex Holdings seems to challenge the sufficiency of the Complaint because those Defendants' specific role, if any, with respect to the Tranche B Transfers is not delineated. However, Defendants concede that as to the Tranche B Transfers, Plaintiff has alleged that the Onex

---

[14] Defendants' brief mistakenly cites paragraph 143 of the Complaint, which refers to Management Fee Transfers, not Tranche B Transfers. The reference should be to paragraph 139 of the Complaint.

Defendants collectively were the ones that collected the transfers, Cmplt., ¶ 139, and that such transfers are recoverable from them all.  Cmplt., ¶ 149.  As explained above, even under the heightened pleading requirements of Rule 9(b), the plaintiff is not required to specify each separate defendant's role in the allegedly fraudulent conduct.  *Peters*, 57 F. Supp.2d at 1277.

In contending that the particularity requirements of Rule 9(b) are not met with respect to the Tranche B Transfers, Defendants do not set out different or additional arguments or authority than were posited as to the Credit Agreement Transfers.  Further, the Tranche B Transfers allegedly were made during the same time period as the Credit Agreement Transfers were made.  Cmplt., ¶¶ 139, 137, 6.  Like the Credit Agreement Transfers, the Tranche B Transfers are alleged to be both actual fraudulent conveyances and constructive fraudulent conveyances.  Cmplt., ¶¶ 145, 146, 148.  Finally, the Tranche B Transfers are alleged to violate the same state and federal statutory provisions as did the Credit Agreement Transfers.  Cmplt., ¶¶ 148, 152, 156.  The same federal provision, 11 U.S.C. § 550, allegedly makes these Tranche B Transfers recoverable from the Onex Defendants.  Cmplt., ¶¶ 149, 153, 157.

Thus, for the reasons set forth above and based on the authority set forth above with respect to the Credit Agreement Transfers,

(i) as to those Tranche B Transfers that were made between May 1999 and July 1, 2002, and that Plaintiff claims are fraudulent and violate § 18-2-22, the Complaint's allegations are not pleaded with sufficient particularity.  Therefore, Defendants' motion to

dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, in accordance with the *Gwinnett Property* requirements set forth above; and, to the extent that Plaintiff seeks to assert that the Tranche B Transfers made on or after July 1, 2002, are actually or intentionally fraudulent in violation of O.C.G.A. § 18-2-74(a)(1) because they were made with actual intent to hinder, delay, or defraud creditors of the debtor, the allegations of the Complaint do not meet the requirements of Rule 9(b) and are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made; but, to the extent that Plaintiff alleges that the Tranche B Transfers made on or after July 1, 2002, are constructively fraudulent in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, the pleading requirements of Rule 9(b) do not apply, and the allegations of the Complaint are sufficient.   Defendants' motion to dismiss insofar as it attacks the sufficiency of allegations of constructively fraudulent Tranche B Transfers made on or after July 1, 2002, is DENIED;

(ii)   To the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid Tranche B Agreement Transfers made prior to July 1, 2002, because they were fraudulent under former § 18-2-22, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within

41

thirty (30) days, with particularity, in accordance with the *Gwinnett Property* requirements set forth above;

And, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid Tranche B Agreement Transfers made on or after July 1, 2002, and are actually or intentionally fraudulent in violation of O.C.G.A. § 18-2-74(a)(1) because they were made with actual intent to hinder, delay, or defraud creditors of the debtor, the allegations of the Complaint do not meet the requirements of Rule 9(b).   Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made;

But, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid Tranche B Agreement Transfers made on or after July 1, 2002, and that are constructively fraudulent in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, the pleading requirements of Rule 9(b) do not apply, and the allegations of the Complaint are sufficient.   Defendants' motion to dismiss insofar as it attacks the sufficiency of allegations of constructively fraudulent Credit Agreement Transfers made on or after July 1, 2002, is DENIED;

(iii)    To the extent that Plaintiff relies on 11 U.S.C. § 548(a)(1)(A), relating to transfers and obligations made or incurred with actual intent to hinder, delay, or defraud, to seek avoidance of Tranche B Transfers, the allegations of the Complaint do not meet the

42

requirements of Rule 9(b).   Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made;

But, to the extent that Plaintiff relies on 11 U.S.C. § 548(a)(1)(B) relating to transfers and obligations that are constructive fraudulent conveyances, the heightened pleading requirements of Rule 9(b) do not apply.   Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is DENIED.

For all of the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss for failure to state a claim with respect to the Tranche B Transfers.

43

c)        **The Acquisition Transfers**

Defendants assert that pursuant to Rule 12(b)(6), this court should dismiss Plaintiff's avoidance claims relating to the "Acquisition Transfers." Plaintiff defines the Acquisition Transfers as the use of proceeds of loans for which the Onex Defendants were jointly and severally liable to pay the purchase price for the Onex Defendants' acquisition of ABCO, Republic Builders Products ("Republic"), and Jannock, for which Debtors did not receive reasonable equivalent value. Cmplt., ¶¶ 137-38. Specifically, like the Credit Agreement Transfers and the Tranche B Transfers discussed above, Plaintiff alleges that each of the Acquisition Transfers is voidable as "an actual fraudulent conveyance or, in the alternative, as a constructive fraudulent conveyance" in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and 11 U.S.C. § 544, Cmplt., Count I, ¶ 148; and in violation of 28 U.S.C. § 3304(a) and 11 U.S.C. § 544, Cmplt., Count II, ¶ 152; and in violation of 11 U.S.C. § 548, Cmplt., Count III, ¶ 156. The state law provisions referred to are part of Georgia's *Uniform Fraudulent Transfer Act ("UFTA")* – O.C.G.A. §§ 18-2-70, *et seq*. The Complaint alleges that each of the Acquisition Transfers is recoverable from the Onex Defendants pursuant to 11 U.S.C. § 550. Cmplt., ¶¶ 149, 153, 157.

Defendants set forth three grounds justifying dismissal of these claims. Def. Mot. to Dismiss at 61-63: (1) No Onex Defendant was a "transferee" of anything of value, *id.* at 62; (2) the Acquisition Transfers claims are time barred, *id.* at 62-63; and (3) the claims with

44

respect to the Acquisition Transfers do not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity, *id.* at 63.

### (1) Onex Defendants are not Transferees

As Defendants did with respect to the Credit Agreement Transfers, Defendants argue that the claims with respect to the Acquisition Transfers should be dismissed pursuant to Rule 12(b)(6) because the Defendants were not transferees of anything of value from the Acquisition Transfers. For the reasons and based on the authority set forth above with respect to the Credit Agreement Transfers, the Court finds this argument also to be without merit as to the Acquisition Transfers. Further, Defendants indicate that because the only thing that the Defendants might have received on account of the Acquisition Transfers was worthless Magnatrax stock, they did not receive anything of value. Again, as was the case with the value of the Credit Agreement Transfers, the value of the Acquisition Transfers is a fact-specific issue as to which it would be improper for the court to accept Defendants' assertions. Accordingly, Defendants' motion to dismiss the claims as to the Acquisition Transfers on these grounds is DENIED.

