**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

RICHARD M. KIPPERMAN,                    :
not individually but solely in his       :
capacity as Trustee for the Magnatrax    :
Litigation Trust,                        :
                                         :    CIVIL ACTION NO.
                    Plaintiff,           :    1:05-CV-1242-JOF
                                         :
          v.                             :
                                         :
ONEX CORPORATION, et al.,                :
                                         :
                    Defendants.          :

**<u>OPINION AND ORDER</u>**

This matter is before the court on Plaintiff's motion to amend or for clarification [69];

Defendants Ammerman and Blackmon's motion to reconsider the order of the court dated

September 15, 2006 [70]; Defendants Hilson and Wright's oral motion to reconsider the

same order; the Onex Defendants' motion to dismiss from the First Amended Complaint

those claims and allegations that fail to comply with this Court's order dated September 15,

2006 [86]; and the Onex Defendants' motion to dismiss and strike Plaintiff's more definite

statement [155].

## I.   Background

### A.   Facts

This case is a result of the declaration of bankruptcy by Magnatrax Corporation and related entities (collectively "the Magnatrax entities") in May 2003. Plaintiff is a trustee for the Magnatrax Litigation Trust, a post-confirmation litigation trust established pursuant to the conditions of the Magnatrax Litigation Trust Agreement dated January 8, 2004. First Amended Cmplt., ¶ 14. Section 4.21 of the Magnatrax Litigation Trust Agreement assigned the Plaintiff trustee "Certain Causes of Action."

There are several Onex entities which are Defendants to this action. Defendant Nigel Wright ("Wright") is an officer of Onex and served on the Board of Directors and was an officer of Magnatrax Corp., American Buildings Company ("ABCO"), VicWest, Jannock Ltd., Jannock, Inc. (collectively "Jannock"), and other companies under the Onex/Magnatrax umbrella. *Id.* at ¶ 27. Defendant Mark Hilson ("Hilson") also is an officer of Onex and also served on the Board of Directors and was an officer of Magnatrax Corp., ABCO, VicWest, Jannock Ltd., Jannock, Inc., and other companies under the Onex/Magnatrax umbrella. *Id.* at ¶ 28. Defendant R. Charles Blackmon ("Blackmon") between 1992 and 2002 held ABCO's highest financial position, served on the Board of Directors of Magnatrax between 1999 and 2002, and served as an officer and a member of the board of directors of numerous companies under the Onex/Magnatrax umbrella. *Id.* at

2

¶ 29.  Defendant Robert T. Ammerman ("Ammerman") between 1992 and 2002 was president of ABCO, served on the Board of Directors of Magnatrax between 1999 and 2002, and served as an officer and a member of the board of directors of numerous companies under the Onex/Magnatrax umbrella.  *Id.* at ¶ 30.  In 2004, Defendant Ammerman rejoined ABCO and resumed his position as president.  *Id.*

The instant action arises out of numerous financial transfers that occurred between the above parties and which Plaintiff now alleges were fraudulent. In April 1999, Onex Corp. took steps to acquire ABCO.  ABCO was acquired by ABCO Holding Corp., which was subsequently named Magnatrax Corp. *Id.* at ¶¶ 32-38.  "The purchase price for the ABCO acquisition was financed in part through a complex series of borrowing pursuant to an Amended Credit Agreement dated as of May 11, 1999 . . . by and among ABCO Onex LP and Magnatrax as Borrowers, and Canadian Imperial Bank of Commerce . . . and several other U.S. and Canadian financial institutions . . . ." *Id.* at ¶ 42.  Onex was able to complete the merger with ABCO that became effective on May 12, 1999.  *Id*. at ¶ 37.  Following the merger, ABCO and Onex Corp. entered into a Management Agreement which made Onex Corp. the ultimate lender and parent of ABCO and its subsidiaries, allowed Onex Corp. to direct and control ABCO's acquisition, investment and financing transactions, and gave Onex Corp. control over key Board and management functions. *Id.* ¶¶ 56-59.  Once Onex was advising ABCO, its senior management "developed and implemented an aggressive

3

growth initiative whereby Magnatrax quickly would acquire similar businesses through incredibly complex acquisitions and financing structures." *Id.* ¶ 64. ABCO acquired Republic Building Products ("Republic") and Jannock. The acquisitions and financial transactions left the Magnatrax entities insolvent and undercapitalized, *id.* ¶ 7, so they filed for bankruptcy on May 12, 2003.

