**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RICHARD M. KIPPERMAN, | : | |
| not individually but solely in his | : | |
| capacity as Trustee for the | : | |
| Magnatrax Litigation Trust, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 1:05-CV-1242-JOF |
| | : | |
| v. | : | |
| | : | |
| ONEX CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>OPINION AND ORDER</u>**

This matter is before the court on Plaintiff's Motion to Compel [438], Motion to

Supplement [445] and the Onex Defendants' Motions to Compel [419, 457, 473], Motion

for Order [466], Motion for Relief [472], Motion to Limit Claims [486], and Motion to Grant

as Unopposed [490]. The factual and procedural history of this matter have been well

documented in the court's prior orders as has the court's broad discretion with regard to

discovery matters.

For the reasons stated below, the court GRANTS Motions [445 and 457]; GRANTS-

IN-PART and DENIES-IN-PART Motions [438, 466, and 486]; and DENIES Motions [419,

472, 473, and 490].

## I.      Motion to Compel [419]

On February 4, 2008, the Onex Defendants moved the court to compel Plaintiff to produce documents relating to its communications with its trust beneficiaries, notably its communications regarding the Onex Defendants' "cap theory" of damages.  Throughout this matter, the Onex Defendants have asserted that as a matter of bankruptcy law, Plaintiff's damages are capped at the total amount of unpaid claims held by the unsecured creditors who opted into the Magnatrax Litigation Trust.  The Onex Defendants' argument is based on section 1129(b) of the Bankruptcy Code, often referred to as the "cram down" provision.

The Onex Defendants contend that Plaintiff has been discussing with its beneficiaries that their damages may be capped.  The Onex Defendants want all documents, including e-mails, about these conversations.  The Onex Defendants assert that they are entitled to broad discovery under Fed. R. Civ. P. 26 concerning their defenses, one of which is that Plaintiff's damages are limited to an amount well below the $600 million that it claims.  The Onex Defendants maintain that it is highly relevant that Plaintiff discussed with U.S. Steel, its largest beneficiary, that there might be a cap on Plaintiff's damages and that Plaintiff might have suggested strategies about circumventing the cap.  Plaintiff has responded to the Onex Defendants' contentions by asserting that all communications between itself and its beneficiaries regarding the "capped theory" are irrelevant to this matter.

2

A party is entitled to discovery of any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). A piece of evidence is relevant if it has "any tendency to make the existence of any *fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). The question of whether the Plaintiff's damages are "capped" under any provision of the bankruptcy code is a question of law. Any thoughts that Plaintiff may have or have had on this matter or any thoughts and opinions Plaintiff or Plaintiff's counsel may have communicated to U.S. Steel or another trust beneficiary will not make it more or less likely for the court to accept or reject the Onex Defendants' capped damages argument. Therefore, this information is irrelevant and there is no need for the court to compel its production. The court DENIES the Onex Defendants' Motion to Compel [419].

## II.    Motion to Compel [438]

On February 15, 2008, Plaintiff filed a motion to compel the Onex Defendants to produce (1) unredacted complete versions of Onex Corporation's tax returns, (2) any so-called "value summary analyses" completed between 1999 and 2003, and (3) documents responsive to requests 15, 17, and 25 of the Plaintiff's First Request for Production of Documents. In the alternative, Plaintiff asked the court to bar the Onex Defendants from

AO 72A
(Rev.8/82)

asserting as a defense that they did not receive any tax saving benefits from the Tranche B loan structure.

The court will address the tax returns first. Plaintiff deposed Christopher Gowan on January 25, 2008, and Mr. Gowan allegedly testified that he could not answer certain questions about the tax benefits that Onex received from the Tranche B structure without reviewing the relevant tax returns and work papers.[1] As a result of this deposition, Plaintiff made a specific request by letter on January 31, 2008, for the Onex Defendants to produce Onex Corporations' tax returns. The Onex Defendants responded that they would "work on" Plaintiff's request. Plaintiff filed the instant motion because it found Onex's assurance to be insufficient, and it contended that these returns should have been turned over on three earlier occasions. In their amended initial disclosures filed in November 2007, the Onex Defendants identified "documents regarding any alleged tax benefits" as documents that would support their defenses. Plaintiff asserts that the Onex Defendants should have produced the returns pursuant to that disclosure. Plaintiff also maintains that the tax returns should have been produced under document requests 5, 31, and 34 of its First Request for Production of Documents and request 8 of its Second Request for Production of Documents. The Onex Defendants believe Plaintiff's motion to be premature and moot given their

---

[1]Plaintiff cites to no portion of the deposition transcript to support this assertion and the Onex Defendants dispute it. As this dispute of fact is ultimately irrelevant here, the court need not resolve it and mentions it here merely as context.

