**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RICHARD M. KIPPERMAN, :
not individually but solely in his :
capacity as Trustee for the :
Magnatrax Litigation Trust, :
 :
       Plaintiff, : CIVIL ACTION NO.
 : 1:05-CV-1242-JOF
  v. :
 :
ONEX CORPORATION, et al., :
 :
       Defendants. :

## OPINION AND ORDER

The instant matter is before the court on Defendants' Motion for Sanctions [545], Motion to Compel [550], Cross Motion for Sanctions [554], and Motion for Protective Order [561], and Plaintiff's Motion to Amend Protective Order [551]. The complex factual and procedural history of this matter is well documented in the court's prior orders.

**I.    Sanctions Motion Regarding Defendants' Requests for Admission [545]**

The instant motion arises out of Plaintiff's amended responses to Requests 36 and 39 of the Onex Defendants' November 13, 2007 Requests for Admission. Plaintiff submitted initial responses on December 31, 2007; Defendants found these responses to be inadequate and evasive and filed a Motion to Compel on February 26, 2008 [458]; the court heard the

parties' arguments with respect to these RFAs at an April 29, 2008 hearing, and the court entered a minute entry on that date granting Defendants' Motion as to Requests 36 and 39. On May 29, 2008, Plaintiff submitted amended responses to Requests 36 and 39 which read as follows:

> **Request No. 36:**
> Admit that the portion of the Tranche B Transfers representing payments of the principal under the Amended and Restated Credit Agreement was ultimately transferred to the Lenders.
>
> **Response:**
> The Plaintiff objects to Request No. 36 because it is vague and ambiguous (I) in its use of the phrase "ultimately transferred," and (ii) in its failure to distinguish between payments of principal (i.e. payment of loaned amounts from a lender to a borrower) and repayments of principal (i.e. repayment of loaned amounts from a borrower to a lender). Without waiving these objections, and subject to the General Objections above, **the Plaintiff admits** that for each Tranche B Transfer, consisting of funds subsequently transferred to Onex ABCO Limited Partnership and used by it to repay principal pursuant to its obligations under the Amended and Restated Credit Agreement; (I) American Buildings Company caused a transfer to be made to Onex ABCO Finance LLC; (ii) Onex ABCO Finance LLC exercised its dominion and control over the funds and transferred them to 3027233 Nova Scotia Company; (iii) 3027233 Nova Scotia Company exercised its dominion and control over the funds and transferred them to Onex ABCO Limited Partnership; and (iv) Onex ABCO Limited Partnership exercised its dominion and control over the funds and transferred them to Canadian Imperial Bank of Commerce, as Administrative Agent under the Amended and Restated Credit Agreement. **Except as expressly admitted above, the Plaintiff denies Request No. 36 based upon the definition of the Lenders.** The definition of Lenders set forth in the Second Requests for Admission includes the Toronto-Dominion Bank, an entity which did not receive any portion of certain or all of the Tranche B Transfers representing payments of principal under the Amended and Restated Credit Agreement were ultimately transferred.

2

> **Request No. 39**:
> Admit that the portion of the Tranche B Transfers representing payments of principal under the Amended and Restated Credit Agreement was not retained by any Onex Defendant.
>
> **Response:**
> The Plaintiff objects to Request No. 39 because it is vague and ambiguous (I) in its use of the word "retained," and (ii) in its failure to distinguish between payments of principal (i.e. payment of loaned amounts from a lender to a borrower) and repayments of principal (i.e. repayment of loaned amounts from a borrower to a lender). Without waiving these objections, and subject to the General Objections above, **the Plaintiff denies** that the portion of the Tranche B Transfers representing repayments of principal under the Amended and Restated Credit Agreement was not "retained" by any Onex Defendant. The Plaintiff admits that each Tranche B Transfer, consisting of funds subsequently transferred to Onex ABCO Limited Partnership and used by it to repay principal pursuant to its obligations under the Amended and Restated Credit Agreement, was received in turn by Onex ABCO Finance LLC, 3027233 Nova Scotia Company, and Onex ABCO Limited Partnership, each of which held (or in other words "retained") such payment sufficient to exercise dominion and control over the funds in transferring such repayment to a subsequent entity as set forth above in the amended response to Request No. 36. (emphasis added).

Defendants contend that Plaintiff's responses should be stricken because the court's April 29, 2008 order deemed Requests 36 and 39 admitted. Defendants aver that even if Plaintiff's amendments are appropriate under the court's April order, they contain surplusage and are incomplete in the sense that they sidestep the issues and they do not answer the questions posed.