### (2) Transfers are Time Barred

In arguing that the Acquisition Transfers should be dismissed because they are time barred, Defendants assert that the Complaint shows that the Acquisition Transfers all occurred prior to May 12, 2002, and thus are time barred under 11 U.S.C. § 548. They also contend

AO 72A
(Rev.8/82)

that the ABCO Acquisition Transfer occurred on May 10, 1999, and is also time barred under 11 U.S.C. § 544.

As to the ABCO acquisition, the Complaint alleges that the common stock was purchased "on or about May 12, 1999." Cmplt., ¶ 36. The Complaint further alleges that Onex caused ABCO to acquire the assets of Republic "on or about August 11, 1999. Cmplt., ¶ 65. Finally, the Complaint alleges that Onex caused ABCO to acquire Jannock "[o]n or about March 10, 2000." Cmplt., ¶ 69. The bankruptcy petition was filed in May 2003. Cmplt., ¶ 6.

Section 548 of Title 11, United States Code, is applicable to this action and allows for the avoidance of certain transfers that were made or incurred on or within one year before the date of the filing of the petition. The Complaint in this case clearly alleges that the acquisitions to which the term "Acquisition Transfers" refers were all made outside that one-year window. Plaintiff does not argue otherwise. Rather, in his brief in response to the motion to dismiss, Plaintiff states only, "Onex concludes its section on the Acquisition Transfers with boilerplate arguments on the Trustee's pleading requirements and statute of limitations, each of which is already addressed above." Pltf. Omnibus Response at 71. The court disagrees. Defendants have shown that allegations of the Complaint itself indicate the dates of the Acquisition Transfers and that each of such dates occurred more than one year prior to the filing of the petition for bankruptcy and, accordingly, outside section 548's limitations period. Accordingly, the court finds that no avoidance or recovery is permitted

46

as to the Acquisition Transfers under 11 U.S.C. § 548 and GRANTS Defendants' motion to dismiss as to that extent.

Defendants also contend that the acquisition of ABCO occurred on May 10, 1999, and thus is also time barred under 11 U.S.C. § 544. As stated above, the parties agree that the applicable state statute of limitations, which would also be the applicable limitations period under section 544, is four years. Defendants would have the court refer to the paragraph of the Complaint that indicates that the tender offer of ABCO stock expired on May 10, 1999, and assign that date as the date of acquisition. Cmplt., ¶ 35. Earlier in their brief Defendants indicate that the Bankruptcy Petition was filed on May 12, 2003, Def. Mot. to Dismiss at p. 56. While the Complaint itself does not set forth the exact date of the filing of the bankruptcy petition and alleges only that the petition was filed in "May 2003," Cmplt., ¶ 6, the parties agree that the bankruptcy petition date was May 12, 2003. Def. Mot. to Dismiss at 56; Pltf. Omnibus Response at 63. Despite the Complaint's lack of specificity, the parties agree and the court can take judicial notice that the date of such filing was May 12, 2003.

The court finds that there are inconsistencies within the complaint as to the actual date of the transfer payment for the acquisition of ABCO. In paragraph 55 of the Complaint, Plaintiff alleges that "*[u]pon the consummation of the ABCO acquisition* in May 1999, ABCO and Onex Corp. entered into a Management Agreement dated as of May 11, 1999 . . . ." (Emphasis added). As to the section on which Plaintiff relies as to the date of acquisition, the Complaint only alleges that ABCO was purchased "*on or about* May 12, 1999." Cmplt.,

47

¶ 36 (emphasis added).   As May 12, 2001 is the earliest date that any transfer may be recovered under 11 U.S.C. § 544, specificity as to the date is of paramount importance to Plaintiff's claim.     Therefore, the court has serious concerns about whether the transfer of $200.1 million in order to acquire ABCO happened within the applicable statute of limitations.

Accordingly, Defendants' motion to dismiss the ABCO Acquisition Transfer claims on the ground that they are time barred under 11 U.S.C. § 544 is GRANTED.   Plaintiff can resurrect the claim by filing an amended complaint stating specifically that the transfer of funds happened on or after May 12, 1999.

### (3)   Allegations of Fraud Not Pleaded with Particularity as required by Rule 9(b)

The final reason asserted by Defendants for dismissal of the claims as to the Acquisition Transfers is that these fraudulent conveyance claims do not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity.   Again, the reason asserted by Defendants is that the Complaint does not identify the specific Onex entity to whom the Acquisition Transfers were paid.   Def. Mot. to Dismiss at 63.   However, Plaintiff has alleged that the proceeds were used to pay the purchase price for the purchase of ABCO, Republic, and Jannock by the Onex Defendants collectively, Cmplt., ¶ 138, and that such transfers are recoverable from them all.   Cmplt., ¶ 149.   As explained above, even under the heightened pleading requirements of Rule 9(b), the plaintiff

48

is not required to specify each separate defendant's role in the allegedly fraudulent conduct. *Peters*, 57 F. Supp.2d at 1277.

Like the Credit Agreement Transfers and the Tranche B Transfers, the Acquisition Transfers are alleged to be both actual fraudulent conveyances and constructive fraudulent conveyances.  Cmplt., ¶¶ 145, 146, 148.  Further, the Acquisition Transfers are alleged to violate the same state and federal statutory provisions as did the Credit Agreement Transfers and the Tranche B Transfers.  Cmplt., ¶¶ 148, 152, 156.  The same federal provision, 11 U.S.C. § 550, allegedly makes these Acquisition Transfers recoverable from the Onex Defendants.  Cmplt., ¶¶ 149, 153, 157.

Thus, for the reasons set forth above and based on the authority set forth above with respect to the Credit Agreement Transfers,

(i)    As to   the Acquisition Transfers that were made between May 1999 and July 1, 2002, and that Plaintiff claims are fraudulent and violate former O.C.G.A. § 18-2-22, the Complaint's allegations are not pleaded with sufficient particularity.   Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, in accordance with the *Gwinnett Property* requirements set forth above; and

To the extent that Plaintiff seeks to assert that the Acquisition Transfers made on or after July 1, 2002, are actually or intentionally fraudulent in violation of O.C.G.A. § 18-2-

49

74(a)(1) because they were made with actual intent to hinder, delay, or defraud creditors of the debtor, the allegations of the Complaint do not meet the requirements of Rule 9(b). Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made; and

To the extent that Plaintiff alleges that  the Acquisition Transfers made on or after July 1, 2002, are constructively fraudulent in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, the pleading requirements of Rule 9(b) do not apply, and the allegations of the Complaint are sufficient.  Defendants' motion to dismiss insofar as it attacks the sufficiency of allegations of constructively fraudulent Acquisition Agreement Transfers made on or after July 1, 2002, is DENIED;

(ii)  To the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid  the Acquisition Transfers made prior to July 1, 2002, because they were fraudulent under repealed O.C.G.A. § 18-2-70, *et seq.*,  Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, in accordance with the *Gwinnett Property* requirements set forth above;

And, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid  the Acquisition Transfers made on or after July 1, 2002, and are actually or intentionally

50

fraudulent in violation of O.C.G.A. § 18-2-74(a)(1) because they were made with actual intent to hinder, delay, or defraud creditors of the debtor, the allegations of the Complaint do not meet the requirements of Rule 9(b).    Therefore, Defendants' motion to dismiss such claims for failure to comply with Rule 9(b) is GRANTED, and the claims are DISMISSED unless these claims are re-pled, within thirty (30) days, with particularity, specifying the dates and amounts of each allegedly fraudulent transfer and the instruments by which the conveyances were made;

But, to the extent that Plaintiff relies on 11 U.S.C. § 544 and seeks to avoid the Acquisition Transfers made on or after July 1, 2002, and that are constructively fraudulent in violation of O.C.G.A. § 18-2-74(a)(2) or O.C.G.A. § 18-2-75, the pleading requirements of Rule 9(b) do not apply, and the allegations of the Complaint are sufficient.    Defendants' motion to dismiss insofar as it attacks the sufficiency of allegations of constructively fraudulent Credit Agreement Transfers made on or after July 1, 2002, is DENIED.