These mergers and acquisitions were accomplished through a series of financial transfers. Between May 1999 and the Bankruptcy Petition date, the Magnatrax entity debtors "made transfers of interests in their property to the Lenders under the Credit Agreement ("the Credit Agreement Transfers") on account of loans for which the Onex Defendants were jointly and severally liable." F. Am. Cmplt. ¶ 140. These transfers were with respect to (a) the Tranche A Term Loan under the Amended and Restated Credit Agreement and under the Second Amended and Restated Credit Agreement ("the Credit Agreements"), *id.* ¶ 140, (b) "the revolving credit loan component" of section 2.4 of the Credit Agreements, *id.* ¶ 142, (c) quarterly commitment fees under the Credit Agreements, (d) a fronting fee of at least $75,000 for letters of credit issued pursuant to the Credit Agreements, *id.* ¶ 143, (e) "attorney's fees and expense reimbursements in connection with development, preparation and execution of, and any amendment, supplement or modification to, any of the lending document," *id.* ¶ 144, and (f) financing statements filed with the Delaware Secretary of State encumbering assets of the Magnatrax entities, *id.* ¶¶ 145-47.

4

The debtors also made payments of principal and interest under the Tranche B Structure, or "Tranche B Transfers," *id.* ¶ 148, "Acquisition Transfers," *id.* ¶ 150, and "Management Fee Transfers," *id.* ¶ 155-59.

## B.    Procedural History

On May 10, 2005, Plaintiff, Richard M. Kipperman, as trustee for the Magnatrax Litigation Trust, filed suit against Defendants, 302733 Nova Scotia, Inc., OMI Partnership Holdings, Ltd., Onex Corporation, Onex ABCO Limited Partnership, Onex ABCO Finance, LLC, Onex ABCO Finance II, LLC, Onex American Holdings, LLC, 1354495 Ontario, Inc. (collectively "Onex Defendants"), Gerald W. Schwartz, Mark Hilson, Nigel Wright, Christopher A. Govan, Robert T. Ammerman, R. Charles Blackmon, and VicWest Corporation ("VicWest"). Plaintiff's complaint set forth its claims in nineteen counts.[1] On July 15, 2005, Defendants Ammerman and Blackmon filed a motion to dismiss. On August 1, 2005, the Onex Defendants and Defendants Schwartz, Hilson, Wright, and Govan filed a motion to dismiss. In an order dated September 15, 2006 (the "Prior Order"), this court denied Defendant Ammerman and Blackmon's motion to dismiss and granted in part and denied in part the motion to dismiss of the Onex Defendants and Defendants Schwartz, Hilson, Wright, and Govan.

_____

[1]On September 30, 2005, Plaintiff filed a notice of voluntary dismissal of claims against Defendant VicWest.

On September 27, 2006, Plaintiff filed a motion to amend or for clarification (P's Mot. to A. or C.).  On September 29, Defendants Ammerman and Blackmon filed their motion to reconsider the court's September 15, 2006 order (Mgmt. D's Mot. to Reconsider). Plaintiff filed his First Amended Complaint (F. Am. Cmplt) on October 18,  and on November 3, the Onex Defendants filed a motion to dismiss from the First Amended Complaint those claims and allegations that fail to comply with this Court's order dated September 15, 2006 (Onex D's 11/06 Mot. to Dismiss).

This court held a scheduling conference on December 13, 2006.  At this conference, Defendants Hilson and Wright orally joined in Defendants Ammerman and Blackmon's motion to reconsider.  During the conference, the court asked Plaintiff to file a more definite statement addressing intent with respect to Plaintiff's claims alleging actual fraud.  Plaintiff filed its more definite statement on January 31, 2007.  On February 20, the Onex Defendants filed their motion to dismiss and strike Plaintiff's more definite statement (Onex D's 02/07 Mot. to Dismiss).

## II.   Discussion

To resolve the instant motions, this court must address (A) which parties are included in the "Assigned Causes of Action" received by Plaintiff under the Fifth Amended and Restated Joint Plan of Reorganization (hereinafter "the Plan"), (B) whether Plaintiff  has pled the Trust's claims sufficiently, (C) whether Plaintiff can assert tolling of the applicable

6

statute of limitation with respect to the "Acquisition Transfers," and (D) other miscellaneous issues.

### A.      "Assigned Causes of Action"

Defendants Ammerman, Blackmon, Hilson and Wright ask this court to reconsider its denial of their motion to dismiss.  Specifically, they claim that pursuant to the specific language of the Plan, they are not "Onex Affiliates," and they are released parties and immune from suit.  The court on reconsideration of this issue determines that the clear language of the Plan does not contemplate these individuals as defendants and DISMISSES Plaintiff's claims against them.