assurance that they would "work on" Plaintiff's request.  Further, Onex contends that Fed. R. Civ. P. 26(a)(1)(a) merely requires them to provide "a description by category and location of, all documents . . . that [it] may use to support its claims or defenses," that it does not require them to produce a copy, and thus they fully complied with Rule 26 when they identified "documents regarding any alleged tax benefits" in their November disclosures. Onex also asserts that requests 5, 31, 34, and 8 referenced by Plaintiff do not call for the production of the tax returns. Lastly, Onex argues that there is no basis for the severe sanctions that Plaintiff seeks since Plaintiff made its request a mere four weeks before filing its motion, the Onex Defendants said they were working on it, and this is the first time Plaintiff has ever filed a motion to compel these documents.  On February 25, 2008, the Onex Defendants ultimately produced twenty-four pages of redacted tax documents from seven years of tax returns.  By way of reply, Plaintiff insists that these documents are wholly insufficient and in no way provide a reason for Plaintiff to withdraw its motion for sanctions.

Having examined the parties' arguments, the court finds that the Onex Defendants behaved appropriately with regard to their initial disclosures, and requests 5, 31, 34, and 8 referenced by Plaintiff do not directly call for the production of Onex Corporation's tax returns.  As such, the court finds that Plaintiff did not officially request the production of the tax returns until its January 31, 2008 letter.  Under Fed. R. Civ. P. 34(b), a party has thirty days in which to issue a written response to a request for production.  Plaintiff filed the

instant motion prematurely on February 15, 2008; as of that time the Onex Defendants had not behaved improperly with respect to the requested tax returns.

For the sake of judicial efficiency, the court will interpret Plaintiff's motion as a continuing request and adjudicate its merits at this time. To the court's knowledge, the only Onex Corporation tax documents that the Onex Defendants have produced at this time are the twenty-four pages produced on February 25, 2008. The court finds this production to be insufficient. Onex Corporation's tax returns from 1999-2003 are relevant to the instant matter, and the court DIRECTS the Onex Defendants to produce them in unredacted complete form. To the extent that the Onex Defendants have concerns about the non-public, sensitive nature of these documents, they may produce them pursuant to the parties' Protective Order of June 2007. The court finds the sanctions Plaintiff requests to be unnecessary and unwarranted at this time.

The court turns to the so-called "value summaries." On or about January 22, 2008, during an e-mail production ordered by this court, the Onex Defendants produced an e-mail dated April 27, 2000, with a redacted attachment. Plaintiff contends, based on the testimony of Gerald Schwartz, that this document likely "allocated Onex's net equity among all of its various investments or cash on hand and c[a]me up with a total estimated value of Onex" and indicated how much of Onex's public share price was attributable to its investment in Magnatrax. (Mot., at 14). Plaintiff has asked for this attachment to be produced in

unredacted form and for the Onex Defendants to produce all similar documents produced between 1999-2003.  Plaintiff insists that these documents are highly relevant and are responsive to a number of requests in its First Request for Production of Documents.  The Onex Defendants have agreed to produce the particular attachment in unredacted form but have refused to produce any other such summaries, claiming that they are irrelevant.

The Onex Defendants point out that Plaintiff has identified no particular request which calls for summaries and note that such summaries merely reflect Onex's cost investment in Magnatrax and do not include any valuation information.  Onex submits that these documents will not assist Plaintiff in proving that Onex received some "benefit" from it acquisition of ABCO and other related companies.  Further, Onex argues that they have already produced such documents and the court has reviewed the redactions contained within them and declared them to be appropriate.

The court has examined the attachment, which Plaintiff submitted along with its motion, and the court finds that similar summary documents, to the extent they exist, are relevant to this matter.  The court DIRECTS the Onex Defendants to produce any such similar summaries, that have not yet been produced, to Plaintiff in unredacted form.  To the extent that such documents have already been produced, the court DIRECTS the Onex Defendants to refer Plaintiff to the appropriate Bates numbers. Depending upon the volume

7

of such summaries that are identified in the existing production, the court may be willing to reexamine the redaction of these documents upon a motion by the Plaintiff.

Lastly, the court examined the Onex Defendants' response to requests 15, 17, and 25. The court finds that the Onex Defendants have largely responded to requests 15 and 17; they said they would produce any non-privileged fairness and solvency opinions in their possession. If they have produced no such opinions, the court will presume in good faith that they possess none. The court agrees with Plaintiff, however, that its requests would encompass any documents related to any efforts to obtain any fairness or solvency opinions. The court DIRECTS the Onex Defendants to turn over any such non-privileged documents that exist or certify that no such documents exist. With regard to request 25, the court finds that the Onex Defendants have unduly limited their response by time period. The court DIRECTS the Onex Defendants to turn over all documents responsive to request 25 regardless of time period.