Defendants' arguments are without merit. First, the court granted Plaintiff leave to amend. Defendants' Motion to Compel specifically requests that the court compel Plaintiff

3

to provide "proper responses" to Requests 36 and 39; the motion does not ask the court to deem these requests admitted. (Mot. to Compel [458], at 2). During the April hearing, this court stated: "[Response] 35 looks good. Your motion is granted, Defendant. [Response] 36 looks good, granted. [Response] 38 and 39 look good and they are granted." (04/29/08 Tr. 84:1-2). In granting Defendants' motion, the court granted Defendants the relief requested in the motion, an order compelling Plaintiff to respond in accordance with Fed. R. Civ. P. 36.[1] Second, Plaintiff's amended responses to Request 36 and 39 comply with Fed. R. Civ. P. 36. Fed. R. Civ. P. 36(a)(4) states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

Plaintiff offers a denial in part; it specifies what is admitted and qualifies or denies the remainder. This court explicitly approved such an answer during the April hearing. Plaintiff's counsel sought clarification with respect to a response and the court stated: "If you have explained [a qualification] in your answer then that takes care of the matter. If you

---

[1] Defendants appear to be basing their argument that the court granted their motion to deem the requests admitted on their reply brief to the motion to compel [482]. In that reply, Defendants request that Requests 36 and 39 "be deemed admitted." However, the court did not grant the relief requested in the reply, which Plaintiff did not have a chance to respond to, when it granted the motion itself. Furthermore, Defendants' reply also requests that "in the alternative" Plaintiff be compelled to answer fully. Therefore, even if the court had based its holding on the reply brief rather than the motion itself, the court could have chosen to compel Plaintiff to amend rather than deem the requests admitted.

4

haven't you might wish to." (04/29/08 Tr. 85:8-10). Defendants are not without relief. If Defendants ultimately prove at trial the facts which they claim Plaintiff should have admitted in Requests 36 and 39, they may apply for a recovery of their costs in doing so under Fed. R. Civ. P. 36. Defendants' Motion to Compel [545] is DENIED. The court will not award costs to either party with respect to this motion.

## II.     Motions Regarding the Disclosure of Information to IML [550, 551, 554]

The instant dispute arises out of Plaintiff's relationship with Insolvency Management Limited ("IML") and the parties' June 1, 2007 Confidentiality Stipulation and Protective Order ("Protective Order") [215]. The Protective Order states in part:

> 7. Except upon the prior written consent of the Designating Party, Materials or information designated as "Confidential" under the terms of this Protective Order may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following Qualified Persons, and only to the extent necessary for this litigation. The attorneys of record are responsible for employing reasonable measures, consistent with this Protective Order, to control access to, and distribution of, information designated as Confidential pursuant to this Protective Order.

(Motion to Compel [550], Ex. B, at 6). The Protective Order then lists eight categories of Qualified Persons including "insurers who provide coverage to any Defendant that is relevant to this litigation, but only on a need-to-know basis and subject to the requirements of Paragraph 9." (*Id.*).[2] IML is a British entity who prospects for and funds litigation. IML

---

[2]Paragraph 9 states in part:
Those persons identified in Paragraphs 7(c), 7(e), and 7(f) above to whom Confidential Information is disclosed shall agree to be bound by this Protective Order; they shall evidence their consent to be bound by this Protective Order by signing and dating a copy of the Confidentiality

5

is funding Plaintiff in the instant litigation for a portion of any recovery. IML does not come within the eight categories of "Qualified Person" currently outlined in the Protective Order.

The parties have exchanged numerous pieces of information marked "confidential" during the course of litigation; including Onex Corporation's 1999-2006 unredacted tax returns which have not been made public and have only been filed with governmental tax authorities and Onex Corporation's "value summaries" which reflect internal, non-public, information about Onex Corporation's investments, cash positions, and shareholdings. Defendants are concerned that this information might be intentionally or negligently disclosed to IML and that IML might use it to instigate future litigation or inadvertently disclose it to Onex Corporation's competitors. The Defendants contend that should a breach of confidentiality occur it would be very difficult to enforce the Protective Order against IML outside the United States. Plaintiff is concerned about its ability to communicate with its funding source about the strengths and weaknesses of its case. Plaintiff contends that Defendants have used the confidentiality designation so liberally that they have made it virtually impossible for Plaintiff to share any information with IML. For example, Defendants have labeled entire depositions confidential, preventing Plaintiff from being able to share crucial pleadings such as the summary judgment briefs with IML. Plaintiff asserts that it would have fought much harder for the inclusion of IML as a "Qualified Person" if

---

Undertaking annexed hereto as Exhibit A; and the attorneys of record making the information available shall retain all signed copies of such Confidentiality Undertaking.