For all of the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss for failure to state a claim with respect to the Acquisition Transfers.

### d)    The Control Premium Transfer

Defendants claim that pursuant to Rule 12(b)(6) this court should dismiss Plaintiff's avoidance claims relating to the "Control Premium Transfer."    Def. Mot. to Dismiss at 63-65. The Complaint defines this term as "the Debtors' *abdication of control* over their businesses

to the Onex Defendants, [defendant] Schwartz, and [defendant] Govan under the Management Agreement and as a result of Onex Defendants' placement of their own personnel as directors and officers of the Debtors constitutes a transfer of a valuable control premium to the Onex Defendants."   Cmplt., ¶ 144 (emphasis added).   Although the Plaintiff labels the alleged transfer as a "Control Premium Transfer," it appears that the transfer it challenges is the transfer of the control of the corporations without an adequate premium paid therefor.   In short, according to Plaintiff, the control was transferred without a "control premium" being paid.

Defendants set forth four grounds justifying dismissal of these claims:   (1) The alleged Control Premium Transfer is at best a component of the Acquisition Transfers, *id.* at 64, and should not be considered separately; (2) the alleged Control Premium Transfer cannot form the basis of a fraudulent conveyance claim because it is not a "transfer" from any debtor, *id.* at 64-65; (3) a claim based on the Control Premium Transfer is time barred,  *id.* at 65; and (4) the claim with respect to the Control Premium Transfer does not satisfy the requirements of Federal Rule of Civil Procedure 9(b) requiring such claims to be stated with particularity.  *Id.*

The court agrees with Defendants that although the Complaint defines the "Control Premium Transfer" with different words than it does the "Acquisition Transfers," the former is a component of the latter herein.   The cases cited by Plaintiff in support of the separate concept of a control premium transfer address this concept for the purpose of determining the appropriate value of stock which carries with it the control of a corporation. *Eateries, Inc.*

52

*v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003); *Alna Capital Associates v. Wagner*, 758 F.2d 562, 566-67 (11th Cir. 1985).   The key issue to the concept of control premium is that of valuation of stock.   None of the cases cited by Plaintiff stands for the principle that a transfer of control is a voidable transfer under the law applicable in this case.

Acquiring all the stock of a company necessarily transfers control.   Plaintiff has cited no authority that the Acquisition Transfers by which all the stock of the Debtors was obtained is any different from a "transfer" of control.   The court does not disagree with Plaintiff's contention, supported by case authority, that there is value in obtaining a controlling position in a company that on a per share basis may well exceed the total of the per share values if control were not obtained.   A purchaser will *pay* a premium to effectuate a transfer of control. However, obtaining control goes to the value of the acquisition; it is not a separate "transfer" that cannot somehow be separately avoided as fraudulent.

Because the court finds that the transfer of control challenged by Plaintiff under the label "Control Premium Transfer" was part of the acquisition of all the stock of the companies and the Acquisition Transfers are challenged in a separate portion of the Complaint , the court GRANTS Defendants' motion to dismiss the claims relating to the Control Premium Transfer.

### e)      The Management Agreement Transfer

Defendants claim that pursuant to Rule 12(b)(6) this court should dismiss Plaintiff's avoidance claims relating to the Management Agreement Transfers – payments made pursuant

to the Management Agreement, for two reasons.   Def. Mot. to Dismiss at 66.   First, Defendants contend that the claims are only properly against Defendants OMI or Onex Corp. Second,  Defendants contend that these claims are time barred.

First, Defendants contend that the Management Agreement Transfers claim should be limited to Onex Defendants that received payments under the Management Agreement, specifically Defendants OMI and Onex Corp.   As stated above, Plaintiff has alleged a conspiracy, namely, that Defendants acted in concert to defraud Magnatrax and its subsidiaries of assets.   Therefore, the court declines to narrow the complaint with regard to the Management Agreement Transfers to entities that actually received payments under the Agreement.

Defendants' time-barred argument seeks to have this court state that such payments as were made outside one year prior to the Petition for bankruptcy are barred under 11 U.S.C. § 548.   The court declines to do so.   The Complaint does not allege the actual dates of the transfers, and, accordingly, those facts are not now before the court.

### 2.        Federal Debt Collection Procedures Act

Plaintiff seeks to recover the aforementioned transfers through different avenues.   One such avenue is under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3304, in conjunction with 11 U.S.C. § 544 and § 550, in counts II and VIII of the Complaint.   In support of this method of recovery, Plaintiff contends that "[u]pon information and belief, the United

54

States of America was a creditor of the Debtors as of the Petition Date and at the time of and after each transfer which is sought to be avoided herein." Cmplt., ¶ 134.

Defendants contend that Plaintiff has failed to state a claim under the Federal Collection Procedures Act.   Specifically, Defendants contend that Plaintiff cannot state a claim because "the only claims filed by United States entities were asserted by the Pension Benefit Guaranty Corporation and the Internal Revenue Service ("IRS").   All of these claims have either been expunged or, in the case of the IRS, allowed as priority tax claims that will receive payment in full as Class 3 claims under the Plan. (Vullo Aff. Ex. 2.g.; Ex. 2.b.,§ III.4)."

Defendants are asking this court to rule on the merits of the Federal Debt Collection Procedures Act by considering evidence that all possible claims are either expunged or have received full payment.   Such analysis requires the court to look at documents other than the Complaint to determine the merits of Plaintiff's contentions and should be addressed on summary judgment or at trial.   Therefore, the court DENIES Defendants' motion to dismiss for failure to state a claim with regard to Plaintiff's avoidance actions under the Federal Debt Collection Procedures Act.

While the court is wary of Plaintiff's usage of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3304, as an avenue to avoid various transfers, as the parties' briefings have not addressed this point in any detail, the court will not raise the issue *sua sponte*.

### 3.    Preference Transfers (Onex Defendants) (Count XVII)

Defendants contend that Plaintiff's Preference Claim (Count XVII), which seeks to avoid payments made under the Tranche B structure and the Management Agreement as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550, fails to state a claim and should therefore be dismissed. Defendants support this proposition with two arguments. First, Defendants contend, similar to their argument under its attacks on the Tranche B payments as fraudulent conveyances, that Plaintiff has failed to state a claim "because no Onex Defendant is an initial transferee, an immediate transferee or a transferee for whose benefit a Tranche B Transfer was made." Basically, Defendants are reasserting their "mere conduit" argument. For the reasons stated above in the section addressing Plaintiff's mere conduit argument, the court DENIES Defendants' motion to dismiss for failure to state a claim with regard to Plaintiff's preference claim relating to the Tranche B payments.