Under the Plan, the litigation trust received the right to bring the "Assigned Causes of Action."  Plan § 4.21.  The Plan defined "Assigned Causes of Action" as the "right, title and interest of the Magnatrax Debtors and the Reorganized Magnatrax Debtors to pursue, litigate, settle or otherwise resolve any Cause of Action against *Onex Corporation or any Onex Affiliate*, but specifically excluding any Cause of Action against any released party." Plan, § 1.20 (emphasis added).  Defendants Ammerman, Blackmon, Hilson and Wright are not "Onex Corporation,"defined in the Plan as "an Ontario corporation and the indirect holder of an equity interest in Magnatrax," so they must be considered "Onex Affiliates" in order to be proper defendants in this action.  Plan § 1.109.

> Onex Affiliate means OMI Partnership Holdings, Ltd., Onex American Holdings LLC, Onex ABCO Limited Partnership, 1354495 Ontario, Inc.,

> 302733 Nova Scotia, Onex ABCO Finance LLC, Onex ABCO Finance II, LLC **or any Person that controls, is controlled by, or is under common control with, Onex, but specifically excluding** (a) the Magnatrax Debtors, (b) the Reorganized Magnatrax Debtors, (c) the Canadian Magnatrax Debtors and (d) **the Related Persons of each Person identified in clauses** (a), (b) and (c). The term "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used with respect to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

Plan, § 1.110 (emphasis added). An individual can only be an Onex Affiliate if he "controls, is controlled by, or is under common control with, Onex," and Plaintiff has alleged that all of these individual defendants were so controlled. F. Am. Cmplt, ¶¶ 27-30, 196. However, the drafters of the Plan clearly contemplated, with the phrase "but specifically excluding," that there would be some individuals that come within the control portion of the definition that are not to be considered "Onex Affiliates." The individual defendants at issue may be so excluded if they are "related persons" to the Magnatrax Debtors, Reorganized Magnatrax Debtors, and Canadian Magnatrax Debtors.

Under the Plan,

> "Related Persons" means, with respect to any Person, such Person's **predecessors**, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and **each of their respective present and former** members, partners, equity-holders, **officers, directors**, employees, representatives, **advisors** (whether engaged prior to or subsequent to the Filing Date), attorneys (whether engaged prior to or subsequent to the Filing Date), **acting in such capacity**, and any Person claiming by or through any of them.

8

Plan, § 1.126 (emphasis added).  Wright and Hilson were former officers of Magnatrax Corp. and of ABCO, VicWest, Jannock, which were all under the Magnatrax umbrella. Blackmon and Ammerman were officers of ABCO and were Magnatrax directors. Magnatrax Corp., ABCO, and Jannock are Magnatrax Debtors and predecessors of Reorganized Magnatrax Debtors.  Plan § 1.131, Ex. A.  Under the definition of related persons, it is irrelevant whether these individuals held their position before, at the time of, or after the bankruptcy filing date.  As related persons to the Magnatrax Debtors and Reorganized Magnatrax Debtors, these four individuals are not Onex Affiliates and thus are not subject to suit.

The court takes notice of Plaintiff's argument that Wright and Hilson are not section 1.120 "released parties" as defined in 1.128(h), and Ammerman and Blackmon are not section 1.120 "released parties" as defined in 1.128(i).  The section defining "Released Parties" includes:

> (g) the Magnatrax Debtors and the Reorganized Magnatrax Debtors and their respective estates as of the filing date and thereafter, (h) the officers and directors of the Magnatrax Debtors and Reorganized Magnatrax Debtors as of the filing date, acting solely in such capacity, and (i) the Related Persons of each of the Persons referred to in clauses (a) through (h), but specifically excluding from the "Released Parties" (1) any of the Canadian Magnatrax Debtors and (2) Onex and the Onex Affiliates.

Plan, § 1.128.  However, the court need not reach the question of whether these defendants are released parties.  The Plan only assigns causes of action against *Onex Corporation* or

9

*any Onex Affiliate*; these defendants are neither and therefore Plaintiff cannot pursue a suit against them.

The court finds that its initial ruling on this matter was in error. As such, the court GRANTS Defendants Ammerman and Blackmon's motion to reconsider and Defendant Hilson and Wright's oral motion to reconsider the same. The court finds that Plaintiff was not assigned a cause of action against these parties under the Plan and DISMISSES Plaintiff's claims against them.