The court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion. The court will not award sanctions. The court directs the Onex Defendants to take all actions directed by this order with respect to the instant motion within thirty (30) calendar days from the date of this order.

### III.     Motions to Supplement [445], Limit [486], and Grant Unopposed [490]

The court warned Plaintiff in its order of February 15, 2008, that "Plaintiff's final answers to all sets of contention interrogatories will govern the future of this case.  For example, if a contention interrogatory calls for a list of damages and Plaintiff does not include a given damage, that damage will not be part of the case."  The court provided Plaintiff with instructions and directed it to supplement its interrogatory responses by February 22, 2008.  The court also provided Plaintiff with leave to supplement any of its other interrogatory responses as well, as long as Plaintiff did so by February 22, 2008.

On February 21, 2008, Plaintiff filed the instant Motion for Leave to Further Supplement Its Interrogatory Responses Following the Close of Discovery to Incorporate Newly Produced and Yet to Be Produced Documents and Deposition Testimony. February 29, 2008, was the last day of fact discovery in this matter.  The parties were engaged in extensive depositions during the final week of February.  It also appears that a large number of documents were produced during this period.  Plaintiff is concerned that these last minute depositions and productions will reveal information that ought to be included in Plaintiff's contention interrogatories so it might "govern the future of this case."

The Onex Defendants caution the court against granting Plaintiff's request and setting a precedent under which a plaintiff could file a complaint identifying defendants and counts and wait for discovery to provide all of its factual allegations.  The Onex Defendants express

concern that they will not be able to engage in discovery on all of Plaintiff's additional contentions and argue that allowing Plaintiff to file additional contentions will defy the underlying purpose of Fed. R. Civ. P. 9(b), namely that a Defendant know the allegations it must defend against.

The court recognizes that the actions of both sides have delayed discovery in this matter. The parties' time-consuming and extensive arguments over document production led to arguments over depositions and resulted in a bulk of the depositions in this matter being taken during the last two weeks in February. The court also has serious concerns about the state of e-mail production in this matter, which it will allow the parties to address in the upcoming discovery hearing on April 29, 2009. In light of these circumstances and the court's prior rulings, the court will allow Plaintiff to amend its contention interrogatories. The court's permission, however, is limited. Plaintiff may amend its interrogatories to the extent that its amendments are necessitated by the late production of documents and those documents contain information that could not have been discovered earlier through due diligence.[2]  The court GRANTS Plaintiff's Motion for Leave [445].

On March 7, 2008, the Onex Defendants filed the instant lengthy Motion for Entry of an Order Limiting Plaintiff's Claims to Those Alleged in the Amended Complaint and Precluding Plaintiff from Raising Any Claims Not Alleged Therein. The Onex Defendants

---

[2]The court defines "late produced documents" as those produced within six weeks of the end of fact discovery on February 29, 2008.

10

contend that Plaintiff has abused the court's leave to supplement its contention interrogatories before February 22, 2008, and has injected entirely new claims into the case without properly seeking to amend its complaint.  Specifically, the Onex Defendants allege that Plaintiff has added claims that Magnatrax's decision to sell Armtec in August 2001 and Magnatrax's decision to file bankruptcy in May 2003 rather than on some earlier date constitute breaches of fiduciary duty by the Onex Defendants and Messrs. Ammerman and Blackmon.

The Onex Defendants maintain that the manner in which these new claims are raised circumvents prior rulings by the court that would preclude them.  Onex further contends that the appropriate method to add these claims is an amended complaint; Plaintiff failed to amend its complaint; and regardless, any amendment would be futile.  Plaintiff responds that the facts Onex references are not new claims at all;

> [r]ather, these actions relate to the Onex Defendants' breaches of fiduciary duties; they show how Magnatrax was harmed by the board resolutions and the structure of the transactions (particularly the Jannock transaction); they demonstrate the control Onex exerted over Magnatrax; and they rebut the assertion that Onex lost money on these deals.  These facts relate to claims set forth in the Amended Complaint in Counts X-XIII and XVIII.

(Resp., at 4).  In the alternative, Plaintiff maintains that if the court determines that these facts are new claims, it should allow Plaintiff to amend its complaint to include them.