6

it had not relied upon Defendants' assurances that they would use the confidentiality designation judiciously. Lastly, Plaintiff avers that this problem is so large it cannot be handled under the existing Protective Order as there are simply too many documents for Plaintiff to object to each one.

The parties raised these concerns before Magistrate Judge Hagy during a May 23, 2008 hearing resolving a related matter, which occurred when the undersigned was out of the country and unable to meet with the parties. Magistrate Judge Hagy recognized the dilemmas faced by all parties. He chose not to make a ruling and instead instructed the parties to resolve the issue independently:

> What you've got is an agreement that says [IML] do[es]n't get the confidential documents themselves. What you don't have is any understanding or agreement between the parties as to the scope of discussions that the Plaintiff may have with a company that's financing this litigation [and] has a real need to know. I mean, the court would like to have the matter resolved if it could be resolved, which means intelligent people who have a stake in the matter need to know the pros and cons of proceeding. So I don't know what language you want to come up with. I've given some suggestions. They should have not -- I would agree they shouldn't be able to get written summaries and spreadsheets that are the equivalent of [tax] returns. And that's -- and that's not -- they would only need to be entitled to get what they are entitled to on a need-to-know basis, and I think we could say, and that would include extensive summaries or spreadsheets or other documentation that is essentially the equivalent of confidential information. Clearly we don't do that.
>
> But you guys are, one, we don't need to decide it today, and, two, you all should be able to work that out. But I would – my intent would be that they don't get spreadsheets or summaries that is essentially the equivalent of providing the confidential information. On the other hand, they should not be prohibited from discussing with the person that's the equivalent of your insurer the merits of the litigation and what their prospects are and if they have a need to know why you think you proceed at this time. As long as they

7

> do so without disclosing the equivalent of the confidential information. It's quirky. It's close. But it's going to take some work on a piece of paper, and I'm going to leave that to you.

(05/23/08 Trans., at 44:2-45:5.). Following the hearing the parties corresponded regarding this matter. Among this correspondence was a June 6, 2008 letter to Plaintiff for Defendants requesting that Plaintiff answer the following three questions:

> 1. To the extent you [Plaintiff's counsel] has represented to us [Defendants' counsel] that Plaintiff has not disclosed confidential Onex documents to IML to date, why is such disclosure now necessary to the prosecution of Plaintiff's case (especially when fact and expert discovery is closed)?
>
> 2. Where does Plaintiff seek to make confidential Onex documents available to IML? In this connection, does Plaintiff seek to transport or transmit confidential Onex documents outside of the United States and, if so, how, by whom and to what location(s)?
>
> 3. Who are the "directors, officers, employees and counsel" of IML to whom Plaintiff seeks to provide confidential Onex documents? Where are those individuals located? Why is disclosure necessary to each such individual for the prosecution of Plaintiff's case?

(Motion to Compel [550], at 4-5). Also among the correspondence was a June 12, 2008 proposal by Defendants for a proposed amendment to the Protective Order that would allow Plaintiff to speak with IML. (Motion to Compel [550], Ex H, at 2).

The parties have filed three motions arising out of the foregoing facts. First, Defendants filed a Motion to Compel [550] asking the court to compel Plaintiff to (1) "state whether he has disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part to IML information contained in documents and/or depositions designated as Confidential under the Protective Order, as set forth in the Onex

8

Defendants' June 4, 2008 letter"; (2) "answer the three questions set forth in the Onex Defendants' June 6, 2008 letter"; and (3) "provide the Onex Defendants with the full circumstances of any disclosures, including identifying what documents and information have been disclosed, to whom, when and in what form, and whether IML has made any use or disclosure of the documents and information." Defendants also request sanctions. Plaintiff contends that there is no basis for this motion under Fed. R. Civ. P. 37 because Defendants' requests were not part of a discovery request and that Defendants' request encroaches on its work product and attorney client privilege. Second, Plaintiff filed a Motion to Amend the Protective Order [551]. Plaintiff requests that the court either (1) narrow the definition of confidential material and retroactively eliminate the designation for all documents but the Onex Defendants' tax returns, or (2) amend paragraph 7 of the current Protective Order to treat IML as a "Qualified Person" entitled to receive confidential materials if it agrees in writing pursuant to paragraph 9 to be bound by the Confidentiality Agreement and Protective Order. Third, Defendants filed a Cross-Motion for Sanctions [554]. Defendants contend that the proposed language is consistent with Magistrate Judge Hagy's order regarding IML and that in response Plaintiff ignored Magistrate Judge Hagy's order to mutually resolve the problem, rejected the compromise, abandoned negotiations, and sought a wholesale amendment of the Protective Order. Defendants demand the costs in connection with their response to Plaintiff's Motion to Modify Protective Order and their Cross Motion for Sanctions. It appears that Plaintiff likely did not accept Defendants'

9

proposed language because Defendants' offer was conditioned upon Plaintiff responding to Defendants' questions regarding Plaintiff's communications with IML.