Second, with regard to the payments made pursuant to the Management Agreement, Defendants contend that Defendant OMI was not an insider and argues that all payments made pursuant to the Management Agreement occurred outside of the ninety-day period under 11 U.S.C. §§ 547 and 550. Finally, Defendants contend that even if the court were to consider Defendants insiders, only a few payments made under the Management Agreement happened within one year of the petition for bankruptcy.

The court finds that Plaintiff has sufficiently pleaded that Defendants were insiders. Cmplt., ¶ 266. Whether payments were made within one year of the petition for bankruptcy is a fact-specific issue not properly before the court on a motion to dismiss. Such an

56

argument is better addressed at summary judgment or at trial.   Therefore, the court DENIES Defendants' motion to dismiss for failure to state a claim with regard to Plaintiff's preference claim relating to the Management Agreement payments.

AO 72A
(Rev.8/82)

4. **Breach of Fiduciary Duty (Onex Defendants and Management Defendants) (Count X)**

a) **Onex Defendants**

In order to state a claim for breach of fiduciary duty, a Plaintiff must allege two elements: (1) that a fiduciary duty exists, and (2) that the alleged fiduciary breached that duty. *York Lingings v. Roach*, 1999 WL 608850, *2 (Del. Ch. July 28, 1999).[15]   "It is well established that directors of a Delaware corporation owe a fiduciary duty to the corporation. *Id*.   Further, the Supreme Court of Delaware has found that "'a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation.'"   *Kahn v. Lynch Commc'n. Sys.*, 638 A.2d 1110, 1113-14 (Del. 1994) (citing *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)); *In re Maxxam, Inc.*, 659 A.2d 760, 771 (Del. Ch. 1995) (corporate shareholder who owned a majority interest in a corporation was found to owe a fiduciary duty to a corporation).

To the extent that Plaintiff relies on the fiduciary duties owed by a majority or controlling shareholder to claim that the Onex Defendants owed and breached fiduciary duties, the court agrees with Defendants that Plaintiff can proceed only against Defendant

---

[15] Pursuant to the internal affairs doctrine, the law of the state of incorporation applies to the "relations *inter se* of the corporation, its shareholders, directors, officers or agents . . . ." *Diedrech v. Miller & Miller & Assocs., Architects & Planners, Inc.*, 254 Ga. 734, 735 (1985) (quoting Restatement (Second) Conflicts of Laws, § 313).   As Magnatrax and ABCO are incorporated in Delaware, Plaintiff's claim for breach of fiduciary duty is governed by Delaware law.

Onex American, which is the shareholder in Magnatrax.   Cmplt., ¶ 18.   *Kahn v. Lynch Commc'n. Sys.*, *supra*.   Plaintiff has not set forth any law, of Delaware or otherwise, to show that even if some or all of the other Onex Defendants were alter egos of Onex American or of each other, they must be viewed as a controlling *shareholder* with *shareholder* fiduciary duties.   Plaintiff's reference to Onex Corp. "as a controlling shareholder," Pltf. Omnibus Response at 81, is not supported in the Complaint or by law.   Further, claims of vicarious liability, such as claims of aiding and abetting a breach of fiduciary duty and civil conspiracy, are the proper vehicles for imputing a fiduciary's breach to a non-fiduciary.   *Albert v. Alex Brown Mgmt. Serv.'s, Inc.*, 2005 WL 2130607 *11 (Del. Ch. Aug. 26, 2005).   As this Plaintiff has brought counts of aiding and abetting a breach of fiduciary duty and civil conspiracy against all of the Onex Defendants for the same actions which he alleges are a breach of fiduciary duty, these Defendants will be before the court for their role in the alleged breach of fiduciary duty.

Plaintiff's second theory for holding the Onex Corporations directly liable for breach of fiduciary duty is that the Onex Defendants had a fiduciary duty  owed by directors or *de facto* directors of the Debtor entities.   Pltf. Omnibus Response at 79-80.   Plaintiff would have the court consider the alter ego status of the various "sham" Onex entities and impose liability on these defendants as directors or *de facto* board members of the Debtor entities.   *Id.*

59

Del. Code Ann. Tit. 8, § 141 states that "[t]he board of directors of a corporation shall consist of 1 or more members, each of whom shall be a natural person." Therefore, it is not possible for any of the Onex Defendants to be directors of the Debtor entities.

The Delaware Supreme Court stated that a "*de facto* officer is one who actually assumes possession of an office under the claim and color of an election or appointment and who is actually discharging the duties of that office, but for some legal reason lacks *de jure* legal title to that office." *In re Walt Disney Co. Derivative Litigation*, 2006 WL 1562466 *11 (Del. June 8, 2006)(citing William Meade Fletcher, Fletcher Cyclopedia Of The Law Of Private Corporations § 374 (perm. ed., rev. vol. 1998) ("Fletcher")). Fletcher, which the Delaware Supreme court relies on in its opinion in *In re Walt Disney Co.*, states:

> A de facto officer may be distinguished on the one hand from a mere usurper of an office and on the other hand from a de jure officer. A de facto officer is one who is in actual possession of an office under the claim and color of an election or appointment and is in the exercise of its functions and in the discharge of its duties. A de facto director holds office under color of right, through designation or election, but fails being a de jure director by some irregularity in his or her election or by ineligibility or failure to qualify as required. In short, in order to be a de facto officer, there must be color for the claim and a colorable title to the office. A mere pretense of being an officer does not make the pretender a de facto officer. He or she must have some color of title to the office and must actually perform the duties of the office, and that possession of the office must be acquiesced in by the public or the interested parties in order to constitute him or her a de facto officer. . . . The outstanding and distinguishing feature of de facto officers is that they are in fact occupying the office under color of right and performing its duties.

William Meade Fletcher, Fletcher Cyclopedia Of The Law Of Private Corporations § 374 (perm. ed., rev. vol. 1998)

The Complaint alleges that Onex assumed the role of a *de facto* board member by "acting in accordance with the Management Agreement [to perform] services tantamount to that of a board of directors for all the Magnatrax entities. Cmplt., ¶ 197. Even assuming these allegations to be true, these allegations are insufficient to render the Onex Defendants *de facto* directors of the debtors. Plaintiff at no point alleges that Onex Corp., or any of the other Onex Defendants assumed possession of the position of a member of the board of directors and acted "under the claim and color of an election or appointment."

Even under the liberal pleading requirements of Rule 8(a), the court finds the allegation that Onex performed services tantamount to that of a board of directors insufficient in this regard. As Plaintiff has not sufficiently alleged, directly or otherwise, that Onex Defendants were *de facto* directors, he has not shown that they owed a fiduciary duty to Magnatrax and its subsidiaries and cannot satisfy one of the essential requirements of a claim for breach of fiduciary duty. Therefore, the court GRANTS Defendants' motion to dismiss for failure to state a claim of breach of fiduciary duty with respect to Onex Corp. and the Onex Defendants other than Onex American.