### B.    Plaintiff's Pleading Standard

In its motions to dismiss, Onex contends that this court should dismiss Plaintiff's fraudulent transfer claims for two distinct reasons. First, in the Onex Defendants' 11/06 motion to dismiss [86], they argue that Plaintiff's first amended complaint does not satisfy Rule 9(b) of the Federal Rules of Civil Procedure because it fails to comply with the court's order requiring the date, amount and instrument of each purported Credit Agreement Transfer, Tranche B Transfer, Republic and Jannock Acquisition Transfer made between May 1999 and July 1, 2002, and those transfers made after July 1, 2002, that Plaintiff alleges are actually or intentionally fraudulent. Next, in the Onex Defendants' 02/07 motion to dismiss, Onex argues that these claims do not comply with Rule 9(b) because Plaintiff has not pled the requisite intent to support such claims [155]. To establish a fraudulent transfer, the Trustee must prove (1) that a transfer was made, and (2) that the transferor made the

transfer with the actual intent to hinder, delay, or defraud its creditors. 11 U.S.C. § 548(a)(1)(A); O.C.G.A. § 18-2-74(a)(1); *Miller v. Lomax*, 266 Ga. App. 93, 96-97, 596 S.E. 2d 232, 238 (2004).  Onex's first dispute addresses whether Plaintiff has pled that each specific transfer was made, whereas, the second challenge attacks whether Plaintiff has plead "with actual intent to . . . ."

### 1.      Pleading Each Transfer Under 9 (b)

Upon reconsideration of its Prior Order [67], this court provides additional clarity as to whether Fed. R. Civ. P. 9(b), which requires that, "in all averments of fraud. . . , the circumstances constituting fraud . . . be stated with particularity," applies to any or all of Plaintiff's fraudulent transfer claims, and addresses, if 9(b) applies, whether Plaintiff has pled the Trust's  claims with sufficient particularity.

In its original order, this court relied on *Gwinnett Property, N.V. v. G + H Mortgage*, 215 Ga. App. 889, 890 (1994), to dismiss all of Plaintiff's allegations regarding Credit Agreement Transfers between May 1999 and July 1, 2002, and to require that Plaintiff re-plead all of these allegations with particularity within thirty (30) days.  The court looked to *Gwinnett* because it addressed the pleading standard under O.C.G.A. §§ 18-2-22, *et. seq.*, the predecessor to O.C.G.A. §§ 18-2-70, *et. seq*, which governs all Plaintiff's allegations that occurred before July 1, 2002.  *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1087 (11th Cir. 2004) ("[W]e conclude as a matter of Georgia law that the UFTA did not retroactively repeal

11

Ga. Code Ann. § 18-2-22, nor otherwise affect any claims based upon that statutory provision, where the underlying events occurred before the July 1, 2002 effective date of the UFTA.").  The court now finds *Gwinnett* to be inapposite precedent, as it addressed a state rather than a federal pleading standard and arose out of a trial rather than a pleading context.

No court has addressed whether the federal standard in Rule 9(b) applies to O.C.G.A. §§ 18-2-22, *et seq.*  Having examined this statute, the court finds it to be sufficiently similar to O.C.G.A. §§ 18-2-70, *et seq.,* to warrant treating the two statutes the same.  *See In re Terry Manufacturing Co. v. DeLong, Caldwell, Novotny & Bridgers, L.L.C.*, No. 03-32063, 2007 Bankr. LEXIS 2420 (M.D. Ala. May 29, 2007) (reaching the same result under both statutes).  Thus, if Rule 9(b) applies to the later statute, this court will deem it to apply to the its predecessor statute as well and the requisite degree of particularity for pleading under both statutes will be the same.

For the reasons stated in the Prior Order, this court continues to hold that Rule 9(b) applies to all claims of intentional fraud, such as those under O.C.G.A. § 18-2-74(a)(1), but it does not apply to claims of constructive fraud such as those under O.C.G.A. § 18-2-74(a)(2). (Prior Order at 27-34).  The question remains as to what Rule 9(b) requires of the parties here.  The Eleventh Circuit has not yet directly addressed what Rule 9(b) requires when pleading fraudulent transfer claims.  This court looked to other jurisdictions which have addressed this issue, in crafting its holding, but above all, this court sought to reach a

12

resolution that would satisfy the goals of Rule 9(b) and provide the parties with the tools necessary to resolve the instant matter.