The Onex Defendants' motion puts two questions before the court:  (1) whether Plaintiff's assertions via contention interrogatory constitute new "claims," and (2) whether

Plaintiff must amend its complaint to reflect these new claims.  Both the specific examples provided by the Onex Defendants relate to counts ten and eleven of Plaintiff's First Amended Complaint which address breach of fiduciary duty and aiding and abetting the breach of fiduciary duty.  Count X of Plaintiff's Amended Complaint, entitled Breach of Fiduciary Duty Against Onex Defendants and Management Defendants, does not merely incorporate the facts in the rest of the complaint and allege breach of fiduciary duty; rather, it sets out nine specific ways in which the Onex Defendants and the Management Defendants have breached their fiduciary duties to Plaintiff:  (1) by directing and passing resolutions authorizing the transaction whereby (a) ABCO incurred $140,000,000 of indebtedness to Onex to finance Onex's acquisition of ABCO, and (b) ABCO paid merger consideration for its own stock in excess of its value; (2) by directing and passing resolutions authorizing the transaction whereby (a) ABCO incurred $25,000,000 of indebtedness to Onex to finance the acquisition of Republic, and (b) ABCO acquired Republic at a price that was grossly in excess of its value; (3) by directing and passing resolutions authorizing transactions whereby (a) ABCO incurred approximately $230,000,000 of indebtedness to finance the Jannock acquisition, (b) ABCO purchased Jannock and its subsidiaries for more than twice their fair market value, (c) ABCO incurred $57,000,000 of debt at 12.5% interest in order to provide interest-free financing to Vicwest to purchase Jannock, and (d) ABCO and its subsidiaries purchased the Jannock subsidiaries

12

in excess of its value; (4) by directing and passing resolutions authorizing ABCO to pledge all of its own assets to Onex as part of Onex's acquisition of ABCO; (5) by directing and passing resolutions authorizing ABCO to pay an interest rate to Onex, its insider, that was inflated above the rate charged by the Lenders by 0.25%; (6) by authorizing and directing transactions and acquisitions that rendered Magnatrax, ABCO and their subsidiaries insolvent, or, alternatively, that left the companies with unreasonably small capital with which to conduct their business or to satisfy their debts; (7) by approving and directing approximately $2,000,000 in payments to Onex Corporation and OMI pursuant to the Management Agreement whereby ABCO paid Onex for "consulting services" associated with Onex's acquisition of ABCO; (8) by approving and directing approximately $750,000 in payments to Onex Corporation and OMI pursuant to the Management Agreement whereby ABCO paid Onex for "consulting services" associated with Onex's acquisition of Republic; and (9) by approving and directing approximately $4,100,000 in payments to Onex Corporation and OMI pursuant to the Management Agreement whereby ABCO paid Onex for "consulting services" associated with Onex's acquisition of Jannock. (F. Am. Cmplt. ¶¶ 196-206).

In Plaintiff's supplemental contention interrogatories served on February 22, 2008 [452], Plaintiff contends that a breach of fiduciary duty occurred when Magnatrax sold its Armtec business to ONCAP LP in 2001 to pay the amounts due under the Bridge loan to

13

purchase Jannock.  Plaintiff contends that another breach occurred when the Magnatrax delayed the filing of its Chapter 11 petitions until May 12, 2003, to avoid liability and decrease the assets available for recovery by creditors.  (Supp. Interrog. [486-8], at Ex. F). These two allegations are factually distinct from the allegations made in Plaintiff's amended complaint and other pleadings.  These allegations deal with the timing of the bankruptcy and the sale of an asset while Plaintiff's prior allegations dealt with the acquisition of additional assets, the debt incurred to do so, and the purchase of consulting services.  Further, these claims might necessitate additional discovery on the part of Defendants.  Thus, the court finds that Plaintiff's allegations do more than factually supplement Plaintiff's existing claims and that they are new claims in and of themselves.

The court's finding in this respect is bolstered by the pleading rules.  The notice pleading standard under Fed. R. Civ. P. 8(a) requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief."  Under this rule, Plaintiff need not plead every factual occurrence that supports its claim for breach of fiduciary duty.  However, Rule 8(a) must be read in conjunction with Rule 10(b), as recently amended, which instructs, "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . .  If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."  Rule 8(a) and Rule 10(b) are intended to

14

> work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 n.57 (11th Cir. 2008) (holding that a complaint is insufficient if it contains in one count a host of claims based on discrete acts committed by a defendant against different plaintiffs at different times). Plaintiff's Amended Complaint currently includes Defendant's breach of fiduciary duty with respect to each instance of approving, directing, or passing in a separate paragraph. Defendants' actions with respect to the decision on when to file bankruptcy and the decision to sell Armtec are factually distinct from the existing paragraphs in Plaintiff's complaint, thus under Rule 10 these allegations would have to be plead in new paragraphs.