The court has read and considered all of the parties' pleadings with respect to this matter as well as the transcript of the conference before Magistrate Judge Hagy. With respect to Plaintiff's concerns, the court agrees with Magistrate Judge Hagy's analogy between IML and Defendants' insurers. Plaintiff must be able to convey to IML enough information regarding the progress of this litigation for IML to make an informed decision about how to proceed. With respect to Defendants' concern, the court recognizes the need for caution with respect to sensitive financial data and appreciates the important role that such information plays in Defendants' business and its value to Defendants' competitors. The court's understanding of these issues is what prompted it to approve the restrictive provisions of the existing Protective Order. However, the court is also cognizant of the fact that in our overly litigious society, companies sue companies every day, and the loss of propriety information is often an unfortunate cost of such litigation. Similarly, Defendants' concerns about IML using their information to "fish" for new litigation is not unique. Such "fishing" or inadvertent discovery of plaintiffs is often a product of litigation in the civil rights or products liability arenas. With these understandings in mind, the court makes the following ruling.

After a consideration of the issues and submissions the court HOLDS:

Subject to the other provisions of the Protective Order, Litigation counsel of record for Plaintiff at Jenner & Block and King & Spaulding may communicate with **[Three**

**Individuals Identified by Plaintiff]** at Insolvency Management Limited and Ronald DeKoven (collectively, "IML") fairly detailed summaries about materials or information designated as "Confidential" by the Onex Defendants under the terms of this Protective Order only to the extent that:

(a) Such communication shall not include the transmission of exact copies, portions or excerpts of any materials designated as "Confidential" by the Onex Defendants, to IML, nor may the contents of such material be read or otherwise quoted *in hoc verba* to IML. No exact numerical amounts may be communicated except for the flow of funds between to parties and/or the lenders.

(b) Such communication shall be limited to that information necessary for IML to obtain a sophisticated understanding of the strengths and weaknesses of Plaintiff's case;

(c) Such necessary information may include particular confidential facts if those confidential facts are (I) relevant to proving a material dispute of fact, (ii) make it more or less likely that Plaintiff will be able to prove an element of its prima facie case based upon the counts alleged in the Amended Complaint dated October 18, 2006, (iii) make it more or less likely that Defendant will be able to assert an affirmative defense as asserted in the Amended Answer dated November 3, 2006, or (iv) if generally summarized, are relevant to the ability of the Defendants' to respond in damages.

AO 72A
(Rev.8/82)

(d) Such communication is made on a need-to-know basis and shall be strictly limited to the prosecution of the claims alleged in the Amended Complaint dated October 18, 2006;

(e) IML and each individual identified above shall not use such communication for any purpose other than the prosecution of this action, and is strictly prohibited from using the content of such communication for any other purpose;

(f) IML and each individual identified above agrees to be bound by this Protective Order and this Amendment thereto and shall evidence its consent to be so bound by signing and dating a copy of the Confidentiality Undertaking annexed as Exhibit A to the Protective Order, and counsel of record for Plaintiff shall provide to counsel for the Onex Defendants a copy of such signed and dated Confidentiality Undertaking promptly after execution; and

(g) IML consents to the jurisdiction of a U.S. court for the adjudication of any dispute regarding the Protection Order or the Amendment, and expressly agrees that the Onex Defendants may seek judicial relief including but not limited to the imposition of equitable and monetary relief and sanctions for any violation of the Protective Order.

(h) Any use of information in material marked "Confidential" by the Defendants in connection with a motion or response to a motion for summary judgement, shall free the Plaintiffs to communicate that information to IML.

AO 72A
(Rev.8/82)

Plaintiff must name the three individuals to be subject to this amended agreement within ten (10) calendar days of the date of this order in a notice to the court. Defendants' Motion to Compel [550] and Cross Motion for Sanctions [554] are DENIED. Plaintiff's Motion to Amend [551] is GRANTED-IN-PART in accordance with this order.