Further, to the extent that Plaintiff alleges that Defendant Onex American (or any other of the Onex Defendants) breached its fiduciary duties to ABCO *in the course of the ABCO acquisition*, the court finds that Plaintiff has failed to state a claim. If Defendant Onex American owed a fiduciary duty to the Debtors, it stemmed from its status as majority shareholder of Magnatrax, formerly called ABCO Holdings, Cmplt., ¶ 38, which through a

61

subsidiary (ABCO Acquisition) acquired ABCO.  While it is unclear from the Complaint just when ABCO Holdings/Magnatrax was incorporated, Plaintiff has repeatedly argued that ABCO was purchased on or about May 12, 1999.  Thus, under Plaintiff's argument Defendant Onex American gained a duty to ABCO upon becoming a shareholder of ABCO – specifically, "on or about May 12, 1999," Cmplt., ¶ 36, upon  acquisition of ABCO.  Under Plaintiff's controlling shareholder theory, Defendants Onex American did not acquire a fiduciary duty to ABCO until they became shareholders, as a result of  the acquisition of ABCO.  Therefore, it is logically impossible for Defendants to breach a fiduciary duty to ABCO prior to acquiring the status that conferred that duty.  Insofar as Plaintiff alleges that the Defendant Onex American breached its fiduciary duty to ABCO "by directing and passing resolutions authorizing the transaction whereby (a) ABCO incurred $140,000,000 of indebtedness to Onex to finance Onex's acquisition of ABCO and (b) ABCO paid merger consideration for its own stock in excess of its value," the court GRANTS Defendants' motion to dismiss Plaintiff's breach of fiduciary claim.[16]  As to the rest of Defendants' arguments with regard to the Onex Defendants, for the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss Plaintiff's claim of breach of fiduciary duty for failure to state a claim as to the Onex (corporate) Defendants.

---

[16] Any alleged breach of fiduciary duty to Magnatrax is not dismissed; the date on which Onex American became a majority shareholder in Magnatrax is not part of the record at this time.

62

### b)        Wright and Hilson

With regard to Defendants Wright and Hilson, Plaintiff has alleged that they had a fiduciary duty to the now bankrupt corporations, as they were directors in these corporations and they breached this fiduciary duty.   Defendants' only claim is that they were "released under the Plan from any liability for any alleged actions taken after the ABCO transaction when they joined the ABCO (later Magnatrax) Board."   As discussed above, Defendants Wright and Hilson were not released from liability by the Plan as they were Onex Affiliates. Because the alleged date that Defendant Wright and Hilson became directors of Magnatrax and ABCO is not currently before the court, the court cannot rule that Defendants Wright and Hilson could not have breached their fiduciary duty in the ABCO acquisition.   For all of these reasons, the court DENIES Defendants' motion to dismiss Plaintiff's claim of breach of fiduciary duty for failure to state a claim as it relates to Defendants Wright and Hilson.

### c)        Schwartz and Govan

In his complaint Plaintiff alleges that Defendants Schwartz and Govan were *de facto* directors of the Debtor entities and therefore owed these entities a fiduciary duty. Cmplt., ¶¶ 107, 198.   Defendants contend that Defendants Schwartz and Govan do not qualify as *de facto* directors and thus do not owe a fiduciary duty to the debtors.   As stated above, Delaware law states that a "*de facto* officer is one who actually assumes possession of an office under the claim and color of an election or appointment and who is actually discharging the duties of that office, but for some legal reason lacks *de jure* legal title to that office."   *In re Walt*

*Disney Co. Derivative Litigation*, 2006 WL 1562466 *11 (Del. June 8, 2006); *Prickett v. American Steel and Pump Corp.*, 253 A.2d 86, 88 (Del. Ch. 1969) ("[d]e facto director is one who is in possession of and exercising the powers of that office under claim and color of an election, although he is not a director de jure and may be removed by proper proceedings.")

Plaintiff's only reason for contending that Defendants Schwartz and Govan owed a fiduciary duty to Magnatrax and its subsidiaries is that "Schwartz and Govan directed and controlled all of Onex's conduct under the Management Agreement and other conduct by which Onex controlled the Debtors," that "Schwartz and Govan performed services tantamount to those of directors for all the Magnatrax entities," that Schwartz and Govan therefore were *de facto* board members for all the Debtors and owed fiduciary duties to the creditors and shareholders," and that Defendants Schwartz and Govan breached that duty.   Cmplt., ¶ 198.

Even under the most liberal reading of the Complaint, these claims are insufficient to render them *de facto* directors of the debtors.   Plaintiff at no point alleges that Defendants Schwartz or Govan "assumed possession of the office" and  were acting "under the claim and color of an election or appointment," nor has Plaintiff made any allegation that Defendants Schwartz and Govan held themselves out to the public as directors.   As Plaintiff has not set forth allegations which would show that these Defendants were *de facto* directors, he has not shown that they owed a fiduciary duty to Magnatrax and its subsidiaries and cannot satisfy one of the essential requirements of a claim for breach of fiduciary duty.   Therefore, the court

64

GRANTS Defendants' motion to dismiss for failure to state a claim of breach of fiduciary duty with respect to Defendants Schwartz and Govan.

### 5. Aiding and Abetting Breach of Fiduciary Duty (Onex Defendants and Management Defendants) (Count XI)

With regard to Plaintiff's claim for aiding and abetting a breach of fiduciary duty, Defendants' motion to dismiss sets forth a short argument[17] that Plaintiff has failed to state a claim because Georgia does not recognize such a claim.   Def. Mot. to Dismiss at 73. Defendants do not specify why they look to Georgia rather than Delaware law but add in a footnote that although Delaware recognizes such a claim, it would be time barred.  *Id*. at n. 42. In response, Plaintiff asserts that Delaware law applies, that the Complaint sufficiently alleges such a claim, and that the claim is not time barred.   Pltf. Omnibus Response at 83-86. Defendants reply to those assertions with further arguments and citations.   Def. Reply Brief at 70-74.

Neither Plaintiff nor Defendants have cited Georgia law on the issue of which state's law should apply.   Plaintiff cites out-of-state cases for the proposition that because the aiding and abetting claim is a necessary adjunct to the breach of fiduciary duty claim and subject to the same analysis, the same law should apply.   Pltf. Omnibus Response   at 83 n. 21. Defendants reply with a citation to *Time Warner Entm't Co., L. P. v. Six Flags Over Ga.,*

---

[17] Given the length of the briefs filed by the parties in connection with this motion to dismiss, the court appreciates and certainly does not mean to criticize this argument on account of its brevity.

AO 72A
(Rev.8/82)

*LLC,* 245 Ga. App.334 (2000),[18] and assert that *Time Warner* is a case wherein the court applied Georgia law where the entity relevant to the breach of fiduciary duty claim was incorporated in Delaware.   However, the state of incorporation is nowhere mentioned in the *Time Warner* decision.   Defendants rely on *Monroe v. Board of Regents*, 268 Ga. App. 659 (2004), to assert that no cause of action is recognized in Georgia.   Finally, they contend that even if Delaware law applied, the claim would be time barred.