Fed. R. Civ. P. 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1998) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Id.* at 1512 (quoting *Seville*, 742 F.2d at 791). A plaintiff's precise means is not as important as "injecting precision and some measure of substantiation into their allegations of fraud." *Seville*, 742, F.2d at 791. As a means for injecting precision, this court is guided by the Seventh Circuit's reference to Fed. R. Civ. P. 84, Form 13, in deciding a case under the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/5. *General Electric*, 128 F.3d at 1079. Form 13 outlines a complaint alleging a joint claim to recover debt and to void a fraudulent conveyance. *Id.* Although it arises in the context of federal joinder, this court agrees with the Seventh Circuit that Form 13 provides a good indication of what one must plead in a fraudulent conveyance claim under the Uniform Fraudulent Transfer Act

13

to satisfy the purposes of Rule 9(b).[2]   Form 13 merely requires (1) an allegation of jurisdiction, (2) a statement of the date and the conditions of the indebtedness involved (often with the document itself attached), (3) the amount owed, (4) a statement that the defendant conveyed real and personal property of a given description to another for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness described prior, and (4) a demand for judgment.

Here, Plaintiff sufficiently pled jurisdiction, that the defendant conveyed to another for the purpose of defrauding plaintiff and hindering and delaying collection, and demanded a judgment in his initial complaint. Cmplt. ¶¶ 8-11, 145-46, 284.  Plaintiff responded to this court's request in its Prior Order and injected a great deal more precision into the Trust's first amended complaint in order to provide a statement of the date and the conditions of the indebtedness involved.  Plaintiff has provided the expected date and dollar amount of many of the transfers the Trust seeks to set aside.  *See* F. Am. Cmplt. ¶¶ 140, 148, 155 (addressing the Tranche A Term Loan, the Tranche B Structure, and the Management Fee Transfers). Plaintiff is still unable to provide the exact date on which the transfers occurred, the exact dollar amount that cleared, and the method used, wire transfer, check, etc.  Rather, Plaintiff

---

[2]The Seventh Circuit's decision implies that 9(b) applies to both actual *and* constructive fraudulent conveyance claims.  *See General Electric*, 128 F.3d at 1079 (applying 9(b) in a constructive fraud context).  Although this court is guided by the Seventh Circuit's use of Form 13 to determine what Rule 9(b) requires, this court does not adopt that court's holdings on when Rule 9(b) applies.

14

asserts on "information and belief" that the Magnatrax entities made each of the payments demanded of it in the appropriate amount and on the appropriate date.

Pleadings based on "information and belief" are generally not sufficient to satisfy Rule 9 (b).  *United States ex. rel. Stinson v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990), cited with approval in *United States ex rel. Clausen v. Lab Corp. of Amer.*, 290 F.3d 1301, 1310 (11th Cir. 2002).  However, when the factual information necessary to confirm the belief is "peculiarly within the defendant's knowledge or control," pleading on information and belief is acceptable as long as the "supporting facts on which the belief is founded" are set forth in the complaint.  *Id.*  Kipperman maintains that the financial records necessary to show when and how the transfers between the Magnatrax entities and their lenders occurred "are in the possession, custody and control of the lenders and the Debtors and not the Trust," as Onex was in control of the Magnatrax entities, and all payments were made for the benefit of Onex to lenders that Onex had selected.  F. Am. Cmplt. ¶ 142.  Plaintiff references specific loan documents in the complaint which designate when and how much the Magnatrax entities were obligated to pay their lenders.  *See* F. Am. Cmplt. ¶¶ 140, 148, 155 (referencing the Amended and Restated Credit Agreement, the Second Amended and Restated Credit Agreement, and the Management Agreement).  It is logical for Plaintiff to have "information and belief" that if the Magnatrax entities were contractually obligated to make a payment in a given amount on a given day, that when they

made the payment it was for the given amount and on the correct day. "Rule 9(b) is intended to put defendants on notice as to the conduct complained of so that they have sufficient information to formulate a defense." *Stinson*, 755 F. Supp. at 1053. Kipperman has provided adequate notice to Defendants, as evidenced by their detailed answer responses. As such, the court finds that Plaintiff has satisfied Rule 9(b) with respect to the Tranche A Term Loan, the Tranche B Structure, and the Management Fee Agreement claims.

However, Plaintiff's complaint still references a number of transfers without some piece of specific information, including date, amount, or description of the property encumbered. *See* F. Am. Cmplt. ¶¶ 142-47 (addressing the "revolving credit loan component" of the Agreements, commitment fees, attorneys' fees, expense reimbursements, and financing statements and encumbrances filed with the Delaware Secretary of State). This court has concerns as to whether Plaintiff has provided enough information to Defendants to allow for them to prepare for trial with respect to these claims. One cannot argue against or for setting aside a transaction when one does not have enough information to identify the transaction at issue. Plaintiff requests discovery in order to provide this information, yet one of the primary purposes of Rule 9(b) is "to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Stinson*, 755

16

F. Supp. at 1053. Thus, the court declines to authorize any additional discovery in this order that it has not already discussed with the parties.