It is clear to the court, having established Plaintiff's allegations as new claims, that Plaintiff cannot merely include these allegations in its contention interrogatories without moving to amend the complaint to add them. The court's holding with respect to this issue applies to each new "separate transaction or occurrence" in Plaintiff's Supplemental Contention Interrogatory Responses filed on February 22, 2008, and each new "separate transaction or occurrence" that Plaintiff might include in its Supplemental Contention Interrogatory Responses filed after the close of discovery and necessitated by the late production of evidence.

15

The court DIRECTS Plaintiff to file a Motion to Amend if Plaintiff wishes these new transactions and occurrence to be placed before the court. Once Plaintiff has done so, the court will weigh the equities of amendment under Fed. R. Civ. P. 15. In determining whether an amendment will be prejudicial to the Defendants, the court will consider heavily any sanctionable conduct on the part of any party with respect to the late production of discovery materials. The Onex Defendants' Motion is GRANTED-IN-PART and DENIED-IN-PART.

On March 14, 2007, the Onex Defendants filed an Emergency Motion for an Order Granting Motion [486] as Unopposed. The Onex Defendants argue that because Plaintiff did not respond to their motion within the three-day discovery motion response time frame set by the court, the court should grant the motion as unopposed. Plaintiff responded to this motion on March 17, 2008, and argued that the Onex Defendants' Motion for Entry of Order was not a discovery motion subject to the three-day response requirement but rather a substantive motion subject by default to the applicable federal and local rules. Plaintiff maintains that under Local Rules 7.1(b), and Appendix H and Fed. R. Civ. P. 6(e), it had thirteen days to respond to the Onex Defendants and stated that it would so respond. Plaintiff filed a response as it indicated that it would on March 24, 2008, thirteen days after the Onex Defendants' Motion for Entry of Order was filed. The court finds the instant

16

motion to be yet another example of the "over lawyering" present in this case.  The Onex

Defendants' Emergency Motion to Grant as Unopposed is DENIED.

## IV.   Motion to Compel [457]

On February 26, 2008, the Onex Defendants filed a Motion to Compel Plaintiff to

Produce Documents Related to His Communications with Robert T. Ammerman and

R. Charles Blackmon.  Messrs. Ammerman and Blackmon are former officer/directors of

companies within the Magnatrax umbrella.  These individuals were once defendants in the

instant matter.  On September 26, 2007, the court dismissed these individuals, and on

January 9, 2008, they entered into a settlement with Plaintiff.  By the terms of the Settlement

Agreement, Plaintiff gave Messrs. Ammerman and Blackmon a general release of all claims

and actions against them and agreed not to appeal their dismissal from this case.  In

exchange, Messrs. Blackmon and Ammerman agreed to make themselves available to testify

at trial in this matter and to talk with Plaintiff's counsel prior to trial as long as Plaintiff

covered a portion of the legal fees they would expend to do so.  Plaintiff provided the Onex

Defendants with a copy of the Settlement Agreement.

On January 14, 2008, counsel for the Onex Defendants wrote Plaintiff's counsel to

request additional information about Plaintiff's settlement with Messrs. Ammerman and

Blackmon including:

> (a)     documents, including drafts, concerning or reflecting communications
>          with Messrs. Ammerman and/or Blackmon or anyone acting on their

behalf (including, but not limited to, counsel and insurers) regarding any potential resolution of this action, whether specifically concerning the Settlement Agreement or any prior similar discussions;

(b)     communications with any insurer of Messrs. Ammerman and Blackmon with respect to this action or as to which Messrs. Ammerman and Blackmon have made a claim as a result of this action;

(c)     notes taken during any conversation with anyone identified in (a) and/or (b); and

(d)     a list identifying all persons involved in any way in the drafting, negotiation or communication concerning the Settlement Agreement.

Plaintiff refused to produce these documents, and the Onex Defendants filed the instant motion.

The Onex Defendants contend that this information is relevant, discoverable, and clearly falls within requests 13 and 30 to their First Request for Production of Documents served on January 3, 2007.  Citing a number of cases, the Onex Defendants argue that the fact that Plaintiff's communications may be related to settlement negotiations and agreements does not render the documents undiscoverable.  Plaintiff counters stating that the only documents in existence are the drafts of the Settlement Agreement and a few e-mails between counsel.  Plaintiff maintains that the Onex Defendants are not entitled to these documents because "they are irrelevant and not required by well-established law . . . [and] producing these documents would invade the confidential nature of settlement negotiations and violate the various policy reasons behind protection of settlement-related documents from discovery by non-settling parties."  (Resp., at 2).