**III.    Motion for Protective Order Regarding E-mail Discovery [561]**

The instant dispute arises out of the ongoing discovery of the e-mail on Defendants' electronic backup tapes. During a hearing in January of 2008, the court ordered Defendants to produce e-mail from two electronic backup tapes selected by Plaintiff. Plaintiff selected two tapes and provided search terms. Defendants searched the mailboxes of seven people whose depositions Plaintiff had sought. Plaintiff filed a motion to compel arguing that Defendants should have searched all mailboxes on the two tapes. The court addressed this motion during the April 2008 hearing and ordered the Defendants to search all the mailboxes on the original two tapes as well as on an additional tape selected by Plaintiff. The court determined that despite the Defendants' previous objections and representations, the backup tapes were producing meaningful discoverable information. The court did suggest, however, that Plaintiff be more artful with its search terms and that Plaintiff utilize a list of the people, provided by Defendants, to review whether all mailboxes needed to be searched. The court also granted Defendants the opportunity to narrow the search terms. The Defendants did not provide this list of people; they did not narrow the terms. As such, they agreed to search and restore all the mailboxes with the search terms provided by Plaintiff.

The Defendants now seek relief from having to review and produce all of the results from that search. Specifically, the Defendants want the court to excuse them from producing (1) results that they deem to be irrelevant; (2) documents responsive to the search term "Armtec"; and (3) documents captured from the e-mail mailboxes of Onex subsidiary ONCAP. Defendants contend that Plaintiff's broad search terms resulted in thousands and thousands of irrelevant hits. For example, Plaintiff's search terms included the word "republic." The republic term sought to elicit e-mails regarding Republic Builders Products, one of the Magnatrax/ABCO acquisitions involved in this matter. Defendants claim that the search captured thousands of irrelevant pages due to one occurrence of the word "republic" often related to Onex business interests having nothing to do with Magnatrax in the "Republic of France," "Republic of Ireland," and "Czech Republic." Armtec is a Canadian Jannock subsidiary that was sold to ONCAP in August 2001. There is no reference to the Armtec transaction in Plaintiff's initial or amended complaints. Plaintiff discusses the Armtec transaction for the first time in its responses to the Defendants' contention interrogatories. In its April 25, 2008 order, this court addressed this transaction and stated, "Plaintiff cannot merely include these allegations in its contention interrogatories without moving to amend the complaint." (Order [524], at 15). The court directed Plaintiff to file a motion to amend its complaint if it wished to place the Armtec transaction before the court. The court warned Plaintiff that it would assess at that time whether the equities of amendment under Fed. R. Civ. P. 15 would weigh in their favor. Defendant contends that Plaintiff has not yet amended and Plaintiff should not be able to use discovery as a fishing

14

expedition to support a later untimely amendment regarding the Armtec transaction. The court discussed a possible amendment to include Armtec at a time when discovery was still open; at that time, the court thought it possible, although unlikely, that amendment would be appropriate. Discovery has now closed and the court is moving toward dispositive motions. At this time, Plaintiff would have to present terribly unusual circumstances to justify amendment. The search of the 2003 tapes revealed ten mailboxes related to ONCAP, a legal entity related to Onex. Defendants contend that e-mail from these boxes is unnecessary because ONCAP is not a party to this action and Plaintiff has never requested documents from them.

The court has assessed all of Defendants' arguments and using its considerable discretion under Fed. R. Civ. P. 26 will DENY their requests for relief with respect to irrelevant materials and GRANT their requests for relief with respect to Armtec and ONCAP. Defendants' actions have delayed the production of electronic discovery throughout this litigation. Defendants have consistently tried to minimize the likely value of this discovery. The court's minimal forays into the electronic discovery that has been produced has shown just the opposite. Despite all of this, the court is not unsympathetic to the massive amount of discovery involved in this matter, the considerable burden of working with it, and the overproduction that often comes with e-mail production. Therefore, the court gave Defendants numerous tools by which to reduce the burden of e-mail discovery, including an opportunity to limit Plaintiff's search terms and an opportunity to provide a list by which the number of peoples and the number of boxes being searched could be reduced.

AO 72A
(Rev.8/82)

Defendants did not take advantage of these opportunities. Defendants must now lie in the bed that they have made. Thus, Defendants' objections on the basis of relevancy and volume are DENIED. The court could deny Defendants' requests with respect to Armtec and ONCAP for these reasons as well. However, the court finds it highly unlikely that these search terms and mailboxes will garner relevant, useful information and finds the parties' and the court's burden in working with this information to outweigh its relative usefulness. On these grounds, the court will GRANT Defendants' request for relief with respect to these search terms and these mailboxes. Defendants' Motion for Protective Order [561] is GRANTED-IN-PART and DENIED-IN-PART.

**IT IS SO ORDERED** this 19th day of September 2008.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)