The court finds the recent case, *Insight Tech. v. Freightcheck*, LLC, 2006 WL 1679391 (Ga. Ct. App. June 20, 2006), particularly instructive.   In that case, the Georgia Court of Appeals applied Georgia law to consider a claim of aiding and abetting breach of fiduciary duty, where the alleged duty was owed to a Delaware corporation.   Accordingly, the court herein will do the same.

Further, the *Insight Tech* court found that such a claim exists in Georgia, stating:

[R]egardless of whether denominated "aiding and abetting a breach of fiduciary duty," "procuring a breach of fiduciary duty," or "tortious interference with a fiduciary relationship," Georgia law authorizes a plaintiff to recover upon proof of the following elements:   (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

---

[18] The judgment in this case was vacated by the Supreme Court of the United States. *Time Warner Entm't Co. v. Six Flags over Georgia*, 534 U.S. 801 (2001).

*Id.* at *5 (internal citations and quotations omitted).  It distinguished the *Monroe* case as failing to recognize a claim on the record then before the court and said that *Monroe* did not hold that such a claim is not allowable in Georgia.  *Id.* at *4.  The court does not need to consider, therefore, whether such claims may have been time barred under Delaware law.  Further, the court finds that the Complaint's allegations are sufficient to set forth this claim.

Because Georgia courts recognize a claim for aiding and abetting a breach of fiduciary duty, and Plaintiff has sufficiently alleged such a claim, the court DENIES Defendants' motion to dismiss for failure to state a claim with regard to Plaintiff's claim of aiding and abetting a breach of fiduciary duty.[19]

### 6.    Civil Conspiracy (Onex Defendants and Management Defendants) (Count XII)

Defendants set forth two reasons which they contend justify this court in dismissing Plaintiff's civil conspiracy claims for failure to state a claim.  First, Defendants contend that as Plaintiff has failed to state a claim on any of the underlying torts, he cannot allege conspiracy to commit these torts.  Plaintiff does not disagree that the civil conspiracy claims would fail if the underlying tort claims fail, but rather argues that the underlying claims were properly pleaded.

---

[19] The aiding and abetting claim lives on only so far as the underlying breach of fiduciary duty claims are still extant.  Earlier in this order the court has dismissed some of those underlying claims.

A portion of Plaintiff's civil conspiracy claim relates to the alleged breach of fiduciary duties.  Cmplt., ¶ 228.  Earlier in this order the court dismissed some of the breach of fiduciary duty claims.  Because the parties agree that Plaintiff cannot assert a civil conspiracy to breach such duties where a breach of the underlying tort cannot be asserted, the court GRANTS IN PART Defendants' motion to dismiss the civil conspiracy claim insofar as it relates to those breach of fiduciary duty claims that have been dismissed.  However, the court cannot dismiss on this ground the Defendants' motion to dismiss the civil conspiracy claims insofar as they relate to those breach of fiduciary duty claims that have not been dismissed or the civil conspiracy claims insofar as they relate to fraudulent transfers.  See Cmplt., ¶¶ 226-27.

Second, Defendants allege that Plaintiff has failed to allege any facts that Defendants acted in concert to accomplish a common unlawful design.  The court disagrees and finds that Plaintiff has provided sufficient support so as to satisfy the notice pleading requirement in Federal Rule 8(a) and that taken together, Plaintiff's Complaint has sufficiently alleged that Defendants acted together to accomplish the alleged common unlawful design.  *See* Cmplt., ¶¶ 226-31.  Therefore, the court DENIES Defendants' motion to dismiss for failure to state a claim with regard to Plaintiff's claim of civil conspiracy except as stated in the previous paragraph.

### 7.    Alter-Ego Liability (Onex Defendants) (Count XIII)

Defendants contend that this court should dismiss Plaintiff's claim of alter-ego liability for two reasons: (1) Plaintiff has not pleaded sufficient facts to support an alter-ego claim, and (2) Plaintiff has not alleged specific facts with regard to each of the Defendants.[20]

In addressing the viability of Plaintiff's claim of alter-ego liability, the court must first address which state's law applies: Delaware or Georgia. In a diversity case, a federal court must determine the applicable state law by looking to the conflict of laws rules that the forum state would apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In *Realmark Inv. Co. v. Am. Fin. Corp.*, 171 B.R. 692 (N.D. Ga. 1994), Judge Carnes found that the Georgia courts would apply the "internal affairs" doctrine when a corporation sought to pierce its own veil against a shareholder and look to the law of the state of incorporation.[21] Indeed, in *Multi-Media Holdings, Inc. v. Piedmont Center, 15 LLC*, 262 Ga. App. 283, 286 (2003), a case relied upon by Plaintiff for the principle that Georgia law applies, the Georgia Court

---

[20] Defendants also contend that this claim should be dismissed as Plaintiff does not allege that the Onex Defendants used the corporate form to *hide* alleged frauds or wrongs. (Emphasis added). Because Defendants have not provided any case law which holds that a plaintiff must allege that a defendant used the corporate form to *hide* alleged frauds, the court will not address this argument.

[21] Pursuant to the internal affairs doctrine, the law of the state of incorporation applies to the "relations *inter se* of the corporation, its shareholders, directors, officers or agents . . . ." *Diedrech v. Miller & Miller & Assocs., Architects & Planners, Inc.*, 254 Ga. 734, 735 (1985) (quoting Restatement (Second) Conflicts of Laws, § 313).

69

of Appeals distinguishes *Realmark* by noting that "the right of a third party external to the corporation is at issue and different conflict principles apply."[22]

Here, the rights of third parties are not being asserted. Rather, Plaintiff and the Litigation Trust of which he is the trustee are standing in the shoes of the various debtor corporations. By virtue of the Fifth Amended Plan of reorganization, the Litigation trust had the right to bring all of the Debtors' "assigned causes of action."[23] Plan, § 4.21. Accordingly, the court finds that, pursuant to the internal affairs doctrine, the law of the state of incorporation, Delaware, should apply.[24]

---

[22] In *Multi-Media*, a lessor brought an action against a parent corporation for rent due under a lease agreement assigned to the parent by the lessee, which had merged with parent's subsidiary. The lessor was not an entity itself related to the parent or subsidiary corporation.

[23] "Assigned Cause of Action means all right, title and interest of the Magnatrax Debtors and the Reorganized Magnatrax Debtors to pursue, litigate, settle, or otherwise resolve any Cause of Action against Onex Corporation or any Onex Affiliate." Plan, § 1.20.