The court is not unsympathetic to Plaintiff's concerns, however, and recognizes that Plaintiff is in a unique position as the trustee of a litigation trust seeking to bring suit based on a myriad of complicated financial transactions and involving an often indistinguishable and overlapping set of parties. As such, this court is inclined to find a way for Plaintiff to be able to move forward with his claims. Courts generally take a liberal approach when reviewing allegations of fraud pled by a trustee in bankruptcy because, as an outside party to the transactions in issue, the trustee must plead the claim of fraud for the benefit of the estate and its creditors based upon secondhand knowledge. *In re: Reliance Fin. & Inv. Group, Inc.*, No. 04-80625, 2006 U.S. Dist. LEXIS 82945, *13 (S.D. Fla. Nov. 14, 2006) ("[W]hen the trustee of a bankruptcy estate brings [a] fraud claim . . . the Trustee will inevitably lack knowledge regarding acts of fraud previously committed by or against a third party debtor."); *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 379 (S.D. Fla. 1999) ([T]he Trustee argues--and the Court agrees--that courts should relax the specificity requirements where the plaintiff is a trustee in bankruptcy); *White Metal Rolling*, 222 B.R. at 428 ("Since a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead fraud based upon information and belief provided he pleads the basis of his belief.").

17

Here, the trustee's " "lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time," which require that this court grant him even greater latitude. *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999).  As such, this court will not dismiss Plaintiff's transfer allegations that do not allege a specific date, amount, and description.  Plaintiff has specifically identified the transfers the Trust would like voided by type and often with an approximate time frame or amount.[3]  This court believes that these are sufficient indicia of reliability for Defendants to move forward in mounting their defense.  These allegations are not, however, enough for a disposition of these claims.  This court DIRECTS Plaintiff to provide more information within thirty (30) days of receiving the necessary documents containing that information from Defendants.  By the time this court rules substantively on the merits of Plaintiff's claims, the court and Defendants must have a list of the transfers that Plaintiff seeks to set aside, and such a list must include the

---

[3]This court notes that Plaintiff pleads that "additional Credit Agreement Transfers, Tranche B Transfers and Acquisition Transfers made by the Debtors to or for the benefit of any of the Onex Defendants occurred during the time period from May 12, 1999 through and including the Petition Date, which transfers will be discovered from documents in the possession of the Debtors, the lenders and the Defendants" should be avoided.  F. Am. Cmplt. ¶ 151.  This court will not allow Plaintiff to pursue such claims unless the Trust can show that the transfer it discovered and seeks to avoid, on its face, fits into one of the categories it has currently pled such as management fees, attorney's fees, financing statements, etc.  The court will not allow this clause in the complaint to become a license to search for additional claims, and will not hesitate to dismiss such claims if Plaintiff tries to raise them.

date the transfer cleared, the amount of money or the value of the property transferred,  a

description of the transaction and the mechanism used to make the transfer, i.e., wire

transfer, check, etc.

### 2.        Pleading "Actual Intent to Defraud"

In their 02/07 Motion to Dismiss [155], the Onex Defendants opine that "nowhere

does Plaintiff's Statement identify with any particularity the intent required to plead his

intentional fraudulent conveyance claims.  While Plaintiff's Statement is long on invective

and innuendo, *no* particularities are set forth."  Onex D. 02/07 Mot. to Dismiss [155] ¶ 4.

Defendants seem to have misunderstood what the relevant law requires. Fed. R. Civ. P. 9(b)

states that "[m]alice, intent, knowledge, and other conditions of the mind of a person may

be averred generally."  Establishing a transferor's actual intent is ordinarily not susceptible

to direct proof, courts look to the totality of the circumstances and certain "badges of fraud."

*In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998).  These badges of fraud, listed

specifically in the relevant statute, include:

> (1) The transfer was to an insider;
> (2) The debtor retained possession or control of the property transferred after
> the transfer;
> (3) The transfer was disclosed or concealed;
> (4) Before the transfer was made the debtor had been sued or threatened with
> suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;

19

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.; see also* O.C.G.A. § 18-2-74(b).  A court may infer the requisite intent based upon a confluence of these factors.  Thus, circumstantial evidence is utilized to prove actual fraudulent intent.  *Id.*  As long as the parties plead one or more of the badges of fraud above, they have pled the intent element with the requisite degree of particularity.