18

The Eleventh Circuit has not directly addressed the issue of whether settlement agreements are discoverable.  Two primary approaches have emerged nationally, and courts within the Circuit have adopted both.  Under both approaches, relevancy governs the admissibility of settlement agreements and negotiations, and Fed. R. Evid. 408, which limits the *admissibility* of compromise negotiations, does not create a settlement privilege for purposes of discovery or make settlement agreements and negotiations *per se* undiscoverable.  *Gutter v. E.I. Dupont de Nemours and Co.*, No. 95-2152-CIV-GOLD, 2001 U.S. Dist. LEXIS 9706, *3 (S.D. Fla. Jan. 31, 2001).  The distinction in the approaches comes from the degree of relevancy required.  "Some courts require a particularized showing of relevancy . . ., while others reject this extra condition as violative of the 'modest threshold' of relevancy Rule 26(b) requires."  *Id.* (collecting cases).  Proponents of a particularized showing contend that because Fed. R. Evid. 408 severely limits the purposes for which settlement evidence can be used at trial, discovery surrounding settlements is unlikely to "lead to the discovery of *admissible* evidence" as required by Fed. R. Civ. P. 26.  *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994) (emphasis added).  Such proponents maintain that a particularized showing is necessary to balance confidentiality and the desire to encourage settlement with the low likelihood that settlement discovery will be ultimately relevant.  *Id.*  Opponents of a particularized showing argue that as long as there is a good faith belief that the evidence might be admissible, for instance to show bias, it

19

should be discoverable, and any confidentiality concerns that might prompt calls for a particularized showing can be resolved through a protective order. *Jen-Wen, Inc. v. Nebula Glass Int'l, Inc. v. Reichhold and Polygard, Inc.*, No. 05-60860-CIV, 2007 U.S. Dist. LEXIS 37134, *7-10 (S.D. Fla. May 22, 2007). Proponents of this theory contend that although settlement discovery may ultimately have little to say and leave the discovering party with little or nothing to use, that is why it is called "discovery," and a party desiring discovery is entitled to know the information it seeks is useless well before trial. *Id.*

The court finds that Rule 26 sets forth a very low threshold for relevancy. *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) ("The standard for what constitutes relevant evidence is a low one."). Thus, the court is inclined to err in favor of discovery rather than against it. As such, the court will adopt the more lenient showing of relevance discussed above. Here, the Onex Defendants seek settlement discovery for at least one arguable admissible purpose, bias, and Plaintiff has certainly not shown that there is no way such discovery will lead to admissible evidence. The court doubts that the Onex Defendants will find much of any use, but regardless, the court GRANTS their motion and DIRECTS Plaintiff to provide the Onex Defendants with all non-privileged information responsive to their January 14, 2008 letter within thirty (30) calendar days of the date of this order.

## V.     Motion for Order [466]

20

On February 28, 2008, the Onex Defendants filed a motion regarding Plaintiff's unauthorized disclosure of Onex Corporation tax documents to a third party. On February 25, 2008, the Onex Defendants produced a twenty-four-page portion of the Onex Corporation's tax returns for the relevant years.[3] A cover letter produced with these pages included the following language: "They have been stamped confidential in accordance with the protective order entered by the Court on June 1, 2007, and we require that they be 'for litigation counsel eyes' only." (Mot., at 3).

Plaintiff requested the tax documents in order to disprove Onex's defense argument that it received no tax benefits from the Tranche B loan facility involved in this matter. In accordance with this purpose, Plaintiff provided the tax documents it received to its tax consultant, Todd Miller, a prominent tax practitioner with the Canadian law firm of McMillian Binch Mendelsohn LLP in Toronto, to analyze for possible Canadian tax benefits from Tranche B. Plaintiff had disclosed Mr. Miller as a potential expert on Canadian income tax law on January 11, 2008. At the time of Plaintiff's disclosure, Plaintiff had not yet requested the tax returns at issue. The Onex Defendants expressed no objection to Mr. Miller, and he executed the Confidentiality Undertaking, as required by the Court's June 1, 2007 Order.

---

[3]As was noted previously in this order, the Onex Defendants provided Plaintiff with far fewer tax documents than they requested. The court DIRECTS the Onex Defendants to provide Plaintiff with full, unredacted copies of their 1999-2003 tax returns.

The Onex Defendants contend that the tax documents at issue "reflect commercially sensitive information that is not provided to the general public and, if disclosed, could affect Onex's competitive position in the marketplace," and that they conditioned the disclosure of these documents on an understanding that they would be for counsel's eyes only. (Mot., at 4). The Onex Defendants argue that Plaintiff flagrantly breached the June 1, 2007 Protective Order by failing to head the litigation counsel's eyes-only stamp upon the tax documents and by turning them over to a third party, notably a third party operating in the same city as Onex Corporation and with likely access to its competitors, without seeking Onex's permission. The Onex Defendants move the court to order that any disclosure of Onex's tax returns be limited to litigation counsel, the improperly disclosed documents be returned, Plaintiff identify every person who has seen the documents, and award monetary sanctions as well as the Onex Defendants' cost in bringing this motion.