[24] While the court finds that in this case, application of Delaware law is proper as to this issue, the same result would ensue with the application of Georgia law. It is not clear whether, as some would argue, Delaware is more reluctant to disregard the corporate form and impose liability, *see Multi-Media* 262 Ga. App. at 285. It is clear, however, that the Georgia courts, like Delaware courts, do not disregard the corporate form lightly. *U.S. v. Fidelity Capital Corp.*, 920 F.2d 827, 837 (11th Cir. 1991) (refusing, after trial, to find that sole shareholder was alter ego of corporation it owned); *Farmers Warehouse of Pelham, Inc. v. Collins*, 220 Ga. 141 (1964) (under Georgia law allegations only of common ownership, common management, common personnel and joint bank accounts and joint profit and loss statements were not sufficient without any allegations of misuse - some subterfuge of the corporate form to promote justice or protect fraud is necessary); *McKesson Corp. v. Green,* 266 Ga. App. 157 (2004) (dismissal of surviving corporation's counterclaim for unjust enrichment against former shareholders of absorbed corporation where counterclaim failed to allege any acts arising to abuse or disregard of corporate form by defendant or other

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Harco National Insur. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *9-10 (Del. Ch. Sept.19, 1989). "To state a cognizable claim for piercing the corporate veil under Delaware law, the plaintiff must allege facts that, if taken as true, demonstrate the defendant's complete domination and control over the corporation." *Northern Laminate Sales, Inc. v. Matthews,* 249 F. Supp.2d 130 (D.N.H. 2003) (citing *Wallace v. Wood,* 752 A.2d 1175, 1183 (Del. Ch.1999)). "This degree of control requires 'exclusive domination and control . . . to the point that [the corporation] no longer ha[s] legal or independent significance of [its] own.'" *Id.* Further, the alter ego theory "'requires that the corporate structure cause fraud or similar injustice.'" *Id.* (quoting *Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 729 (Del. Super. 1996)).

In the case before this court, the Complaint makes a number of allegations relevant to the alter ego/piercing the corporate veil theory. The Complaint alleges that the Onex Defendants controlled and dominated Magnatrax and its subsidiaries through the Management Agreement. Cmplt., ¶ 233; that the Onex Defendants controlled and dominated Magnatrax and its subsidiaries through common officers and directors, Cmplt., ¶ 233; that the directors and executives of the Debtors did not act independently but took direction from the Onex Defendants, Cmplt., ¶ 235; that the Onex Defendants, through their subsidiaries, owned a

shareholders).

71

majority of the capital stock of Magnatrax, controlling at least seventy percent 70% of the voting interest, which in turn held 100% of the voting interest in ABCO. Cmplt., ¶ 236; that the Onex Defendants dictated and directed Magnatrax's and ABCO's corporate strategies including, among other matters, (a) developing and implementing corporate and strategic plans, (b) budgeting corporate investments, (c) developing and implementing acquisition and divestiture strategies, (d) providing management, administrative, financial and support services, (e) providing debt and equity financings, and (f) developing international joint ventures and licensing arrangements.   Cmplt., ¶ 237.   The Defendants and the Debtors shared common directors and senior officers, Cmplt., ¶ 238, and the Onex Defendants caused Magnatrax and its subsidiaries to be grossly undercapitalized.  Cmplt., ¶ 239.

Further, Plaintiff has alleged  misuse of such dominance and control.   As discussed above, Plaintiff has set forth allegations in support of liability on an alter-ego theory; many of these allegations also go to the question of whether the domination or control by the parent and affiliated companies was misused.   Here, misuse is alleged in more than conclusory fashion:  Specifically, the Complaint alleges that Onex and its affiliates raised money to buy the stock of target companies by mortgaging their assets beyond the value of those assets and extracted tax benefits, fees and interest rate premiums, which benefitted the Defendants at a substantial cost to the acquired companies and their employees and creditors, Cmplt., ¶  2; the three primary acquisitions by Onex involved the formation of more than a dozen different entities formed for the sole purpose of the acquisitions and resulted in substantially greater

costs to Debtors at the time when they were insolvent, Cmplt., ¶ 3; Defendants used their complete control of Magnatrax and its subsidiaries to obtain millions of dollars for itself in spite of the crushing amount of debt that they had placed on the Magnatrax entities, Cmplt., ¶ 4; Defendants diverted moneys from the debtor companies to themselves, Cmplt., ¶¶ 6, 7; Defendants caused ABCO to pledge and mortgage its assets and used the proceeds and cash flow to pay its own shareholders, pay debt service to Onex (its new owner), pay transaction fees to Onex and Lender, pay professional fees and to pay everyone else except its creditors, Cmplt., ¶ 48; the interest rate charge to ABCO by its ultimate parent was inflated, Cmplt., ¶ 50; Defendants entered into a Management Agreement where control was exercised and fees were paid for exercising such control, even though Defendants were already entitled to control by virtue of their ownership, Cmplt., ¶ 59; Defendants set up a complex scheme that benefitted them when Magnatrax acquired other companies, to the detriment of the acquired companies, Cmplt., ¶¶ 60-63; Defendants caused various debtors to obtain additional debt to pay off stockholders rather than to fund operations and while paying interest on that additional debt, the Magnatrax entities slid into deepening insolvency.  Cmplt., ¶¶ 89-91; Onex Defendants benefitted both from the interest spread paid under the Tranche B structure (discussed above) and obtained valuable tax benefits from the Tranche B Structure at no cost to themselves but at great cost to ABCO and its affiliates.  Cmplt., ¶¶ 93-97.  Onex used a variety of complex transfers or abdication of control (Credit Agreement Transfers,

73

Acquisitions Transfers, Tranche B Transfers, Management Fee Transfers, and Control Premium Transfers) with constructive intent to defraud creditors, Cmplt., ¶ 146.[25]

The court finds that, taken all together, Plaintiff has alleged enough facts of complete domination and control and of misuse of such domination and control in support of his alter-ego theory in order to survive a motion to dismiss such theory of liability for failure to state a claim under Rule 12(b)(6). Moreover, because these allegations suggest that all Defendants participated in the control and domination of Magnatrax and its subsidiaries, the court will allow Plaintiff to proceed in his alter-ego theory against all Defendants for the time being. Therefore, the court DENIES Defendants' motion to dismiss for failure to state a claim with respect to Plaintiff's claim of alter-ego liability.

### 8.   Lender Liability (Onex Defendants) (Count XVI)

In Count XVI of the Complaint, after repeating and realleging prior allegations of the Complaint, Plaintiff alleges that the Onex Defendants, as secured lenders to ABCO and its subsidiaries under the Tranche B Structure and as insiders of ABCO and its subsidiaries, exercised complete domination and control over ABCO and in doing so breached its fiduciary duties and took actions that resulted in damages to the Debtors' non-insider creditors. Cmplt., ¶¶ 254-62.

---

[25] While the Complaint also alleges that complex structure and abdication of control were done with the actual intent to hinder, delay or defraud creditors of the acquired entities, Cmplt., ¶ 145, such claims have been dismissed (with leave to replead) for failure to allege such actual fraud with particularity.

74

Defendants contend that this court should dismiss Plaintiff's claim of lender liability for four reasons: (1) Any Defendants involved were "mere conduits"; (2) in order to state a claim for lender liability a plaintiff must plead, in the context of a loan, that a dominant corporation controlled a subservient corporation so as to proximately cause the plaintiff harm through misuse of that control; (3) as Onex Finance I passed funds to ABCO under the Tranche B Structure, it is the only possible "lender"; and (4) the Plaintiff fails to allege that Onex Finance I had the requisite control over ABCO to support a claim for lender liability. Def. Mot. to Dismiss at 79-81.