Here, Plaintiff has pled several badges of fraud in the Trust's more definite statement and the First Amended Complaint.  First, Plaintiff alleges that the transfers in question were made to or for the benefit of Onex, an insider.  P's Statement of Facts, 38.  This first badge of fraud, a transfer to an insider, is one of the most important.  *See In re Toy King Distributors, Inc.*, 256 B.R. 1, 126 (Bankr. M.D. Fla. 2000) (*citing In re F & C Services, Inc.*, 44 B.R. 863, 868 (Bankr. Fla. 1984) ("Fraud will be presumed when the transfer occurs between corporations controlled by the same officers and directors.")); *Brown v. Cooper*, 237 Ga. App. 348, 353, 514 S.E. 2d 857, 862 (1999) (Transactions where one person is on both sides should be scrutinized more closely).  Plaintiff further states that the transfers resulted in the Debtors incurring debt and pledging all of their assets while receiving no consideration in exchange.  P.'s Statement of Facts, 38.  He argues that these transfers left

20

the Debtors insolvent or with unreasonably small capital.  *Id.*  Plaintiff claims that the transfers were accomplished through the breach of a fiduciary duty, were concealed from the Magnatrax entities' creditors, involved the use of dummy corporations, and were not in the ordinary course of the entities' business.  *Id.*  The court finds that Plaintiff has alleged sufficient circumstantial evidence in its more definite statement, through badges of fraud, and thus properly pled intent.  The court DENIES Defendant's motion to dismiss Plaintiff's actual fraudulent transfer claims.

Given its holdings above, the court further DENIES Defendant's motion to strike Plaintiff's more definite statement.  The court is aware that its statements during the December 13, 2006 scheduling conference may have given Defendants the impression that Plaintiff had to provide a more precise statement of intent than the law requires.  The court was regrettably operating in the context of actual common law fraud rather than statutory fraudulent constructive transfers.  The court has come to its current holding upon a closer examination of the case and the counts alleged.

The court is mindful of the Onex defendants' argument that Plaintiff must show, under the relevant statutes, that the *debtor* had the actual intent to hinder, delay, or defraud, and that in this case the *debtors* are the Magnatrax entities, and it is their intent, rather than the Onex defendants' intent that is relevant to this action.  However, the Trustee's allegations rely upon a theory that the Onex defendants dominated and controlled the

debtors, the Magnatrax entities, and as such their intent is the only one that is relevant.  *See*

*In re Toy King*, 256 B.R. at 129-30 ("Because each [defendant] is an insider of the debtor

and in a position to control the disposition of its property, the acts of concealment and the

accompanying inference of fraudulent intent of each [defendant] may be imputed to the

transferor, the debtor.  *In re Chase & Sanborn Corp.*, 51 B.R. 739, 740-41, 74 (Bankr. S.D.

Fla. 1985) (finding that since a dominant officer controlled the debtor and orchestrated their

transactions, his intent was the relevant corporate intent).  The court cannot speak at this

time as to the persuasiveness of such a theory, but such allegations are sufficient to get

Plaintiff past the pleading stage.

### C.    Equitable Tolling of the ABCO Acquisition Transfer Claim

In its September 15, 2006, order this court granted the Onex Defendants' motion to

dismiss as time barred the allegations relating to the ABCO Acquisition Transfer.  The court

qualified this dismissal with the following language:  "Plaintiff can resurrect the claim by

filing an amended complaint stating specifically that the *transfer* of funds happened on or

after May 12, 1999." Prior Order at 50 (emphasis in order).  In his motion to amend or for

clarification, Plaintiff sought a clarification of the court's order that he may amend his

complaint to strengthen his allegations that equitable tolling serves to alter the applicable

limitations period.  Plaintiff claims that fraud serves to toll the limitations period.  "Here,

a 'relationship of trust and confidence' is at the heart of the Trustee's allegations . . . that the

Onex Defendants used their insider status of the Debtor entities to plunder the Debtors' assets." P's Mot. to A. or C., 21.

In the Onex Defendants' 11/06 motion to dismiss, they claim that Plaintiff failed to "resurrect" Plaintiff's purported ABCO Acquisition Transfer claim, and they also assert that Plaintiff's equitable tolling argument fails.