Plaintiff avers that it has acted at all times within the parameters of the June 1, 2007 Protective Order. Plaintiff argues that there is only one tier of protection in that agreement, "confidential," and that documents designated as "confidential" may be disclosed to the parties' experts and consultants, as long as the expert agrees to be bound by the Protective Order and sign and date a copy of the Confidentiality Undertaking. Plaintiff maintains that it has a clear understanding of the distinction between a single and a multiple tiered agreement because it specifically negotiated not to have a second tier of "highly

confidential," in part because it would have placed restrictions on sharing information with experts.  Plaintiff contends that had the Onex Defendants wanted to add a "for counsel's eyes only" designation they could have sought to add one through the written amendment procedure set out in the agreement.  Plaintiff insists that the existing Protective Order provides ample protection and believes that there is no risk that Mr. Miller, as a member of the Canadian bar in good standing, would improperly disclose information to the Onex Defendants' competitors in contradiction to the Confidentiality Undertaking which is signed. Further, the court has ample jurisdiction over Mr. Miller pursuant to the agreement itself should he do so.

The parties' June 1, 2007 Protective Order included the following relevant provisions:

> 7.      . . . Materials or information designated as "Confidential" under the terms of this Protective Order may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following Qualified Persons, and only to the extent necessary for this litigation . . . .  Qualified Persons to receive Confidential Information are limited to: . . . .
>
> (c)    experts or consultants and their employees and clerical assistants, retained by any Party for the purpose of testifying or rendering assistance or providing opinions in the litigation, subject to the limitations and requirements of Paragraph 9; . . . .
>
> 9.     Those persons identified in Paragraphs 7(c), 7(e), and 7(f) above to whom Confidential Information is disclosed shall agree to be bound by this Protective Order; they shall evidence their consent to be bound . . . by signing and dating a copy of the Confidentiality Undertaking . . . .

> ***In addition***, a Party disclosing Confidential Material of another Party to consultants pursuant to Paragraph 7(c) ***shall notify the Designating Party of the consultant to whom such disclosure is proposed to be made at least seven (7) days before such disclosure occurs.*** After being notified, the Designating Party shall have three (3) business days to inform the Court if it objects to any such disclosure. In the interim, and to the extent an objection is made by the Designating Party, the Confidential Material shall not be disclosed to the consultant.

> . . . .

> 15. This Protective Order shall be without prejudice to the right of any Participant to oppose disclosure of any document or information for any reason other than confidentiality. This Protective Order may be changed only by further agreement of the Parties in writing or by order of the Court, and is without prejudice to the rights of any Party to move in good faith for relief from any of its provisions, or to seek or agree to additional protection for any particular Material or information, including but not limited to heightened confidentiality protection.

(Joint Motion [203-2], at ¶¶ 7, 9, 15 (emphasis added)). The court having read and examined these provisions finds that Plaintiff has failed to fulfill its obligations under paragraph 7. While Plaintiff identified Mr. Miller as an expert and Mr. Miller duly signed the Confidentiality Undertaking, Plaintiff did not notify the Onex Defendants that disclosures of confidential information would be made to Mr. Miller at least seven days before such disclosures occurred. Plaintiff's lack of action constituted a breach of the parties' Protective Order. The court need not address paragraph 15 or the "for attorneys' eyes only" designation to rule on the Onex Defendants' motion. The court will note here, however, that the Onex Defendants' stamp and cover letter alone did not constitute a written modification of the Protective Order or an agreement for additional protection under

24

paragraph 15.  If anything, the Onex Defendants' actions were an effort to *seek* additional protection to which Plaintiff did not respond.

The Onex Defendants' motion is GRANTED-IN-PART and DENIED-IN-PART. The court will order Plaintiff to pay Onex's cost of bringing this motion and enjoin all future disclosures without notice pursuant to the Protective Order.  The court will not award additional sanctions absent any evidence of actual harm.