While many cases wherein a plaintiff seeks to hold an entity liable for the corporate debts or other liabilities of another corporation involve an alter ego or instrumentality theory to hold parent corporations or 100% shareholders liable, other cases have recognized that stock ownership is not the sine qua non of transferred liability. They have recognized that major creditors can exercise total domination and control over a subservient corporation and misuse that domination for its own benefit. In *Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.*, 483 F.2d 1098 (5th Cir. 1973), the Fifth Circuit applied Alabama law and stated that stock ownership was a possible factor or indication of such control, but not itself enough. In discussing whether a major creditor could and should be held liable for a corporation's debt, the *Krivo* court indicated that a creditor's active control in the management by itself would not be sufficient to impose liability. But the issue before the *Krivo* court was whether a directed verdict in favor of a major creditor was warranted under

75

the evidence presented at trial, not whether the complaint therein made sufficient allegations to survive a Rule 12(b)(6) motion.   Therein, insufficient evidence was produced at trial to warrant the imposition of liability.

The Bankruptcy Court for the Northern District of Georgia, applying Delaware law in *In re iPCS, Inc*,. 297 B.R. 283 (N.D. Ga. 2003), refused to dismiss a claim of lender liability. Judge Drake opined that under Delaware law, while stock ownership was a factor in determining the amount of control of one entity over another, creditor liability (an extension of the instrumentality theory) through domination and misuse of control could form the basis of a claim.   Although the court noted that conclusory allegations of domination and of misuse were not enough, *id. at 294-95,* the court's extensive review of the allegations of the complaint found them sufficient to withstand a Rule 12(b)(6) attack.  *Id.* at 297.

Here, the Complaint's allegations of control and domination and of misuse thereof, referred to above with reference to Defendants' attack on Plaintiff's alter ego theory, are also sufficient to withstand an attack on the lender liability theory.   At this stage of the proceedings, the court cannot determine whether the evidence will show that Defendants, or some of them, exerted such total control that Debtors had no separate mind, will, or existence of their own, but the court can conclude that the Complaint's allegations of control and misuse thereof preclude dismissal on Rule 12(b)(6) grounds.

Further, as stated above, in the section addressing whether Plaintiff has stated a claim with regard to the Tranche B Transfers, at this stage of the proceedings the court cannot

76

conclude that Defendants were "mere conduits" of transfers between ABCO and the Lenders; the allegations of the Complaint, taken to be true for purposes of this motion, indicate otherwise.

Finally, Defendants contend that because the Complaint "makes plain" that only Defendant Onex Finance I passed through funds to ABCO under the Tranche B Structure and because the Complaint does not allege that the other Onex Defendants provided funds to ABCO under this structure, the other Onex Defendants should be dismissed.    Also, they contend that the Complaint's allegations specifically as to Onex Finance I are insufficient to show such total control as is required for lender liability.   At this stage, the court cannot make the factual determination that Defendants seem to want.   Although in its description of the Tranche B Structure, it appears that the funds passed from (or through) Onex Finance I to ABCO, Cmplt., ¶¶ 45, 90, the Complaint repeatedly alleges that the Defendants acted in concert and refers to the relationship and involvement of various Onex entities.   Whether or not the evidence will support the piercing of various corporate veils in connection with a lender liability theory of liability so as to hold liable other Onex Defendants on a theory of lender liability, this court cannot now predict.   Given these allegations of interrelationship, dominance and misuse of control, the court cannot now read the Complaint so narrowly as to limit potential liability under this theory to a particular defendant.

Therefore, the court DENIES Defendants' motion to dismiss for failure to state a claim with respect to Plaintiff's claim of lender liability.

77

9.   **Unjust   Enrichment   (Onex   Defendants   and   Management   Defendants) (Count XIX)**

Finally,  the  court  will  address  Plaintiff's  unjust  enrichment  claim.   In  his  complaint,

Plaintiff contends:

> As  a  result  of  the  complete  domination  and  control  of  the  Debtors  and  their
> breaches  of  the  fiduciary  duties  owing  to  the  Debtors'  creditors,  the  Onex
> Defendants  and  the  Management  Defendants  received  benefit  from  their
> management  of  the  Debtors,  and  this  benefit  inured  to  the  detriment  of  both  the
> Debtors  and  the  Debtors'  creditors.   This  benefit  to  the  Onex  Defendants
> constitutes  unjust  enrichment,  and  equity  requires  that  all  transfers  made  and
> obligations  incurred  by  the  Debtors  to  or  for  the  benefit  of  the  Onex
> Defendants  and  the  Management  Defendants  be  avoided  and  returned  to  the
> trust.

Cmplt., ¶¶ 283, 284.

Defendants  contend  that  Plaintiff  has  failed  to  state  a  claim  of  unjust  enrichment  for

two  reasons.   First,  Defendants  contend  that  a  claim  of  "unjust  enrichment  applies  when  there

is  no  legal  contract  and  when  there  has  been  a  benefit  conferred  which  would  result  in  an

unjust  enrichment  unless  compensated."   Def.  Mot.  to  Dismiss  at  81  (citing  *Tidikis  v.*

*Network  for  Med.  Commc'ns  &  Research,  LLC*,  274  Ga.  App.  807,  811  (2005)).   Dwelling

on  the  phrase  "management  of  the  Debtors,"  Defendants  contend  that  any  benefit  the

Defendants  received  from  their  management  of  the  Debtors  was  received  pursuant  to  the

management  agreement,  and,  therefore,  Plaintiff  cannot  state  a  claim  of  unjust  enrichment.

The  court  finds  otherwise.   As  the  court  reads  the  Complaint,  Plaintiff  seems  to  be  asserting

a  claim  that  through  the  Defendants'  domination  and  control  and  management  of  the  debtors,

78

Defendants received unjust enrichment. However, Plaintiff does not limit this enrichment to transfers made pursuant to the management agreement as Plaintiff does not specify the benefits. Therefore, at this point the court cannot conclude that Plaintiff's claim of unjust enrichment is barred due to a legal contract.

Second, relying on an argument stated above, Defendants contend that because Defendants invested heavily in the Debtors and lost significant amounts of money, they did not receive any benefit. The court is not swayed by this argument. Whether or not Defendants received some benefit is a fact-specific issue. It may be that despite the net loss that Defendants assert they sustained, they received a benefit in that the loss would have been greater had the allegedly wrongful payments mitigating that loss not been made.

For the aforementioned reasons the court DENIES Defendants' motion to dismiss for failure to state a claim with regard to Plaintiff's claim of unjust enrichment.

## III.    Conclusion

The court DENIES Defendants Ammerman and Blackmon's motion to dismiss [29], DENIES IN PART and GRANTS IN PART Onex Defendants and the remaining Management Defendants' motion to dismiss [40], GRANTS Defendants' motion for leave to file excess pages [42], GRANTS Plaintiff's motion for leave to file excess pages [49], GRANTS Defendants' motion for leave to file excess pages [53], GRANTS Defendants' motion to substitute exhibit re [29] motion to dismiss [57], GRANTS Defendants' motion to submit a

corrected affidavit [59], DENIES Defendants' motion to strike [62-1], and GRANTS

Defendants' motion to file a supplemental memorandum of law [62-2].


**IT IS SO ORDERED** this 15th day of September 2006.


<u>     s/ J. Owen Forrester     </u>
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

80