### 1.        ABCO Acquisition Transfers Made Before May 12, 1999

Georgia law provides for tolling the statute of limitations due to fraud by the defendant. Where "actual fraud is the gravamen of the action . . . the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered. No other independent fraudulent act is required to toll the statute. Silence is treated as a continuation of the original act of fraud." *Shipman v. Horizon Corporation,* 245 Ga. 808 (1980). Further, on a motion to dismiss, the moving party bears the burden of demonstrating that the complaint is legally deficient. Thus, to prevail on their motion, the Onex Defendants must show that Plaintiff, standing in the shoes of ABCO, had notice of his claim "or had notice sufficient to prompt [it] to investigate and that, had [it] done so diligently, [it] would have discovered the basis for [his] claims." *Morton's Market, Inc. v. Gustafson's Diary, Inc.,* 198 F.3d 823, 832 (11th Cir. 1999).[4]

---

[4]Here, the trustee is bringing claims released to the litigation trust by the reorganized debtors. He therefore stands in the shoes of each of the reorganized debtors, including ABCO, in bringing the fraudulent conveyance claims.

23

Although, Plaintiff claims that the "Onex Defendants used their insider status to plunder the Debtor's assets," Plaintiff has never alleged or shown, and it would be hard pressed to do so, that the Onex Defendants somehow became insiders prior to gaining control of ABCO on May 12, 1999.  Before that date, the Onex Defendants were not in a position to conceal from the company (ABCO) any fraud committed by ABCO itself prior to that date.  Prior to May 12, 1999, ABCO's knowledge of the facts could not be concealed by the Onex Defendants, and thus there is no basis for barring those defendants on equitable grounds from asserting the applicable statute of limitations with respect to fraudulent conveyances made prior to May 12, 1999.  Therefore, the court finds that Plaintiff has alleged no basis for tolling the statute of limitations as to any claims of fraudulent transfers made prior to the Onex Defendants gaining control of ABCO on May 12, 1999.  For these reasons, the court GRANTS the Defendants' motion to dismiss with respect to ABCO Acquisition transfers made prior to May 12, 1999.

## 2.    ABCO Acquisition Transfers Made after May 12, 1999

Plaintiff has alleged that some ABCO Acquisition Transfers were made after May 12, 1999, specifically on May 24, 1999.  F. Am. Cmplt. at ¶ 145.  The court finds that by asserting allegedly fraudulent transfers made during the applicable statute of limitations, Plaintiff has resurrected his ABCO Acquisition Transfer claims, in part, in accordance with

24

the Court's September 15, 2006 order.  Accordingly, the court DENIES the Defendants' motion to dismiss with regard to such post-May 12, 1999 allegedly fraudulent transfers.

### D.   Miscellaneous Claims

In the Onex Defendants' 11/06  motion to dismiss, Onex contends that Plaintiff has re-pled certain dismissed claims.  Plaintiff responds that such claims were included so as to preserve his rights with respect to those claims should he ultimately decide to appeal the court's ruling on the dismissal motion at the end of the case.  All such claims dismissed by the court and subsequently re-pled and not dealt with elsewhere in this order are hereby dismissed for the same reasons as stated in this court's Prior Order.

## III    Conclusion

For purposes of review, (1) the following counts remain a part of this litigation, Count I-III, VII-XIV, XVI-XVII, XIX; (2) all allegations regarding transfers before May 12, 1999 are no longer a part of this litigation; (3) Plaintiff's constructive fraud claims do not have to comply with Rule 9(b), and such claims were not dismissed in the court's Prior Order, (4) actual fraud allegations with regard to the Tranche A Term Loan, the Tranche B Structure, and fees under the Management Agreement comply with Rule  9(b) and may proceed; (5) Plaintiff may proceed with its transfer claims regarding the "revolving credit loan component" of the Agreements, commitment fees, attorney's fees, expense reimbursements, and financing statements and encumbrances filed with the Delaware

25

Secretary of State, but Plaintiff must provide additional information regarding these transfers within thirty (30) days of receiving it from the Defendants, and Plaintiffs may not pursue any transfer it discovers from Defendants that does not, on its face, fit into one of the already alleged categories; and (6) all other claims which were dismissed in the court's Prior Order remain dismissed despite the fact that Plaintiff has repled them in its amended complaint, including Plaintiff's claims regarding control premium transfers and Plaintiff's allegations of breach of fiduciary duty against the Onex Defendants, Schwartz, and Govan. The court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion to amend or for clarification [69], GRANTS Defendants Ammerman and Blackmon's motion to reconsider Order of the court dated September 15, 2006 [70] and Defendants Hilson and Wright's oral motion to reconsider the same, DENIES the Onex Defendants' motion to dismiss from the first amended complaint those claims and allegations that fail to comply with this Court's order dated September 15, 2006 [86], and DENIES the Onex Defendants' motion to dismiss and strike Plaintiff's more definite statement [155].

**IT IS SO ORDERED** this 26th day of September 2007.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

26