## VI.    Motion for Relief [472]

On February 29, 2008, the Onex Defendants filed a Motion for Relief Pursuant to the Court's Opinion and Order Dated December 21, 2007 with Respect to Documents Subpoenaed by the Onex Defendants from Huron Consulting Services, LLC and Withheld by Plaintiff.  Huron is a third-party financial advisor that the Creditors' Committee hired during the Magnatrax bankruptcy to review and provide advice on the financial transactions that are a part of the instant action.   The Onex Defendants served a subpoena on Huron on March 8, 2007.   Huron did not produce the subpoenaed documents, and the Onex Defendants filed a motion to compel in the Southern District of New York.  Neither the Creditors' Committee nor the Plaintiff objected to this motion and it was granted on July 31, 2007.  On August 13, 2007, this court granted a motion by Plaintiff to stay the production ordered by the Southern District of New York until Plaintiff could resolve its privilege concerns.  Plaintiff submitted a privilege log to the Onex Defendants which the Onex

25

Defendants found insufficient.  On September 4, 2007, Plaintiff filed a motion for protective order with this court regarding 672 items listed on Plaintiff's privilege log.

This court denied Plaintiff's motion and stated that it would "not address the privilege issues unless the parties explain[ed] to the court how the information contained in the 672 documents in dispute [was] relevant and necessary to the ultimate adjudication of the Plaintiff's claim."  (12/21/07 Order, at 5).  The court's ruling arose from its statements throughout the instant litigation that information relating to the Magnatrax Creditors' Committee and its counsel's evaluation of possible claims against the Defendants is irrelevant to the current matter and whether Defendants have engaged in improper transfers under Georgia and federal law.  The court went on to comment on the issue of privilege in its December 21, 2008 order and stated:

> [T]he Magnatrax Litigation Trust is a subset and residual of the Creditors' Committee as it existed during the bankruptcy.  Therefore, it would defy the public policy objective behind attorney-client privilege and the work product doctrine to deny Plaintiff the right to assert privilege over the communications made between the Creditors' Committee and its counsel and to claim as work product those documents produced by and for the Creditors' Committee in anticipation of any litigation regarding their claims.  Second, the court will not place an undue emphasis on the fact that Huron was employed directly by the Creditors' Committee, but the court will likewise not allow every action taken by Huron to be presumed protected merely because some of Huron's actions were taken at the direction of the Creditors' Committee counsel.

(*Id.*).

26

The Onex Defendants attempt with the instant motion to show the court how the Huron documents are relevant. They spend an extensive amount of time discussing what Huron researched and how it aligns with Plaintiff's pending claims. The similarities between the Huron research and Plaintiff's claims are not a surprise to the court; however, such similarities are to be expected since the Creditors' Committee hired Huron in part to help determine if the Creditors' Committee had any legal claims against Defendants. What the court has consistently questioned is why the Onex Defendants, with access to the same underlying information as Huron, can not and should not create their own financial analyses. The Onex Defendants contend that Huron's financial advisory work was done more contemporaneously than that of any after-the-fact purported expert's work, whether hired by Plaintiff or the Onex Defendants. The Onex Defendants then go on to address the privilege issue and argue that the work performed by Huron is not subject to attorney-client privilege because it was done primarily for business and not legal purposes. The Onex Defendants have not provided the court with any new arguments as to relevance. The court's finding of December 21, 2007, stands and the court DENIES the Onex Defendants' motion.

AO 72A
(Rev.8/82)

## VI.    Motion to Compel [473]

On February 29, 2008, the Onex Defendants filed a Motion for an Order Compelling the Production of a Document Improperly Withheld by Plaintiff.  The Onex Defendants want the court to compel Plaintiff to turn over a memo written on September 4, 2003, by Creditors' Committee counsel which creditor's counsel provided to Magnatrax's largest creditor, U.S. Steel, so that U.S. Steel might decide whether to join the Magnatrax Litigation Trust.  Plaintiff listed a document entitled September 4, 2003, memorandum on its privilege log.  The Onex Defendants contend that this memorandum is not privileged and should be turned over.  The Onex Defendants insist that the Creditors' Committee's privilege, which Plaintiff succeeded to, was waived when the Creditors' Committee's counsel submitted the document to U.S. Steel before U.S. Steel agreed to join the Litigation Trust.  Plaintiff begins its response by stating that the September 4th memo is irrelevant and quoting the court's finding that "the Plaintiff's actions, or those of the Creditors' Committee, in determining whether there were causes of action against the Defendants are irrelevant to the current matter before the court."  (Resp., at 2).  Plaintiff goes on to insist that even if the memo is relevant, it constitutes an attorney-client communication and attorney work product.

This court need not reach the issue of privilege.  The court continues to hold true to its former pronouncement; Plaintiff, its predecessor Creditors' Committee, or their counsels' opinions as to whether Magnatrax's creditors should join the Magnatrax Litigation Trust,

or more plainly whether Plaintiff has a case, are irrelevant to the matter before the court.

The Onex Defendants' motion is DENIED.

**IT IS SO ORDERED** this 25th day of April 2008.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

29